IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case # 05-6002-01-CR-SJ-GAF |
| ) | |
| LISA MONTGOMERY ) | |
| Defendant ) | |

### *LISA MONTGOMERY'S REPLY TO GOVERNMENT'S MOTION TO PROHIBIT TESTIMONY FROM DEFENSE EXPERT, DR. RUBEN GUR, AND REQUEST FOR EXTENSION OF TIME TO PROVIDE ADDITIONAL DISCOVERY, WITH SUGGESTIONS*

Comes now Lisa Montgomery, by attorney, and does hereby make reply to the government's motion urging that this Court prohibit the testimony of Dr. Ruben Gur, Ph.D. Mrs. Montgomery does also request that this Court grant an extension of time for Dr. Gur to complete his providing of PET testing raw data to government experts. The grounds for Mrs. Montgomery's positions in these regards, and suggestions in support thereof, will be set forth in the following

*The facts of the matter are that the government has had discovery of Dr. Gur's identity and findings for many months, is receiving more detailed discovery about Dr. Gur's raw data as fast as Dr. Gur can provide it, and will not be prejudiced by the process of discovery which is happening*

On August 28 and September 4, 2007, this Court heard testimony from Dr. Alan Evans, Dr. Helen Mayberg and Dr. Ruben Gur concerning the scientific validity of PET and MRI testing conducted by Dr. Gur in connection with this case

1

(Doc. 260, 263). At that hearing, the Court received a copy of Dr. Gur's report from government counsel, dated April 2007, demonstrating that, months ago, Dr. Gur's identity and conclusions were provided in discovery (Doc. 262).

One of the issues which was raised during the hearings concerned the desire of government experts to have raw data generated by the PET scanner for the PET scan of Mrs. Montgomery and for the normal subjects used by Dr. Gur for purposes of comparison (9-5-07 Tr. 16-18). After hearing the evidence, this Court expressed for the record its findings concerning admissibility of the PET and MRI testing (9-5-07 Tr. 2-6). The Court also heard from the parties about the status of Dr. Gur's efforts to provide the raw data requested by the government experts (9-5-07 Tr. 16-17). Undersigned counsel expressed the difficulties had by Dr. Gur in assembling the direct-from-the-PET-machine raw data being requested, and expressed Dr. Gur's belief that the data could be assembled by the following week (9-5-07 Tr. 16-17). The Court then indicated that counsel should "(t)ell him (Dr. Gur) to get that data together and I would like for Mr. Whitworth to have it by Wednesday of next week." (9-5-07 Tr. 17). Undersigned counsel advised Dr. Gur, by telephone, about the directions of the Court on September 5, just hours after the hearing, and Dr. Gur immediately resumed his efforts toward assembling the raw data.

Despite the best efforts of Dr. Gur and the University of Pennsylvania Hospital imaging center, none of the raw data could be assembled and produced by Wednesday, September 12. On Friday, September 14, undersigned counsel received e-mail confirmation that Dr. Gur was able to assemble and produce for government experts the raw PET data for Mrs. Montgomery's scan, as well as raw PET data for other comparison subjects from the same PET machine on which Mrs. Montgomery's scan was performed. Dr. Gur reports that the imaging center personnel have been, and are currently still in the process of, searching older computer databases in order to retrieve the raw PET data for the normal subjects used for comparison in Dr. Gur's report. This search is very difficult, and very time consuming. Dr. Gur further reports that, based upon the feedback from the hospital imaging center staff, he believes that that data should be able to be found, retrieved, and provided sometime late next week. Dr. Gur will update on the progress of this process the first of next week.

In its pleading filed on September 13, the government accounts the facts somewhat similarly to that above. One difference is that, rather than quoting verbatim the Court's directions regarding production of the raw data, as undersigned counsel did above, the government provided its interpretation of the Court's directions (Doc. 273, p. 2, 4). Another difference is that the government asserts its expert's subjective opinions that Dr. Gur should have been easily able to

produce the data (Doc. 273, p. 2-3). Interestingly, the experts also acknowledge e-mail communications about the data with Dr. Gur (Doc. 273, p. 3). That is interesting because, in that very e-mail communication stream, Dr. Gur explained why the request being made was so difficult to answer, and Dr. Evans, the government's expert, acknowledged that the request was outside the norm of normal scientific interchange. Since undersigned counsel was also a party to that e-mail communication stream, he has a copy of same, and has appended that to this pleading, as Exhibit A, so the Court can read this communication stream. Finally, the government claims that it has been prejudiced by the delay in production of the data (Doc. 273, p. 4). However, the government does not explain how it has been prejudiced.

One additional fact which the government does not mention in its pleading, but is critical for the Court to understand, is that, once the government's experts have received the raw data from Dr. Gur, it should take them only a matter of hours to make the necessary calculations from that data. Therefore, though the government claims prejudice, it would be difficult for the government to demonstrate actual prejudice unless the disclosure of the raw data was delayed until far later than what is currently anticipated.

### ***Taylor v. Illinois, while supporting the possibility of exclusion of defense evidence as a discovery sanction under certain circumstances, would not permit such exclusion upon the fact in this case***

The government urges that this Court should prohibit the testimony of Dr. Gur, and claims to find support for its request in *Taylor v. Illinois*, 484 U.S. 400 (1988) (Doc. 273, p. 4). Reliance upon *Taylor v. Illinois* does not bode well for the government.

In *Taylor v. Illinois*, the defense had failed to identify a critical witness until they were ready to put the witness on the stand, on the second day of trial. *Taylor v. Illinois*, 403. Though defense counsel initially represented to the Illinois trial court that the delay owed to the witness just being located, the witness later debunked that claim by testifying in a proffer that defense counsel had found and interviewed him a week prior to trial. *Taylor v. Illinois*, 405. The Illinois trial court, finding that defense counsel had willfully withheld discovery, and that the willful discovery violation in this case was part of a pattern of willful deception by this defense attorney in multiple previous cases, excluded the testimony of the witness as a sanction for the willful discovery violation. *Taylor v. Illinois*, 405.

On appeal to the Supreme Court, the State had urged that sanction of exclusion of evidence does not implicate Sixth Amendment concerns, but the Supreme Court rejected that argument out of hand based upon its holding in *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). *Taylor v. Illinois*, 408-409. The Court likewise rejected Taylor's argument that the Sixth Amendment would never allow exclusion as a sanction. *Taylor v. Illinois*, 414-415. However, the Court

was clear that such a harsh sanction would be deemed appropriate in the *Taylor* case only because of the clear evidence that this discovery violation involved the defense willfully and blatantly hiding the identity of the witness until after trial had begun, for the purpose of gaining tactical advantage. *Taylor v. Illinois*, 416-417.

      The *Taylor v. Illinois* exclusion sanction would not attend in this Montgomery case for a couple of critical reasons. First, there has been no hiding of the identity of a witness. Dr. Gur's identity and conclusions have been well known for months. Second, there has been nothing willful or blatant in the delay by Dr. Gur in trying to comply with what the government's own expert, Dr. Evans, has admitted in e-mail communications amounts to an unusual scientific request. The government does not provide case law applicable to the benign facts here. In fact, in light of the Sixth Amendment concerns arising therefrom, the drastic sanction of exclusion of evidence is to be confined to the sort of situation confronted in *Taylor v. Illinois* wherein there is a willful violation of a discovery rule motivated by a desire to gain tactical advantage. *Taylor v. Illinois*, 416-417; *United States v. Finley*, 301 F.3d 1000, 1018-1019 (9th Cir. 2004). In this Montgomery case, it would be an incredible stretch to say that a discovery violation has occurred. But even if that could be said, there is no indication whatsoever that what has occurred is in any way willful or motivated by a desire to obtain advantage.

That this is not the appropriate place for an exclusion sanction is fully illustrated by the Ninth Circuit holding upont the facts in *United States v. Finley*, supra. In *United States v. Finley*, the District Court had excluded testimony from a defense mental health expert because of the government's complaint that it had not received sufficiently detailed discovery concerning the expert's conclusions and the reasons therefor. *United States v. Finley*, 1016-1017. The Ninth Circuit found that, since there had been discovery provided, and since no willful misleading had been shown, the exclusion remedy could not be employed since other, less onerous remedies would be available. *United States v. Finley*, 1017-1018.

One other point made in *United States v. Finley* bears mentioning here. The Ninth Circuit also chided the government in making the arguments which it did since it too had "some discovery failures of its own". *United States v. Finley*, 1018, fn. 23. Such chiding applies equally well against the government in this Montgomery case The government's main mental health expert, Dr. Park Dietz, M.D., completed his interviews with Mrs. Montgomery in the first week in June, 2007. However, now more than three months later, and just two weeks before trial is scheduled to begin, Dr. Dietz has still not provided even an initial report of his findings and conclusions. By e-mail on the evening of September 15, 2007, Government Counsel advised undersigned counsel that Dr. Dietz's initial report

7

will finally be provided on September 17, 2007. Government's counsel highlights in his pleading his discovery letter to defense counsel sent at the end of June of 2007 (Doc. 273, p. 3). However, Government Counsel fails to mention that it was under Court order to have provided Dr. Dietz's report long ago (Doc. 95, p. 2). The delay in Dr. Dietz providing his initial report is far more potentially problematic for this case than any delay caused by Dr. Gur, and is far less explainable. Undersigned counsel respectfully suggests that, before he began throwing stones, Government Counsel should have examined and assessed his own glass house surroundings.

### *Proper application of F.R.Cr.P. 16(d)(2) would mean the finding of a solution to this situation far less onerous than the exclusion of evidence proposed by the government*

The government supports its argument for exclusion by myopically citing only to subsection (C) of F.R.Cr.P. 16(d)(2). It would be best to remember the entirety of the Rule before things go much further. The rule, in full, is as follows.

> **Failure to Comply.** If a party fails to comply with this rule, the court may:
> **(A)** order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> **(B)** grant a continuance;
> **(C)** prohibit that party from introducing the undisclosed evidence; or
> **(D)** enter any other order that is just under the circumstances.

The biggest problem with the government's reliance upon the rule is the lack of a violation of the Rule. In saying this, undersigned counsel understands that the Court wanted and expected that Dr. Gur would provide the raw data by

8

Wednesday, September 12. However, undersigned counsel trusts that the Court understands that Dr. Gur has diligently been working, and will continue to diligently work, to provide the requested discovery as soon as possible. The remaining discovery should well occur before trial begins, and in time for the government experts to make full use of the information. Thus, it would be a stretch to say that any discovery violation has occurred.

But even if it could be said that a discovery violation has occurred here, F.R.Cr.P. 16(d)(2) offers the Court many more than just the last, most onerous alternative offered by the government. There are many other, less draconian, alternatives to the government's suggestion, among which would be precisely what is being done, production of the data as that data is obtained by Dr. Gur.

Again, it should be emphasized that, because of the defendant's Sixth Amendment right to present evidence, exclusion of defense evidence as a sanction is only appropriate when it is shown that the discovery violation was willfully done in order to gain tactical advantage. ***Taylor v. Illinois***, 416-417; ***United States v. Finley***, 1018-1019. Without such a showing here, there can be no justification for the remedy of exclusion which is proposed by the government.

Moreover, even when these sanction rules are applied to the government, a party without the protection of the Sixth Amendment, exclusion of evidence is normally deemed too harsh unless bad faith in the discovery failure and prejudice

to the opposing party can be shown.  *United States v. DeCoteau*, 186 F.3d 1008, 1010 (8th Cir. 1999);  *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999); *United States v. W.R. Grace*, 493 F.3d 1119, 1130-1131 (9th Cir. 2007).  In determining the appropriate sanction, the Court is to employ the least onerous sanction available, considering whether there has been a showing of bad faith committed in connection with the discovery failure, whether there has been a showing of prejudice to the opposing party as a result of the discovery failure, and whether there is a less onerous solution to the discovery failure.  *United States v. DeCoteau*, 1010;  *United States v. Gonzales*, 1292; *United States v. W.R. Grace*, 1030.  Even if there has been a showing of bad faith, if there is lack of true prejudice, even if avoidance of prejudice needs to be accomplished through use of an alternative remedy such as a continuance, that all militates against use of the exclusion sanction.  *United States v. DeCoteau*, 1010-1011; *United States v. Gonzales*, 1292-1293; *United States v. W.R. Grace*, 1031.

     Here, the delay in providing Dr. Gur's raw data will not necessitate a continuance, and amounts to nothing more than inconvenience for the government.  This is an inconvenience, it should be added, far less than the inconvenience being caused by the delay in providing Dr. Dietz's report.  Consequently, exclusion of Dr. Gur's testimony under these circumstances would amount to an abuse of discretion rising to the level of a Sixth Amendment violation.  *Taylor v. Illinois*,

10
Case 5:05-cr-06002-GAF   Document 284   Filed 09/15/07   Page 10 of 12

416-417; *United States v. Finley*, 1018-1019; *United States v. DeCoteau*, 1010-1011; *United States v. Gonzales*, 1292-1293; *United States v. W.R. Grace*, 1031.

## *Conclusion*

WHEREFORE, in light of the foregoing, Mrs. Montgomery prays that this Honorable Court overrule the government's motion for sanctions (Doc. 273). Mrs. Montgomery further prays that this Court find that Dr. Gur is complying with the Court's discovery directives, and permit Dr. Gur to continue working on that compliance as described above.

    Respectfully submitted

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.
Bar Enrollment Number 28868
P.O. Box 349
Kearney Mo. 64060
Phone: 816-213-0782
Fax: 816-635-5155
ATTORNEY FOR DEFENDANT

## *CERTIFICATE OF SERVICE*

I hereby certify that a copy of the foregoing Motion was served upon the following by e-mailing a copy of same to each this 15th day of September, 2007

Matt Whitworth
Roseann Ketchmark
Cynthia Cordes
Assistant United States Attorneys
Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, MO  64106

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.