UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA : Cr-04-966 (FB)

-against- U.S. Courthouse
: Brooklyn, New York

KENNETH McGRIFF,

DEFENDANT, :

February 9, 2007

- - - - - - - - - - - - - - - - X 10:00 o'clock a.m.

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES DISTRICT JUDGE and a jury.

APPEARANCES:

For the Government: ROSLYNN R. MAUSKOPF
United States Attorney
147 Pierrepont Street
Brooklyn, New York 11201
BY: CAROLYN POKORNY
JASON JONES
JEFFREY RABKIN
Assistants U.S. Attorney

For the Defendant: DAVID RUHNKE, ESQ.
JEAN BARRETT, ESQ.

Court Reporter: SHELDON SILVERMAN
Official Court Reporter
225 Cadman Plaza East
Brooklyn, New York 11201
(718) 613-2537

Proceedings recorded by mechanical stenography. Transcript Produced By Computer Aided Transcription.

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 1 of 116

THE CLERK: Criminal cause on trial, United States versus Kevin McGriff.

(Appearances noted).

THE COURT: Before we call the jurors in to hear the defense summation, let me just briefly tell you what I'm thinking about in terms of changing the charge. It's interesting because each of these cases, Aguilar, Wilson, have their own unique circumstances and factors to it.

What we have here that I don't think exists in Aguilar, perhaps not even in Wilson, were a number of these cooperators who initially qualified for the death penalty, then we have those circumstances.

When we deal with mitigating factors, it does seem to me that arguably there's an issue of law as to what legally constitutes a mitigating fact.

I think all those do as a matter of law constitute mitigating factors. How could it be otherwise?

If a proposed mitigating factor was whether somebody had long hair or short hair, I'll rule as a matter of law that was not a mitigating factor, but I think all the mitigating factors that have been proposed by the defense do qualify as a matter of law, matters that the jury can consider and weigh.

We have a breakdown which of those are factually established and those would require the jury to make the factual determination. Some of them are of a mixed breed.

For example, mitigating factor number one has a combination of factually established aspects to it and those which would require, perhaps, a jury to make a determination.

For example it says he will be severely punished if incarcerated for life without the prospects of parole. That aspect of proposed mitigating factor number one, which talks about his of lifetime confinement, is factually established. Whether he would be severely punished or not is something which I can't say as a matter of fact -- as a matter of law -- has been factually established. What constitutes severe punishment can be based upon the testimony of the expert, all those other facts the jury will consider.

If you want to be pristine about it, I'm willing to say numbers one through eight are factually established, but I'll eliminate the word severe on number one.

MR. RUHNKE: That's fine.

THE COURT: We're on the same page.

The charge will reflect that these are factually established, numbers one through eight, invite the jury to determine in respect to the rest of the mitigating factors that the defendant has established them by the requisite preponderance of the evidence.

To be honest with the jury, we have to change the verdict sheet to tell them the first eight have been established by mitigating factors; that they are to consider

whether the others have been established. I think that's the honest way of doing it. That's my sense.

I would be inclined to tell the jury the same thing about the aggravating factors, except I'm apprehensive about it. In effect we have said that because we have the stipulation, we're telling them straight out that conducting a criminal enterprise is a statutory aggravating factor.

While it is not going to say that in the verdict sheet, because of what I mentioned from time to time the concept this is an element of the crime and I'm hesitant to just tell a jury straight out an element has absolutely been established rather than to have them actually say that.

MR. RUHNKE: Certainly after Ring versus Arizona, statutory factors are elements of a capital crime.

THE COURT: I want to explain to the government there was a difference, you see, between knowing it on the one hand, where I would be inclined to say it's been established if not for the Circuit Court instructions to be careful about that.

MS. POKORNY: We're not objecting to it.

THE COURT: That's my thinking at the present time. I wanted to share that with you before we have the summation.

MS. POKORNY: I think that's right. As to the conspirators, this issue was created because we moved away from the statutory mitigator which says equally culpable

conspirator will not be punished by death, it's now been watered down to just a form of codefendant will be punished by --

THE COURT: The jury will understand what we talked about. I don't think there's any confusion. I may just reinforce that during my presentation of the charge, talk about these defendants, these coconspirators. They're one and the same, are they not?

MS. POKORNY: A mitigator would be an equally culpable coconspirator, so there would be a judgment call as to whether or not they're equally culpable. It's been watered down to just this person is not seeking -- not facing the death penalty.

THE COURT: It's a question of what constitutes a matter of law as compared to a factual matter for the jury to assess.

We are in an area of the law which does have a lot of room in it for appellate courts to give further definition and refinement to these things.

The whole business of the federal government being in the business of death is not that current, that we have a fully developed body of law to draw upon. So, we have to make our best judgments as we go along.

I do think the issue if something is or is not a mitigating factor sounds to me that's an issue of law. I am

determining all these cooperators, as a matter of law, the jury can consider those as mitigating factors. That seems to make conceptual sense to me.

MR. RUHNKE: Two quick points before we get to the summation. At this time I would like to have the case withdrawn from the jury, should have moved for this earlier, but on the evidence that's been heard, the jury could not find any of the aggravating factors; therefore, cannot consider death.

THE COURT: I'll deny that. You made your record. Anything else you need to do?

MR. RUHNKE: One more thing. Before the jury gets the case, I would ask your Honor to disregard Ms. Pokorny's questions to the witness yesterday afternoon about didn't the Supreme Team this, didn't the Supreme Team that.

THE COURT: I told them, I will tell them about it again, I've told them before, the question is not evidence. That's sufficient. I don't think I have to really point specifically to chapter and verse. We did make comments like that, I -- you did make comments, I think during the summation. I told the jury during the summation.

Anything else?

MS. POKORNY: The witness testified based on his reputation in the community, how wonderful --

THE COURT: You don't have to argue. I made my

ruling. I didn't stop you from asking questions about the reputation, but we processed that already, don't have to repeat that.

Anything else?

MR. RUHNKE: No.

THE COURT: We'll get going. You know enough what I'm going to do in respect to the charge during your summation. We'll go over the specific language before I give the charge to the jury.

THE CLERK: Shall I bring the jury in?

THE COURT: You can bring the jury in.

THE CLERK: Put the camera on?

THE COURT: Is that realistic? Are there people downstairs? We have plenty of room, if people are downstairs, they could come up.

THE CLERK: Some people are choosing to go to the cafeteria.

THE COURT: Are there people outside the courtroom? If so, why don't we invite them to come into the courtroom?

MS. POKORNY: I'm not saying that. Sometimes the amount of people in the courtroom changes during the arguments.

THE COURT: Leave it on. It seems silly to me.

Bring the jury in, please.

(Jury enters courtroom.)

THE COURT: Members of the jury, as we told you yesterday, we're here to now listen to the defense summation. The government will then have a brief rebuttal and then I'll explain the law to you and you'll begin your deliberations. We'll see how it goes timewise. It would be good if I get that all to you before lunch. We'll see.

We're ready.

MS. BARRETT: Thank you, your Honor.

Good morning, ladies and gentlemen. First, I wanted to thank you all for your attention on behalf of Mr. Ruhnke and myself, on behalf of Mr. McGriff and on behalf of his family and friends. We appreciate it. We know it's hard and we know you have done a wonderful job paying attention and carefully listening. Thank you.

I wanted to open to talk to you about hypocrisy. Hypocrisy is all over this effort to execute Mr. McGriff.

Imagine the hypocrisy of seeking the death penalty against Mr. McGriff and not Mr. Mungo, Mr. Mosley and the others. Imagine what Mr. Jones would have to say to you if you were sitting here in judgment of Barry Mungo with four dead people to his name, the men who put the bullets into Troy Singleton and into Eric Smith will go home some day, some of them. They do not face the death penalty. It's hypocritical to say that Mr. McGriff is worthy of the death penalty as the only possible punishment when those individuals do not face

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 8 of 116

the death penalty and some will go home.

Your decision is soon. The time for you to decide this case is coming. This is a unique and individual judgment for life and death, the same now as it was when I spoke to you two days ago. Your decision is the final one, is death the only right punishment for Kenneth McGriff?

You are the ultimate determiners whether Kenneth McGriff lives or dies.

I mentioned this in the beginning. What's this all about? Is this an attempt to excuse criminal conduct? No. No one is trying to excuse any criminal conduct, be it drug dealing or murder. No one is trying to excuse that. No one is trying to justify anything. There's no justification for taking the life of another human being. I would never, ever, suggest there was.

It's not an explanation. We haven't offered you an explanation why things have happened. That's not what we're here for. We're not here to blame others, but we are here, what we are here to do is answer the only real question. Is death the only answer for Kenneth McGriff?

The judge will tell you that this is an individual decision and I say "not sure," because life, that is what it boils down to, that's how the law boils down; that if you're not sure death is the only right punishment, then the appropriate sentence is life, and that's how you should vote.

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 9 of 116

If you're not sure, if there's a doubt, a doubt in your mind that death is the right punishment, the only right punishment, then you should vote for life.

One vote means life. That doesn't mean that you don't deliberate. I would never suggest you shouldn't sit down and discuss and listen to what others say, but it is a unique and individual decision. If, after listening to all your fellow jurors and discussing it as thoroughly as you think appropriate, you were even the only vote for a life sentence, the sentence would be life. That's why I say one vote equals life. All of you must vote for the execution of Kenneth McGriff in order for that to take place.

Any one of you is free to decide that death is not the appropriate punishment.

We presented to you a story of Mr. McGriff's life, including the circumstances of his childhood. We've also presented redeeming qualities, not as an excuse, again, or a justification of anything. We gave you redeeming qualities because there is good in him and that's a reason to let him live, because there is good in him, not because there's a justification for criminal conduct, not because, as it has been argued, we're trying to excuse criminal conduct. We are not. That's not why we presented that evidence. It is because there is good in him. He has redeeming qualities.

You saw the witnesses testify. You saw the

exhibits. I'll go into details about the witnesses a little bit later.

What mitigating factors are is reasons not to impose a sentence of death. You know that. We talked about it before.

The first mitigating factor that you will see on the verdict sheet is if not condemned to death, Mr. McGriff will be punished severely by life in prison without ever being released.

Now, I've added the word " severely." This word "severely" will not appear on verdict sheet. However, I think as I will go over with you, there is plenty of evidence that a punishment of life in prison is a very severe sentence. The law says so as well. The law says the punishment of life in prison without ever being released is a severe punishment, the most severe punishment short of execution.

I wanted to talk to you about future danger in prison a little bit, because Mr. Jones would have you believe that this is a rare case, the worst of the worst; that Kenneth McGriff is the worst of the worst.

You heard yesterday -- you heard yesterday about people who are the worst of the worst and where are they? Not on death row. The terrorists, people who torture people, people who murder children, murderers who kill in prison. Some of them are on ADX Florence. You heard some of their

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 11 of 116

names talked about. Mr. Kaczynski, the unibomber in Florence, not on death row.

The worst of the worst is not Kenneth McGriff. In fact, as I will talk about with you later, perhaps some of the worst of the worst sat in that witness stand (indicating) and testified to you.

1998, Kenneth McGriff pled guilty to a continuing criminal enterprise, meaning he participated in a drug organization of more than five people. That's what the law defines as continuing criminal enterprise.

He was sentenced to 12 years. Much has been made of the 1980's and the Supreme Team in an effort to have you believe that there was something to be afraid of.

He was sentenced to 12 years as a result of that CCE conviction. That term of years tells you more about the severity of the offense than anything that the government has said.

There is no evidence that the Supreme Team existed after the 1980's. None. None in this case. Think about it. None. None. Yet, that's all we hear about.

The government wants to keep the myth alive in order to further their goal. Who do you think the people are in the courtroom? Now you know who they are. It's not the Supreme Team. It's friends and neighbors and family and loved ones of Kenneth McGriff. They're people who care about him, love him.

It's not the Supreme Team. The Supreme Team was over long ago.

In addition, in November of 1988 when Kenneth McGriff pled guilty, he went to federal prison for, all together, about ten years. Do you think for one minute that if there was a single incident of violence in federal prison by Kenneth McGriff you wouldn't have heard about it from Mr. Jones? Think about that. You heard no evidence of any violence on the part of Kenneth McGriff while he was in prison, none whatsoever. Not even a tussle with a guard over toothpaste. Nothing. And if there was, it would be here.

Nevertheless, Mr. Jones would have you believe that the federal Bureau of Prisons cannot take care of Mr. McGriff. They already have. USP Allenwood in Pennsylvania, parameters, Special Housing Unit encircled there. If you look carefully, you could see the tops of the cages, the cage where you saw the rec cage.

USP Atlanta, a formidable facility, USP Beaumont, I don't think the smoke in the background has anything to do with the prison, but look at the razor wire, the gun towers. How could he be a danger in prison?

United States penitentiary, Coleman, Florida. You remember Erica Ford's video, she testified she was going down to Coleman, Florida as taking some kids down there to show them what a penitentiary was like, why it is not a pleasant

place and why they shouldn't want to go there. This is not boot camp. This is prison.

Pollock, Louisiana, U.S. penitentiary. U.S. Penitentiary Lee, in Virginia, look at those gun towers. People are in prison there.

This is ADX Florence, I should have recognized the bare hills in the background. Florence, Colorado. The Bureau of Prisons is not capable of taking care of somebody like Kenneth McGriff? I don't think so. Look at that razor wire.

I wanted to, before we go on to the next mitigating factor, I wanted to remind you very briefly of something about what prison is like, and the power of the Bureau of Prisons that can be brought to bear.

(Tape played.)

MS. BARRETT: Even if Mr. McGriff were a prisoner who presented problems like Mr. O'Driscoll there, which he is not, and you know that because there is no evidence of that. Even if he presented problems, the Bureau of Prisons is perfectly capable of taking care of those problems.

The other thing I want to point out to you about Mr. McGriff's time in federal prison is Mr. Jones made something of the idea that someone could order things to happen on the outside. You remember that, right? Did you hear anything about any of that while he was in federal prison? No, there were no orders. There was nothing, no

evidence of anything that he did while he was in federal prison that would warrant anyone to make that argument to you.

If fairness and justice are served by the sentences of imprisonment for the others responsible for the murders, then how can a lifetime in prison be the wrong punishment for Kevin McGriff? That's what you really have to decide. Is death the only right punishment? How is it wrong to sentence him to a lifetime imprisonment? This is the second mitigating factor.

You remember this, that capital punishment chronology, Nicole Brown, Dennis Crosby, Kenneth McGriff and Emanuel Mosley, death penalty was sought for about two weeks. Then the notices were withdrawn by everyone, as to everyone but Mr. McGriff.

At one point, the government of the United States as to Brown, Crosby and Mosley had decided, the Attorney General had decided that it was fair and just to seek the death penalty against them. Now it's not? Now the only person against whom death is the appropriate punishment is the only right punishment is Kevin McGriff? It doesn't make any sense. It doesn't make any sense, and fairness and justice does not demand the execution of Mr. McGriff.

Russell Allen, Barry Mungo, Alvin Smiley faced the death penalty, never authorized, the Attorney General said nope, we're not going to seek the death penalty as to them.

Alvin Smiley, not justified or necessary. Barry Mungo, death not justified or necessary. Climmiette Jordan, death not justified or necessary. Dennis Crosby, death not justified or necessary. Emanuel Mosley -- Emanuel Mosley -- who purchased the services of the others and was paid himself. Russell Allen, death not justified. Nicole Brown, death not justified. Nobody. Nobody, just Kenneth McGriff. It doesn't make any sense. How in the world is death the only right punishment for Kenneth McGriff, the only right punishment? How? How can that be?

The favorable plea agreements offered to cooperating witnesses will result in their release from prison. That's a mitigating factor as to Kenneth McGriff. That is the absolute truth.

Climmiette Jordan, what do you want the government to do, Mr. Jordan, if you fulfill your obligation? Basically, to lower my time, my 15 years.

He wants less than 15 years for murder.

Emanuel Mosley and Troy Singleton. So, two murders? Yes. How much time are you facing? Life. You're facing life imprisonment? Yes. You're still facing life imprisonment? Yes. If you hadn't cooperated, what sentence would you get? The death penalty.

(Continued on next page.)

MS. BARRETT: (Continuing.)

What is that you are hoping to receive as part of your agreement with the government?

Less than life. Home some day, less than life.

Barry Mungo, why did you kill Eric Smith?

For money.

Eric Smith didn't kill his best friend. He killed him for money.

Why did you kill Troy Singleton?

For money.

He didn't think Troy Singleton was out to get him in retaliation for the death of Eric Smith. He didn't think that. He did it for money.

When did you plead guilty to those two murders?

Yesterday.

Do you think you'll serve more than twenty years?

I don't know.

So you think it's possible that it will be less, correct?

I don't know.

You hope it's less?

Yes.

He's hoping for less than twenty years. He murdered four people, and if you think for one minute that the government wouldn't -- he didn't think the government was

going to find out about that murder that he told them about, remember the murder with E-Bay, the murder that wasn't charged here? First he murdered someone when he was seventeen years old. Then he murdered Troy Singleton and Eric Smith. Actually, with Troy Singleton he fired a bullet in his dead body so that he'd be paid. And E-Bay was already under arrest for other charges.

Don't you think that once he -- the government told him you'd better tell us everything about yourself and we will give you a pass, don't you think that he thought oh oh, I'd better tell them about this other murder. This was not he volunteered, he just brought it up, that he didn't have to.

The person -- his co-perpetrator was already under arrest. Any day now the co-perpetrator could have implicated him and then what would have happened?

Comparative culpability, I want you to look and think about the aggravating factors that are alleged as to Mr. McGriff and then think about the people who are going to get life sentences or go home because the government decided not to seek the death penalty against them.

Do you think for one minute that any of these aggravating factors do not apply to them?

Substantial planning and premeditation, every person associated with these crimes engaged in substantial planning and premeditation.

Murder by or for payment. Mr. Mosley had both ends of that. He had two aggravating factors alleged against him. Look at the notice of intent.

Two, he not only murdered for pecuniary gain. He hired somebody. Each and every one of those shooters was paid.

Prior CCE or other serious offenses, how about Emanuel Mosley? Remember, he pled guilty? He got a cooperation agreement the first time around. Got seven years for a prior CCE, when he faced a twenty-year mandatory minimum.

He has a prior CCE. Barry Mungo, he pled guilty to killing another human being. Another serious offense.

Grave risk of harm to others. Who created that risk? Climmiette Jordan shooting into the crowd, didn't he?

Barry Mungo, shooting into the car, not knowing who is there.

Victim impact, the victims are here and they would be here if the others were here too. The impact is the same. Their loss, their horrible loss is the same when it comes to all of the people who participated in these crimes.

Future danger from a continuing pattern of violence and lack of remorse. These guys are going to go home some day. They are not going to be in the United States penitentiary for the rest of their lives. They are going to

be walking the streets some day.

Who presents more of a future danger? Barry Mungo with four homicides?

Mitigating factors, the murders were motivated in part by Mr. McGriff's sincere belief that the victims and others were out to kill him.

The government agrees that this is so.

Mr. Jones, January 9, 2007, quote, Supreme asked for Mosley's help killing Eric Smith and he asked for Mosley's help killing Troy Singleton. Eric Smith, because he wanted revenge for the killing of Colbert Johnson, Troy Singleton because he was friends with Eric Smith and the defendant thought he might retaliate. Mosley agreed.

Mosley, who had nothing against these people at all.

Mitigating factors, the impact that it will have on the family and the friends of Kenneth McGriff, if he is executed.

This mitigating factor I didn't cover in opening, but I will mention briefly. Participation of the victims in dangerous and illegal activities themselves.

The murder of Colbert Johnson.

The pistol whipping and robbery and possible retaliation, loaded firearms.

Another mitigating factor, the evidence of Mr. McGriff's guilt is not sufficiently certain to justify

sentence of death.

The nature of the witnesses should be considered.

Some level of doubt.

You can be sure enough to convict, but maybe you are not sure enough to say that someone should die.

If Mr. McGriff is executed, his family and friends will suffer grief and loss.

There can be no doubt about that.

David McGriff, what effect would it have on you, if Kenny were executed?

It would be devastating. To describe it, there's all types of emotions to run the gamut, from anger, love, forgiveness. All these emotions would take place. I would feed a void I felt with my other two brothers. I would hate to see that happen to my brother Kenny.

Barbara McGriff, what effect would it have on her?

It would be basically, tear me a part.

Dwight McGriff, is your brother always someone who has been there for you?

Yes.

You love your brother?

Unable to answer, remember?

If the jury spares his life, would you stay in touch with your brother while he's incarcerated?

Yes.

Cathleen Freemantle, and her extended family. All of them would be touched by this.

Joanne, what effect would it have on you, if your brother was executed?

It would leave a hole in my life.

And she also said, I didn't get a chance to add this because it was just yesterday, even though he's not with us, he helps to keep us strong.

That's a reason to spare, those people need a lot of strength.

Irvin Stanley McGriff.

Remember when he said, at least I know where you are. But he talks to him. He cares about him. He loves him.

Mitigating factors, Mr. McGriff has proven himself to be capable of acts of kindness and generosity.

You heard Barbara and Joanne testify to that.

You heard Hermein Kitching testify to that.

Latrisha Douglas testified how he helped her with her children in getting home safe while she worked for him.

Renita McMillan talked about his work in the community.

Again, this is not to excuse or justify anything. This is just a reason not to vote for death. It is not an excuse. Not an excuse. Just a reason not to vote for death.

There has been more than enough killing already

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 22 of 116

here, more than enough pain, grief, anguish, loss.

Why add to that? When a sentence of life imprisonment without parole is a very, very severe punishment?

Mr. McGriff was attempting to move his life in a positive direction.

Bentley Morris, the exchanges between Bentley Morris and Mr. McGriff. They obviously had a mutual affection for one another. You heard Mr. Morris testify about him. He cared about him. He cared about what happened to him. He will stay in touch.

Barbara, Barbara McGriff, she was trying to help him move his life in a positive direction.

Renita McMillan talked about him and his dream.

Cathleen Freemantle talked about him and his dream.

Latrisha Douglas talked about how he talked about how he worked hard, how he tried to get the business going.

This is a mitigating factor that has been overwhelmingly proved.

Mr. McGriff's life has value.

Well, in addition to the value that it has to his immediate family that you heard about, you also heard from Richard Hogan and Gary Cliffton and Erica Ford, all of whom care about what happens to him and all of whom believe that he has value to them in their good work in the community. They believe that he can help them and they know him well enough to

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 23 of 116

know that that is true. They all grew up with him. They were children together. They know one another. They believe that he can help in their good work, from prison.

And Kenneth McGriff, what did Barbara say? If in fact they do not put me to death -- would still lend a hand in helping the best way I can because I would never turn my back on people in need.

He told his sister he would do that. She is the person who loves him, cares about him and has tried to give him direction and he has confided in her and he told her he would do this.

So I am asking you to choose life over death. I am about to hand his life to you. I started out at the beginning, a couple of days ago, and I told you, that I held Kenneth McGriff's life in my hand, and Mr. Ruhnke, and we are turning his life over to you. We are turning the future of his family over to you.

His life has value.

It need not be extinguished.

And remember when Ms. Cameron was talking about her loss, her son Eric. She talked about him and said, it's just -- death is just too much. What do you think she meant by that?

It's too much for everyone. There is grief everywhere.

We don't need more grief.

I wanted to close by doing a little analogy, telling you a story.

Many years ago, in the United States, and in many other countries, the method of execution was by firing squad and there were six executioners at least, armed with rifles, who were sent out to put the convicted person to death. When those people received their rifles, each one of them knew that when they were loaded, someone had blanks. Why was that? They had blanks because some day down the road maybe someone would decide that death wasn't the right punishment and it would be too late and the -- each of those six could say, but it might not have been me who killed him. I might have been the one with the blanks.

None of you has blanks. Each vote is required in order to sentence someone to death. Each of you will be responsible for the verdict, because all of you must vote for death if there is to be death.

Is death the only right punishment for Kenneth McGriff?

I ask you to end the cycle of grief for this community, this family, for all of the families, and for all of us, and I will ask you for mercy, and I am not ashamed of it. I am not ashamed of standing in front of you and asking for mercy, as Mr. Jones predicted. I ask you for mercy. I

ask you to end the cycle of grief and spare Kenneth McGriff's life and he will be sentenced for the rest of his life in prison, a severe, severe punishment.

Death is not the only answer here and, therefore, each and every one of you should vote for a sentence of life imprisonment, all of you, unanimously. It is not the only answer. It cannot be.

Thank you.

THE COURT: Thank you, Ms. Barrett.

Do you wish to go forward now? Do you need a few minutes, Mr. Jones?

MR. JONES: It is up to you.

THE COURT: You make the call. Does anybody need a break?

I think we can go forward.

MR. JONES: Okay.

Ladies and gentlemen, I am going to be very brief. But what I wanted to do first, like Ms. Barrett, is to thank you for being here. I know that since you were brought down here in November, answered these questionnaires, came in here, talked to us about your views of the death penalty, listened to the evidence, you have been very patient and on behalf of the United States I thank you for your service.

There are a few things that Ms. Barrett said that I am going to respond to, just to clear it up, and then the

judge is going to instruct you on the law.

Ms. Barrett started off by talking to you a little bit about hypocrisy. She said that the other people on the list that you will have in the jury room from Emanuel Mosley right down to Climmiette Jordan, that those men should be your focus.

That those men, that Supreme McGriff hired to go out and kill Troy Singleton and Eric Smith, that those people should be your focus, those people who pled guilty to their crimes, who told the government about crimes they never were charged with, who came in here and testified on the stand to tell you about the man who paid them. The defense still insists that Mr. McGriff doesn't deserve a death penalty if they don't.

But what weight does that have? What weight does it have when Supreme McGriff marks two men for death, hires their killers, and then he wants you to hold him no more responsible than the foot soldiers who carried it out?

It is up to you what weight to give that argument.

Ms. Barrett also talked to you a little bit about what she called favorable plea agreements. It is up to you to decide if those are favorable plea agreements. You saw them before. You had them in the jury room. You can take them back with you again.

Those are precise written clear agreements. They

tell you two things.

They tell you, first, that if those people lie, they are going to jail for the rest of their life and there is nothing the judge can do about it. That's it.

And if they tell the truth, the judge is going to sentence them, and only he knows what sentence they are going to get. Only he knows if they are ever going to be out on the streets again. Not the defense, and not the government. He knows it.

The defense also would have you believe that at the time of these murders Mr. McGriff was trying to move his life in a positive direction. He wasn't trying very hard.

Did he make a movie? Yes.

Did he put on shows at clubs? Yes.

But did he also kill two people while he's doing that? Yes.

And she mentioned to you that Mr. McGriff has proven himself worthy of acts of kindness, acts of generosity, she said. She gave you some examples. The witnesses gave you some examples.

Mr. McGriff bought ice cream for the local kids. He threw barbecues. He put on basketball games.

As Reverend Hogan told you, that took place back in the 1980s, at the same time, at the same time Kenneth McGriff was running the Supreme Team and selling drugs on the same

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 28 of 116

streets in the same parks and in the same neighborhood.

What weight does it have when you are handing out candy bars at the same time you are passing around heroin? What weight does that have?

There are two more mitigating factors that I want to go over with you before you retire.

The first of those is when Ms. Barrett told you that at the time of their deaths, Mr. McGriff was under the sincere belief that the victims were out to kill him. She put up something from my opening statement on January the 9th.

The only piece of evidence in this case, the only evidence was that Supreme wanted Eric Smith dead because he thought Eric Smith killed Colbert Johnson. What is that? Is that fear? That's revenge. That's revenge.

What about Troy Singleton? You heard that Troy Singleton was Eric Smith's friend. You heard that Troy Singleton had been in a fight with some of Supreme's friends.

But what evidence is there that Supreme McGriff had a sincere belief that Troy Singleton was out to kill him?

What evidence is there other than a risk he created himself?

But even if there were some evidence of that, even if, as Ms. Barrett suggested to you, there were any evidence, any evidence that Supreme sincerely believed that Troy Singleton was out to get him, how does that in any way lessen

GR OCR CM CRR CSR

his responsibility for these murders?

He kills Eric Smith and then he gets worried that one of his friends might come kill him. Troy Singleton was murdered because he was unlucky enough to have Eric Smith as a friend after Eric Smith was murdered. That's it. And Supreme McGriff has no right, he has no right, to benefit from a fear of his own creation.

And finally, ladies and gentlemen, and most unbelievably, the defense wants you to find that by voluntarily choosing to engage in violent criminal conduct, you will see this in the mitigating factors, that the victims in this case willingly participated in a dangerous and illegal activity, a circumstance that contributed to their unfortunate deaths.

Their unfortunate deaths? He has no right to murder those people and then call their deaths unfortunate. A car accident is unfortunate. Disease is unfortunate. Murder that you caused is not unfortunate.

Your verdict found him responsible for that and we ask you to hold him to it.

Ladies and gentlemen, when you look at all the evidence in this case, and when you think about all the moments in a person's life, the little moments, the big moments, it leads you back to the ultimate question of what justice demands. What does justice demand when a man takes

away the fathers of children, and then relishes in it?

If Kenneth McGriff is sentenced to life, he is going to live out the rest of his life socializing, doing odd jobs, watching TV, and, most importantly, getting to see his family and that's not good enough.

Ms. Barrett spoke a little bit about hypocrisy. Well, Kenneth McGriff wants another chance when he never gave one to his victims. He wants life when he stole two. He wants mercy when he showed none.

Kenneth McGriff deserves the ultimate penalty for the horrible crimes he's committed and for the danger he represents.

When you came into this courtroom, each and every one of you took an oath. You told us and you told the judge when you were asked that if the government proved its aggravating factors, if we proved that to you beyond a reasonable doubt, and if they outweigh the mitigating factors, you told us, every one of you told us, that you could impose the death penalty. We ask you to do that now. Follow your oaths, follow the law. Supreme McGriff has earned this verdict and it is the verdict that's consistent with the evidence.

Justice demands one sentence for the senseless deaths of Troy Singleton and Eric Smith, and for that reason we ask you to return a sentence of death.

Thank you for your service.

THE COURT: Thank you, Mr. Jones.

Now what we are going to do is we will take a little break. I am just putting some polishing parts to the charge. It will take me perhaps about twenty minutes or so. So we are moving along nicely.

Don't talk about the case. The next time you come to court you will hear my instructions on the law.

(The following occurred in the absence of the jury.)

THE COURT: Please be seated.

What I need to do now is just make some edits in a number of places to the charge, to be consistent with what we spoke about in terms of prescinding between the mitigating facts that had been established as compared to those that the jury has to resolve. That is going to take me a few minutes. You know that we are conceptually on the same page. I just want to make the language consistent throughout the charge.

So that will take me about fifteen minutes or so. Then I am going to come back and I am going to show you where I have made the changes and then we will go forward.

MR. JONES: Thank you.

THE COURT: Okay.

(Recess taken.)

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 32 of 116

(Court resumed)

(Jury not present)

THE COURT: All right. Now, I'm going to give you the revised jury instructions and the revised verdict form.

The changes I have made, hopefully, do address what we spoke about earlier. There will be some further editings that you will see as I speak to the jurors which will be self-evident, so there will be some additional changes that will be made before the instructions are given to the jury. I plan to give them to the jury. But note on the verdict sheet, to be consistent with what we spoke about, we changed the language to eliminate the fact that they may not find any mitigating factors since now they must find -- so it now reads in respect to both Smith and Singleton in section five we, the jury, unanimously find beyond a reasonable doubt that the aggravating fact or factors found to exist sufficiently outweigh the mitigating factors, so that death is the appropriate sentence. So that logically conceptually flows since we were speaking about there are mitigating factors, and the changes that I have made throughout the text should comport with that conceptual change, and if there's any slip up you will be, I am sure, not bashful to let me know after I give the charge, and I think we are ready to go. Okay.

MR. RUHNKE: Yes.

THE COURT: So let's bring in the jurors.

We have marked Court Exhibit 32, the proposed exhibit list, and everybody's in agreement that that is correct and we'll send it into the jurors.

MS. POKORNY: Yes.

THE CLERK: All rise.

(Jury now present)

THE CLERK: You all maybe seated.

All right. I told you I'm going to come down and speak to you in the well.

I appreciate your patience, all these details, we want to try to get them down correctly. The written charge is 27 pages, so it's significantly less than the charge I gave you on the guilt phase, so we should have this done by one o'clock and the food will come in at that time, so I think that time-wise we are well coordinated.

I will give you a copy of this also, and I will put some headings in there, a table of contents. The same instructions I gave to you before about how to use the charge as a guide apply here as well. You are not to be drawing any conclusions from any of the headings I put in here. You understand they are just there to facilitate and help you along in your deliberations and I am not going to repeat all of that again to you.

I should get that into probably within a half hour after I give you the oral charge and you, of course, can start

your deliberations while you eat.  You know, naturally you can

decide to take an eating break before you start your

deliberations.  That is all up to you. Also, you'll have the

rest of day or as much time as you need to make this decision

and if you want to stay later tonight let me know.  If you

want to come back on Monday you, of course, will let me know,

but just take whatever time you need knowing that we are here

to offer you whatever comfort and support we can during your

deliberations.

Now, that the attorneys have concluded their closing

arguments, it is my responsibility to instruct you on the law

applicable to sentencing in a capital case.  As you previously

found the defendant guilty on Count Six (the murder-for-hire

of Eric Smith) and Count Eleven (the murder-for-hire of Troy

Singleton), the sole question before you now is whether or not

the defendant should be sentenced to death on one or both of

those counts.  Although there are two capital counts,  you

must approach your sentencing decision one count at a time.

Some of the instructions I am about to give you

repeat the instructions I gave you in connection with the

guilt phase; others are different.  The instructions I am

giving you now are a complete set of instructions on the law

that you are to rely on for this phase of the case.

As with the guilt phase, you must accept my

instructions, regardless of any opinion you may have as to

what the law is or should be.  It would be a violation of your
oaths as jurors to base your decision on any view of the law
other than that which I give you.

I cannot stress to you enough the importance of
giving careful and thorough consideration to your decision.
The decision is yours, and yours alone, to make; the law never
requires a jury to impose a death sentence.  And whatever your
decision, the Court is required to follow it.

Now, although Congress has left it wholly to you to
decide whether the defendant should be sentenced to death, it
has narrowed and channeled your discretion in specific ways by
requiring you to consider and weigh any "aggravating" and
"mitigating" factors that may be present in this case.  As I
explained previously, these factors have to do with
circumstances of the crime, or personal traits, character, or
background of the defendant, or anything else relevant to the
sentencing decision.  Aggravating factors are those that might
tend to support the imposition of the death penalty.  By
contrast, mitigating factors are those that suggest that the
death penalty is not an appropriate sentence in this case.

You are called upon, therefore, to evaluate
aggravating and mitigating factors and to make a unique,
individualized choice about whether the defendant should
receive the death penalty.  In short, the law does not assume
that every defendant found guilty of murder-for-hire should be

sentenced to death. Rather, your decision on the question of punishment is a uniquely personal judgment which the law, in the final analysis, leaves up to each one of you.

BURDEN OF PROOF

The government has the burden of proving beyond a reasonable doubt that the appropriate sentence for the defendant is, in fact, the death penalty. Specifically, that means that the government must prove as to each capital count all of the following beyond a reasonable doubt: (1) the existence of a required preliminary factor; (2) the existence of at least one statutory aggravating factor; (3) the existence, if any, of certain non-statutory aggravating factors; and (4) that all of the aggravating factors, statutory and non-statutory, found to exist sufficiently outweigh any mitigating factors as to make a sentence of death appropriate.

As I previously explained during the guilt phase, a reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of the evidence. Proof beyond a reasonable doubt must be proof of such a convincing character that a reasonable person would rely and act upon it without hesitation in the most important matters of his or her own affairs. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

A defendant never has the burden of disproving the

existence of anything which the government must prove beyond a reasonable doubt. The burden is wholly upon the government; the law does not at all require the defendant to produce evidence that a particular aggravating factor does not exist or that death is not an appropriate sentence.

The defendant is also not required to assert or establish any mitigating factors; however, where, as here, the defendant has asserted one or more mitigating factors, It is his burden to establish the existence of those mitigating factors, other than those that have been established as a matter of law, by a preponderance of the evidence.

To prove something by a preponderance of the evidence is a lesser standard of proof than proof beyond a reasonable doubt. To prove something by a preponderance of the evidence is to prove that it is more likely so than not so. Thus, if the evidence is equally balanced, you cannot find that the mitigating factor has been proved.

The preponderance of the evidence is not determined by the greater number of witnesses or exhibits presented. Rather, it is the quality and persuasiveness of the information which controls.

One final word about the burden of proof: The assertion of mitigating factors by the defendant does not affect the requirement that the government prove the aggravating factors beyond a reasonable doubt.

EVIDENCE

In making your determinations, you may consider any information or evidence presented during this penalty phase or during the earlier guilt phase. For present purposes, the terms "evidence" and "information" have the same meaning.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it. In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to see or hear things testified about, the witness's memory, any motives that a witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

Some of the evidence you heard was in the form of expert testimony. The expert was allowed to express an opinion on those matters about which he has special knowledge and training; his testimony was presented to you on the theory

that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

As I told you during the guilt phase, in weighing expert testimony, you may consider the expert's qualifications, his opinions and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or nor to believe a witness's testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence. You should not, however, accept the expert's testimony merely because he is an expert; nor should you substitute it for your own reason, judgment and common sense.

As I also told you during the guilt phase, when the attorneys on both sides stipulate - that is, agree - to the existence of a fact, you must accept the stipulation and consider the fact or facts as proven.

The law does not permit any witness to state whether he or she personally favors or opposes the death penalty in this case; therefore, you should draw no inference either way from the fact that no witnesses have testified as to their views on this subject.

Finally, I remind you that the attorneys' opening statements, their questions and their closing arguments is not evidence.

DEFENDANT'S RIGHT NOT TO TESTIFY

The defendant did not testify, and he had the right not to do so. Just as the law placed no burden on the defendant to prove himself not guilty, there is no burden on the defendant to prove that he should not be sentenced to death; instead, the burden is on the prosecution to prove, beyond a reasonable doubt, that a sentence of death is, in fact, justified.

Accordingly, the defendant's decision not to testify must not be considered by you in any way, or even discussed, in arriving at any aspect of your sentencing decision, including the existence or non-existence of an aggravating or mitigating factor.

SEPARATE DELIBERATIONS

With one exception, which I will explain when I come to it, my instructions apply to both capital counts; however, you must determine the appropriate sentence for each count separately. Each count involves a different crime with a different victim, and you may find differences that would justify the death penalty for one count, but not the other.

THE DELIBERATIVE PROCESS

I will now explain the steps you should follow in considering the very serious issue before you. As I explained in my preliminary instructions, those steps are: (1) consideration of a preliminary factor, (2) consideration of

statutory aggravating factors, (3) consideration of non-statutory aggravating factors, (4) consideration of mitigating factors, and (5) weighing aggravating factors against mitigating factors.

In addition to these instructions, I have prepared a Special Verdict Form that you will complete. The form follows the steps I have just listed, and will therefore aid you in properly performing your deliberative duties.

Let me now explain each of the steps in more detail.

STEP ONE: PRELIMINARY FACTOR

Before you may consider the imposition of the death penalty for either capital count, you must first unanimously find that the government has proved beyond a reasonable doubt the existence of a preliminary factor regarding the defendant's intent. For both capital counts, the government alleges a single preliminary factor: That the defendant "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act." With respect to Count Six, the other person is Eric Smith and, with respect to Count Eleven, Troy Singleton.

I remind you that a person acts intentionally if he acts with the intent to do something the law forbids. The

person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the intent to do whatever it is the law proscribes, in this case causing the death of another.

In Section I of the Special Verdict Form, you will be asked whether you unanimously find that the government has proved beyond a reasonable doubt the required preliminary factor. In the event that you unanimously find, beyond a reasonable doubt, that the required preliminary factor has been proved, you will answer "yes"; if you do not unanimously find that the required preliminary factor has been proved beyond a reasonable doubt, you will answer "no." You will be asked to make a finding for each of the two capital counts. With respect to each count, you should mark the appropriate space in Section I.

As I stated earlier, if you do not unanimously find that the government has proved beyond a reasonable doubt the required preliminary factor for a particular count, your deliberations as to that count will be over and the Court will impose a sentence of life imprisonment without the possibility of release.

If you do, however, find that the requisite preliminary factor has been proved, you will go on to Step Two, which I will now explain to you. I instruct you, however, that the required preliminary factor is not an

aggravating factor and may not be weighed by you in deciding whether or not to impose a sentence of death.

STEP TWO: STATUTORY AGGRAVATING FACTORS

If and only if you unanimously find that the government has proved, beyond a reasonable doubt, the required preliminary factor as to a particular count, you must then determine whether the government has proved, beyond a reasonable doubt, the existence of the following statutory aggravating factors with respect to that count.

For both Count Six and Count Eleven, the government has alleged three statutory aggravating factors:

1. That the defendant "committed the offense after substantial planning and premeditation to cause the death of a person";

2. That the defendant "procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value"; and

3. That the defendant "has previously been convicted of engaging in a continuing criminal enterprise."

With respect to Count Six only, the government alleges as a fourth possible statutory aggravating factor that the defendant "in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense."

At this point the law directs you to consider and

decide as to each count for which you have unanimously found
the existence of the required preliminary factor, the
existence or non-existence of the alleged statutory
aggravating factors specifically claimed by the government.
You are reminded that to find the existence of a statutory
aggravating factor as to a particular count, your decision
must be unanimous and beyond a reasonable doubt.  Any finding
that one or more of these factors has been proven must be
based on the defendant's personal actions and intent.

Let me now instruct you in detail on the specific
elements necessary for the government to prove each of these
statutory aggravating factors.

1.    Substantial Planning and Premeditation

The first statutory aggravating factor alleged with
respect to both capital counts is that the defendant committed
the offenses after substantial planning and premeditation.

"Planning" means mentally formulating a method for
doing something or achieving some end.

"Premeditation" means thinking or deliberating about
something and deciding beforehand whether to do it.

"Substantial" planning and premeditation means a
considerable or significant amount of planning and
premeditation.

To find that the government has satisfied its burden
of proving beyond a reasonable doubt that the defendant

engaged in substantial planning and premeditation to cause the death of a person, you must unanimously agree that the particular object of the substantial planning and premeditation was to cause the death of a person.

2. Procurement by Payment

The second statutory aggravating factor alleged with respect to each capital count is that the defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value. In other words, the government alleges, with respect to Count Six, that the defendant paid or promised to pay someone to kill Eric Smith and, with respect to Count Eleven, that the defendant paid or promised to pay someone to kill Troy Singleton.

As I explained during the guilt phase, "anything of pecuniary value"means money, negotiable instruments, or anything else having some economic value, benefit or advantage.

3. Conviction for Continuing Criminal Enterprise

The third statutory aggravating factor alleged with respect to both capital counts is that the defendant has previously been convicted of engaging in a continuing criminal enterprise. During the guilt phase, the parties stipulated that in 1988, the defendant was convicted of engaging in a continuing criminal enterprise; the stipulation was admitted as Exhibit 507 and the judgment of conviction as Exhibit 28.

4. Grave Risk of Death to Others (Count Six only)

The fourth statutory aggravating factor, which the government alleges with respect to Count Six only, is that in committing the offense charged in that count, the defendant

knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.

The term "grave risk of death" requires no further definition. The government must also prove, however, that the defendant "knowingly created" such a risk. As I told you during the guilt phase, a person acts knowingly if he acts purposely and voluntarily and not because of a mistake, accident or other innocent reason.

In Section II of the Special Verdict Form, you will be asked to indicate whether the government has proved beyond a reasonable doubt the alleged statutory aggravating factors that I have just described to you. In the event that you unanimously find, beyond a reasonable doubt, that a statutory aggravating factor has been proved beyond a reasonable doubt, you will answer "yes"; if you do not unanimously find that a statutory aggravating factor has been proved beyond a reasonable doubt, you will answer "no." You will be asked to make a finding for each of the statutory aggravating factors alleged in connection with each of the two capital counts.

If you do not unanimously find that the government has proved at least one statutory aggravating factor beyond a reasonable doubt with respect to a particular count, your deliberations for that count will be over and the Court will impose a sentence of life imprisonment without the possibility of release. If, on the other hand, you do unanimously find that the government has proved at least one statutory aggravating factor beyond a reasonable doubt for a particular

count, you will go on to Step Three, which I will now explain to you.

STEP THREE: NON-STATUTORY AGGRAVATING FACTORS

If and only if you have unanimously found that, with respect to a particular count, the government has proved, beyond a reasonable doubt, the existence of the required preliminary factor and at least one statutory aggravating factor, you must then consider whether the government has proved the existence of non-statutory aggravating factors with regard to the same count. You must all agree that the government has proved a non-statutory aggravating factor beyond a reasonable doubt before you may consider that factor in your deliberations.

The law permits you to consider and discuss only the two non-statutory aggravating factors listed below. You are not free to consider any other facts in aggravation that you conceive of on your own.

For both capital counts, the government alleges the same two non-statutory aggravating factors; they are as follows:

1. That the defendant "caused injury, harm, and loss to the victim, the victim's family, and the victim's friends." The government alleges that this factor is demonstrated by (a) "the victim's personal characteristics as an individual human being", and (b) "the impact of the death

upon the victim's family and friends." These allegations are self-explanatory, and do not require further instruction.

2. That if incarcerated for life without parole, the defendant nevertheless "poses a risk of future dangerousness." The government alleges that this factor is demonstrated by (a) "a continued pattern of violence," including, but not limited to, the defendant's "contemporaneous convictions for multiple murders"; and (b) "lack of remorse."

Let me say a few words about this second non-statutory aggravating factor. First, you must limit your consideration to the risk of future dangerousness that the defendant poses while serving a life sentence in prison without the possibility of release. Second, you are to consider the government's allegations that the defendant has engaged in a continued pattern of violence and has demonstrated a lack of remorse only insofar as you think they tend to prove that the defendant poses a risk of future dangerousness. Third, in considering whether the defendant poses such a risk, I remind you that the defendant has no burden to demonstrate that an aggravating factor does not exist; thus, for example, he has no burden to prove remorsefulness. While you may consider the evidence that the defendant has put forth to show that he does not pose a risk of future dangerousness, you must remember that the burden is

on the government to prove beyond a reasonable doubt that he does pose such a risk.

Again, your findings regarding these non-statutory factors must be separate and unanimous with regard to each capital count you are considering.

In Section III of the Special Verdict Form, you will be asked to indicate whether the government has proved beyond a reasonable doubt the alleged non-statutory aggravating factors that I have just described to you. In the event that you unanimously find, beyond a reasonable doubt, that a non-statutory aggravating factor has been proved, you will answer "yes"; if you do not unanimously find that a non-statutory aggravating factor has been proved beyond a reasonable doubt, you will answer "no." Again, you will be asked to make a finding for each of the non-statutory aggravating factors alleged in connection with each of the two capital counts.

Unlike the rules relating to the preliminary factor and the statutory aggravating factors, you are not required to find a non-statutory aggravating factor with regard to a particular count before you may consider the death penalty as the possible sentence for that count. Rather, the law only requires that before the jury may consider a non-statutory aggravating factor, the jury must first unanimously agree that the government has proved beyond a reasonable doubt the

existence of that factor as to that count. Remember, however, that unless you are unanimous that the existence of a particular statutory or non-statutory aggravating factor has been proven by the government beyond a reasonable doubt, you may not give that factor any further consideration whatsoever during your deliberations.

After you have completed your findings regarding the existence or non-existence of non-statutory aggravating factors, you will proceed to Step Four, which I will now explain to you.

STEP FOUR: MITIGATING FACTORS

Before you may consider the appropriate punishment for any of the capital counts for which you have unanimously found the existence of the required preliminary factor and at least one statutory aggravating factor, you must consider whether the defendant has proved the existence of any mitigating factors with regard to that count.

A mitigating factor is not offered to justify or excuse the defendant's conduct; rather, it is simply something about the defendant's life or character, or about the circumstances surrounding the particular capital offense, or any other relevant consideration, that would suggest, in fairness, that a sentence of death is not an appropriate punishment in this case.

The defense offers 16 factors for your

consideration, namely:

1. If not sentenced to death, Mr. McGriff will be punished by a sentence of lifetime imprisonment with no possibility of release.

2. Emanuel Mosley ("Manny Dog") will not be sentenced to death for his role in the murders of Mr. Smith and Mr. Singleton.

3. Barry Mungo ("Barry Broughton") will not be sentenced to death for his role in the murders of Mr. Smith and Mr. Singleton.

4. Alvin Smiley will not be sentenced to death for his role in the murders of Mr. Smith and Mr. Singleton.

5. Russell Allen ("Les") will not be sentenced to death for his role in the murder of Mr. Smith.

6. Dennis Crosby ("How about") will not be sentenced to death for his role in the murders of Mr. Smith and Mr. Singleton.

7. Nicole Brown will not be sentenced to death for her role in the murder of Mr. Smith.

8. Climmiette Jordan will not be sentenced to death for his role in the murder of Mr. Smith.

9. The favorable plea agreements offered to the cooperating witnesses in this case is something that weighs against imposition of a sentence of death for Mr. McGriff.

10. By voluntarily choosing to engage in violent

criminal conduct, the victims in this case willingly participated in dangerous and illegal activities, a circumstance that contributed to their unfortunate deaths.

11. The murders in this case were motivated, in part, by Mr. McGriff's sincere belief that the victims, and others, were out to kill him.

12. The evidence does not establish Mr. McGriff's guilt of the capital crimes with sufficient certainty to justify imposition of a sentence of death.

13. If Mr. McGriff is executed, his friends and family will suffer grief and loss.

14. Mr. McGriff has proven himself to be capable of acts of generosity and Kindness.

15. At the time of the murders, Mr. McGriff was attempting to move his life in a positive direction.

16. Mr. McGriff's life has value.

(Continued on next page)

THE COURT: (Continuing) Although most of the mitigating factors submitted by the defendant require little elaboration beyond the ordinary meaning, I wish to instruct you further on a few of them.

First, I instruct you mitigating factors 1 through 8, are true statements, are the witnesses, cooperating witnesses, are true statements. It is true, in other words, for example, Barry Mungo will not be sentenced to death for the two individuals; the others are true as well.

Second, mitigating factors 2 through 8 ask you to consider a number of the other individuals who could have faced the death penalty for the murders of Eric Smith and/or Troy Singleton, but are not. In evaluating the individual circumstances of each such individual, you are asked in essence: If fairness and justice can be served by declining to seek the death penalty in those cases, is there any reason that fairness and justice cannot similarly be served by declining to vote for the death penalty in this case.

In evaluating this issue, you should consider the roles played in the murders by these other individuals and what you have learned about their background and history. Thus, in weighing these mitigating factors, you may consider whether it is fair and reasonable that the defendant faces the death penalty, while these particular individuals do not.

Similar considerations come into play in connection

with mitigating factor number 9, which asks you to consider whether the favorable plea agreements offered through the cooperating witnesses in this case is something that weighs against imposition of a sentence of death for the defendant. In that respect, all the cooperating witnesses who testified before you during the guilt phase are facing life imprisonment without the possibility of release for their roles in the murders of Eric Smith and/or Troy Singleton. If those witnesses fully comply with their cooperation agreements, the government will, under the terms of those agreements, inform the witness' sentencing judge of the nature and extent of their cooperation. I think I will probably be the sentencing judge in all those cases.

The sentencing judge will then decide whether to impose a sentence of less than life in prison without the possibility of release. Because of the value of the government's cooperating witnesses, sentencing judges usually sentence cooperators to less time than they otherwise would receive if not for their cooperation. I have total discretion there.

Finally, mitigating factor number 12 asks you to consider whether the evidence establishes the defendant's guilt of the capital crimes with sufficient certainty to justify imposition of a sentence of death. This factor is not intended to call into question your verdict at the first stage

SG OCR CM CRR CSR

of the trial. It does, however, where you found proof beyond a reasonable doubt. It does however require you to think about the level of certainty that you feel regarding the defendant's guilt of one or both of the capital crimes.

Proof of guilt beyond a reasonable doubt does not require 100 percent certainty. I explained to you that before. It may be in your individual views of the evidence a difference between proof that was sufficient to find guilt and proof that is sufficient to impose a sentence of death on another human being.

Thus, if you were sure enough of the defendant's guilt to convict him but harbor some level about his guilt that makes you uncomfortable about voting for the death penalty, you should find this mitigating factor proven.

The law regarding mitigating factors differs from the law regarding aggravating factors in several important respects which I will now explain to you.

As I just told you, mitigating factors 1 through 8 have been established as true. With respect to the remaining mitigating factors, you are to determine whether the defendant has established them by the requisite burden of proof, that is the preponderance of the evidence.

As I previously explained, it is the defendant's burden to establish a mitigating factor only by a preponderance of the evidence. Mitigating factors 1 through 8

you need not engage in that process because they're established as factually correct.

This is a lesser standard of proof than proof beyond a reasonable doubt. I'm telling you about preponderance of the evidence, again for the fourth time. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is, more likely than not, true. If, however, the evidence is equally balanced, you cannot find that the factor has been proved. I'm repetitious; my apologies.

Second, unlike aggravating factors, which you must unanimously find proven beyond a reasonable doubt before considering them in your sentencing decision, the law does not require unanimity with regard to mitigating factors. Unanimity is required in terms of the government's burden, not in terms of finding mitigating factors 1 through 8 have been established by the preponderance of the evidence in respect to those mitigating factors which you must consider in terms of whether they've been factually established.

Again, since mitigating factors 1 through 8, have been have been established as true, you must all consider them in your sentencing decision. You have no option in that

respect.

With respect to the remaining mitigating factors, there's 9 through 16, any one juror whose persuaded of the existence of mitigating factors must consider it in his or her sentencing decision. You may have different views of this type of thing. You consider this. If any one of you find it, that means that individual juror must consider that in weighing the result.

Finally, while the law limits your consideration of aggravating factors to those specifically alleged by the government, the law does not limit your consideration of mitigating factors to those articulated in advance. Thus in addition to the 16 mitigating factors specifically raised by the defendant, the law permits each of you to consider anything about the circumstances of the offense or anything about the defendant's background, record or character or any other relevant consideration that you individually believe mitigates against the imposition of the death penalty. If there's any mitigating factors that's not argued by the defendant's attorney but which any juror, whether on his or her own or with others, finds to be establish by a preponderance of the evidence, that juror is free to consider it in his or her sentencing determination.

You may have other thoughts here in terms of mitigating. You can't engage in speculation as far as the

SS OCR GM CRR CSR

aggravating factors. The door is open to you to consider whether you believe there may be other mitigating factors.

The existence of a mitigating factor is a distinct consideration for whatever weight, if any, should ultimately be given that factor in your deliberations. For example, any number of jurors might first find a particular mitigating factor is factually true, i.e., that is the factor exists -- where the jurors are called upon to make this factual determination -- but those jurors as individuals might later choose to give mitigating factors different levels of significance during the weighing process.

Section IV of the Special Verdict Form, you will be asked to identify any mitigating factors, other than those that have already been established as a matter of law, that one or more of you independently finds to exist by a preponderance of the evidence. Since such a finding you need not be made unanimously, you will only be asked to report the total number of jurors who individually find a particular mitigating factor to be established by a preponderance of the evidence.

In addition, since you are not limited to consideration of the 16 mitigating factors offered by the defendant, there will be space on the form to indicate any additional mitigating factor or factors that any juror has individually found to be established by a preponderance of the

evidence, as with the factors offered by the defendant, you will be asked to report the total number of jurors who have considered such factor or factors. You'll see all that laid out when I give you the verdict form.

After you have completed your findings regarding the existence or nonexistence of the mitigating factors, you will proceed to Step Five, which I'll now explain to you. That is the all important weighing of factors. Just let me take a water break.

I feel conspicuous when I take water.

Anybody want to stretch?

If and only if you unanimously find beyond a reasonable doubt that the government has proved the existence of the required preliminary factor and at least one statutory aggravating factor with regard to any capital count, and after you then determine whether the government has proved beyond a reasonable doubt the existence of any non-statutory aggravating factors with regard to that count, and after you then determine whether the defendant has proved the existence of any mitigating factor that must be established by a preponderance of the evidence, you must then engage in a weighing process with regard to that count, each count. This weighing process asks whether you are unanimously persuaded beyond a reasonable doubt that the aggravating factor or factors you have found to exist sufficiently outweigh the

mitigating factors, whether established as a matter of law or by a preponderance of the evidence, to call for a sentence of death on the particular capital count your considering.

In the event you unanimously find that the required preliminary and at least one statutory aggravating factor has been proved beyond a reasonable doubt with respect to both capital counts, you're to conduct this weighing process separately with regard to each count.

Each juror must individually decide whether the facts and circumstances in this case as to each count call for death as the appropriate sentence. In determining the appropriate sentence for the count you are considering, all of you must independently weigh the aggravating factor or factors that you unanimously found to exist with regard to that count, whether statutory or non-statutory and each of you must weigh the mitigating factors. You are not to weigh the required preliminary factor I told you as part this process. I explained that to you before.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or any other arbitrary consideration. Your deliberations should be based upon the evidence you have seen and heard and the law on which I've instructed you.

Again, whether or not the circumstances of this case call for sentence of death is a decision that the law leaves

SG OCR CM CRR CSR

entirely to each you. Remember all 12 jurors must agree beyond a reasonable doubt that death is in fact the appropriate sentence before the jury can impose the death penalty and that no jury is ever required by the law to impose a death sentence. The decision, once again is yours as individuals to make.

The process of weighing aggravating and mitigating factors against each other in order to determine the proper punishment is by no means a mechanical process. In other words, you should not simply count the total number of aggravating and mitigating factors and reach a decision based on which number is greater. Rather, you should carefully consider the weight and value of each factor. In weighing these various factors, you are called upon to make a unique individual judgment about the sentence the defendant should receive.

The law contemplates different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined or that the aggravating factors proved do not standing alone justify imposition of a sentence of death beyond a reasonable doubt.

Similarly, you may instead find a single aggravating factor sufficiently outweighs beyond a reasonable doubt all mitigating factors combined so as to justify a sentence of

death.

I stopped because we all do that, somebody walks in, it's an open courtroom, everybody can come. I stop because my attention is the same, I look to see who came in here. We're all back focusing on me now? I'm better than looking at them.

Similarly, you may instead find a single aggravating factor sufficiently outweighs beyond reasonable doubt all mitigating factors combined so as to justify a sentence of death. Any one of you is free to decide a death sentence should not be imposed so long as, based on the evidence and your sense of justice, you conclude that the proven individual factors do not sufficiently outweigh mitigation such that the death penalty should be imposed.

Each juror is to decide individually what weight or value is to be given to a particular aggravating or mitigating factor in a decision-making process. Bear in mind, however, in order to find that a sentence of death is appropriate for a particular count, the jurors must be unanimous in their conclusion beyond a reasonable doubt that the aggravating factor or factors proven as to that count sufficiently outweigh the mitigating factors.

In Section V of this Special Verdict Form you'll be asked whether the government has proved beyond a reasonable doubt that a sentence of death is called for. You will make this finding separately for any of the capital counts for

which you've unanimously found the requisite preliminary factor and at least one statutory aggravating factor proved beyond a reasonable doubt. I remind that with respect to both count six and count 11, the only possible sentences are one, death or two, life imprisonment without the possibility of release.

Thus, if after engaging in the balancing process I've just described and engaging in thorough deliberation, you unanimously find beyond a reasonable doubt that a sentence of death is called for in a particular count, you will so indicate on the verdict form.

If you unanimously find a sentence of death is not called for on a particular count, you will so indicate on the verdict form.

If after engaging in the balancing process I've described to you and following thorough deliberations, all 12 members of the jury do not unanimously find beyond a reasonable doubt that the defendant should be sentenced to death on a particular count, then you may not impose the death penalty for that count. You should so indicate on the verdict form.

Before you reach any conclusion based on the lack of unanimity, however, you should continue your discussions until you're fully satisfied that no further discussion will lead to a unanimous decision. Only in the event that you do determine

that no further discussion will lead to unanimous decision should you so advise the court by marking the appropriate space on the Special Verdict Form.

You can consider whether you unanimously decide death is proper or whether you unanimously decide whether life in prison without release is proper. You are to give that due deliberation. You don't just go in there, have a little count, come out and say we can't unanimously agree. You have to try to come to unanimous agreement as to whether death is the proper punishment or come to unanimous agreement if it is not.

If you can't, after due deliberation, after carefully considering everything that you should be considering, as we discussed, after you discussed matter, can't come to agreement, in that event you come back and you let me know that. In that case, the sentence to be imposed will be life imprisonment without parole.

As I've told you repeatedly, the defendant will receive the death penalty only if you unanimously find beyond a reasonable doubt that have that is the appropriate penalty. If you do not make such a finding -- whether because unanimously find the death penalty is not the appropriate sentence CORRECTION OR CHECK or because you are unable after thorough deliberation to reach a unanimous decision, as to whether the death penalty is the appropriate sentence, then he

will receive a sentence of life in prison without the possibilities of release.

I also remind you whatever your decision, I'm required by law to abide by it and to sentence the defendant accordingly.

In your consideration of whether the death penalty is appropriate, you must not consider the race, color, religious beliefs, national origin or sex of either the defendant or the victims. You are not to return a sentence of death unless you return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin or sex of either the defendant or the victim.

To emphasize the importance of this consideration, the final section of the Special Verdict Form, Section VI, contains a certification required by law. Congress believes it's so important those factors must reflect your signature.

Each juror should carefully read the statement, sign his or her jury number, just the number in the appropriate place that the statement accurately reflects the matter that each of you reached an individual decision. That certification I should have. This is what it says. By signing below, using only your juror number, each of you individually certifies that consideration of the race, color, religious beliefs, national origin or sex of the defendant or the victim was not involved in reaching your individual

SG OCR 964 CRR CSR

decision. Each of you further certifies that you, as an individual, would have made the same recommendation regarding the sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin or sex of the individual or the victim and you'll see that certification.

In conclusion, I have now outlined for you the rules of law applicable to your consideration of the death penalty and the process by which you should determine the facts and weigh the evidence.

In a few minutes you will retire to the jury room. The importance of your deliberations is obvious. Again, I again remind you you can return a decision sentencing the defendant to death only if all 12 of you are unanimously persuaded beyond a reasonable doubt that the death sentence is in fact appropriate.

If during your deliberations it becomes necessary to communicate with me for any reason, simply send me a note signed by your foreperson, same instructions I gave you before. Do not attempt to communicate with the court or any other court personnel by any means other than a signed writing. I will not communicate with any member of the jury on any subject touching on your sentencing decision other than in writing or orally here in open court; same process we did before.

When you have reached a decision, send me a noted signed by your foreperson that you have reached a decision. Do not include what the decision is in your note. In no communication with the court prior to a verdict should you ever give a numerical count where the jury stands in its deliberations. Of course, if you want the readbacks, like before, you can call for them. Maybe you want some testimony.

We have the exhibits that were referenced specifically that were added to the prior exhibits for this particular phase. We have, once again, compiled them and I'll give that to you or you can call for any that you want just like you did before.

Whichever decision you reach, the foreperson must also sign and fill out the Special Verdict Form, accordingly be prepared to report to the court your findings and sentencing decision. That means you (indicating). Please check and recheck the verdict form to make sure it accurately reflects your findings. There's a bunch of things I have to attend to.

One final word about your deliberations, as I spoke to you about before. Please discuss all aspects of the sentencing issues among yourselves with candor, frankness, but also with a due regard and respect for the opinions of one another. This is the most serious decision the law asks jurors to make. It can't be any more serious. Each of you

must decide it for yourself, not merely go along with the conclusion of your fellow jurors.

In the course of your deliberations, no juror should surrender his or conscientious believe as to what is the truth, what is the weight and effect of the evidence or what should be the outcome as determined by the jurors' individual conscience and evaluation of the case.

Remember that the parties and the Court are relying upon you to give full, considered and mature consideration to this decision. By so doing, you carry out to your fullest the oath as jurors you'll well and truly try the issues of this case and enter a just result.

I'm going to pass the verdict form to you now and explain it all to you. I think it's good first to collectively take a look at it.

I have 11. I'm going to give my foreperson two. One will be the original one. The rest of you can pass the rest out amongst yourselves. I appreciate it. Here are your two (handing).

I'll read it with you. In respect to the certification, what we're going to do also is we're going to give you that certification where you'll sign your names, now your name is being disclosed but to protect your anonymity, it will be put in a sealed envelope. That will be kept by the court. During the deliberations we'll send it to you. That

will be signed by you, put in the envelope and given to the marshals so you'll have them all.  They get filed secretly. You need not be concerned about that.

(Continued on next page.)

The public portion of the certification you will just certify by your number, okay.

SECTION I: PRELIMINARY FACTOR:

1. Do you unanimously find that the government has proved beyond a reasonable doubt that the defendant, Kenneth McGriff, intentionally participated ion an act contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act:

(A) with respect to Count Six (Eric Smith) yes or no?

(B) With respect to Count Eleven (Troy Singleton), yes or no?

If you answered "no" to both questions stop your deliberations and complete only the certification contained in Section VI.

If you answered "yes" to either question, go on to Section II.

SECTION II: STATUTORY AGGRAVATING FACTORS:

Complete Section II only with respect to those counts, if any, for which you answered "yes"in Section I.

1. Do you unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff committed the offense after substantial planning and premeditation to

cause the death of another person.

A. With respect Count Six (Eric Smith), yes or not?

B. With respect to Count Eleven (Troy Singleton), yes or no?

2: Do you unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff procured the commission of the offense by payment or promise of payment of anything of pecuniary value:

A. With respect Count Six (Eric Smith), yes or no?

B. With respect to Count Eleven (Troy Singleton), yes or no?

Section II: STATUTORY AGGRAVATING FACTORS:

3. Do you unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff has previously been convicted of engaging in a continuing criminal enterprise:

A. With respect Count Six (Eric Smith), yes or no?

B. With respect to Count Eleven (Troy Singleton), yes or no?

4. Do you unanimously find that the government has proved beyond a reasonable doubt that in the commission of the offense, Mr. McGriff knowingly created a grave risk of death to one or more person in addition to the victim of the offense:

A. With respect to Count Six (Eric Smith), yes or

no?

If you answered "no" to all questions in Section II, stop your deliberations and complete only the certification contained in Section VI.

If you answered 'yes"to any question in Section II, go on to Section III.

SECTION III: NON-STATUTORY AGGRAVATING FACTORS:

Complete Section III only with respect to those counts, if any, for which you (a) answered "yes" in Section I, and (b) unanimously found in Section II at least on statutory aggravating factor proved beyond a reasonable doubt.

1. Do you unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff caused injury, harm, and loss to the victim, the victim's family and the victim's friends:

A. With respect to Count Six (Eric Smith), yes or no?

B. With respect to Count Eleven (Troy Singleton), yes or no?

Do you unanimously find that the government has proved beyond a reasonable doubt that if incarcerated for life without the possibility of release, Mr. McGriff poses a risk of future dangerousness:

A. With respect to Count Six (Eric Smith), yes or no?

B. With respect to Count Eleven (Troy Singleton), yes or no?

Go on to Section IV.

Complete Section IV only with respect to those counts, if any, for which, you (a) answered "yes" in Section I and (b), unanimously found in Section II at least one statutory aggravating factor proved beyond a reasonable doubt.

Mitigating factors numbers 1-8 have been established. You must, therefore , consider them and decide how much weight they should be given in your individual sentencing decisions.

1. If not sentenced to death, Mr. McGriff will be punished by a sentence of lifetime imprisonment with no possibility of release.

2. Emanuel Mosley ("Manny Dog") will not be sentenced to death for his role in the murders of Eric Smith and Troy Singleton.

3. Barry Mungo ("Barry Broughton") will not be sentenced to death for his role in the murders of Eric Smith and Troy Singleton.

4. Alvin Smiley will not be sentenced to death for his role in the murders of Eric Smith and Troy Singleton.

5. Russell Allen ("Les") will not be sentenced to death for his role in the murder of Eric Smith.

6. Dennis Crosby ("How-about") will not be sentenced

to death for his role in the murders of Eric Smith and Troy Singleton.

7. Nicole Brown will not be sentenced to death for her role in the murder of Eric Smith.

8. Climmiette Jordan will not be sentence to death for his role in the murder of Eric Smith.

SECTION IV: MITIGATING FACTORS (Continued).

For mitigating factors numbers 9-16, indicate the number of jurors, if any, who find that the defendant has proved by a preponderance of the evidence that the factor exists. Any juror who finds a mitigating factor so proved must consider it and decide how much weight it should be given in his or her individual sentencing decision.

9. The favorable plea agreements offered to the cooperating witnesses in this case is something that weighs against imposition of a sentence of death for Mr. McGriff.

Number of jurors who find #9?

10. By voluntarily choosing to engage in violent criminal conduct, the victims in this case willingly participated in dangerous and illegal activities, a circumstance that contributed to their unfortunate deaths.

Number of jurors who find number 10?

11. The murders in this case were motivated, in part, by Mr. McGriff's sincere belief that the victims, and others, were out to kill him.

Number of jurors who find number 11?

12. The evidence does not establish Mr. McGriff's guilt of the capital crimes with sufficient certainty to justify imposition of a sentence of death.

Number of jurors who find number 12?

13. If Mr. McGriff is executed his friends and family will suffer grief and loss.

Number of jurors who find number 13?

14. Mr. McGriff has proven himself to be capable of acts of generosity and kindness.

Number of jurors who find number 14?

SECTION IV: MITIGATING FACTORS (Continued).

15. At the time of the murders Mr. McGriff was attempting to move his life in a positive direction.

Number of jurors who find number 15?

16. Mr. McGriff's life has value.

Number of jurors who find number 16?

The following extra spaces are provided to write in additional mitigating factors, if any, found by one or more jurors by a preponderance of the evidence. If no additional mitigating factors are found write "NONE." If more space is needed, "Continued" and use the reverse side of the page.

Number of jurors who so find:

Number of jurors whoso find:

Number of jurors who so find:

SECTION V: DETERMINATION OF SENTENCE:

Complete Section V only with respect to those counts, if any, for which you (a) answered "yes" in Section I, and (b) unanimously found in Section II at least one statutory aggravating factor proved beyond a reasonable doubt.

We, the jury unanimously find beyond a reasonable doubt that the aggravating factor, or factors found to exist sufficiently outweigh the mitigating factors such that death is the appropriate sentence for Mr. McGriff on Count Six. We, therefore, unanimously find that Mr. McGriff should be sentenced to death.

We, the jury, unanimously find that the government has failed to prove beyond a reasonable doubt that death is the sentence for Mr. McGriff on Count Six. We, therefore, unanimously find that Mr. McGriff should be sentenced to life imprisonment without the possibility of release.

We, the jury, having carefully considered and answered the questions in Sections I through IV of this Special Verdict Form in accordance with the Court's instructions, and having engaged in careful and thorough deliberation and discussion, are nonetheless , unable to reach a unanimous verdict as to whether death is the appropriate sentence for Mr. McGriff on Count Six. We understand that the consequence of this is that Mr. McGriff will be sentenced to life imprisonment without the possibility of release.

Now, the same thing with respect to Troy Singleton. I am not going to read it all to you because it is exactly the same on page nine and I want you have to continue your unanimity -- the above sentence and determination reflect the jury's unanimous decision and each of you individually put your number there.

Actually, I am going to say determination affects the jury's decision. I am going to cross out the word unanimous. That is why I like to read these things because there is a possibility that your decision will not be unanimous, so I will change that word. And then the foreperson will indicate that they have signed and then the last section is simply the certification, which I have mentioned to you.

So let me do two things. I have to talk to the lawyers again to give them an opportunity to tell me if I should say something else to you, and that is part of the process. I may have made some inadvertent mistakes. Pass these forms back to juror number one, and I will get the corrected ones to you for the witness after I talk to the lawyers.

(The following took place at side bar)

THE COURT: Who goes first?

MR. RHUNKE: No objections to the charges.

THE COURT: And Mr. Jones.

MR. JONES: Nothing, Your Honor.

THE COURT: I think I did explain it. It is important they understand all of this. So my apologies for the incorrect, you know, omission of the verdict form. I have to make some little edits to what I am going to give the jury. Before I give it to them I want to make sure they are all satisfied with it so. Stay on board. I should have that to you shortly. It is twenty after one. Can you wait a few minutes while I do that so we can get that to the jurors?

MR. RHUNKE: Just the neatnick in me says I am wondering if there are better quality copies that could go to the jury than we have.

MR. JONES: There is.

THE COURT: There are better qualities. Let's take our lunch break now and come back at 2:30. I will have it all done correctly. We will go over it again and I'll send it in to the jurors. Okay.

(The following took place in open court)

THE COURT: Mr. Innelli, who we, obviously, know is the most popular person has told me that your hot lunch has arrived. I hope it hasn't gotten cold. Now, you can start your deliberation. We are going to swear in the marshal. You can take your time. All 12 of you have to be together when you deliberate, so if you have to use the facilities, you stop your deliberations until you are all together again.

I will have by 2:30 the revised charge and the

verdict form to you. I may be able to get the verdict form in to you first, so be a little patient about that, but you don't have to wait for it. You can start your deliberations. You will let me know how long you want to go.

Swear the marshal.

(Whereupon, the Marshal was duly sworn).

(Time noted: 1:20 p.m.)

THE COURT: Okay, folks.

(Whereupon, the jury exited the courtroom)

THE CLERK: I have the exhibit list, Your Honor.

THE COURT: Everyone may be seated.

We have the exhibit numbers that were referred to by the government during this case that are all in evidence. So we have that, as well as the new exhibits by the defendant. Have you gone over this carefully.

MS. POKORNY: Yes.

THE COURT: All right. That's been marked.

THE CLERK: Court Exhibit 32.

THE COURT: Okay. I think I can give that to the jurors. We will see you at 2. 30.

(Whereupon, the court recessed for lunch)

(Continued on next page)

(A F T E R N O O N S E S S I O N.)

(Time noted 4:12 p.m.)

THE COURT: Please be seated.

I have a note from the jury, marked as Court Exhibit number 33, rendered at 4:00 o'clock. Your Honor, we reached a verdict.

Let's find out what it is.

(Jury enters courtroom.)

THE COURT: Please be seated. I have your note that you have reached a verdict. At this time Mr. Innelli will ask you the questions and you'll respond accordingly.

THE CLERK: Section one, preliminary factor.

Do you unanimously find that the government has proved beyond a reasonable doubt that the defendant, Kenneth McGriff, intentionally participated in an act contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person other than one of the participants in the offense, and the victim died as a result of the act; A, with respect to count six, Eric Smith, yes or no.

JUROR #7: Yes.

THE CLERK: B, with respect to count eleven, Troy Singleton ton, yes or no?

JUROR #7: Yes.

THE CLERK: Section II, statutory aggravating

SG OCR CM CRR CSR

factors. Do you unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff committed the offense after substantial planning and premeditation to cause the death of another person; A, with respect to count six, Eric Smith, yes or no?

JUROR #7: Yes.

THE CLERK: B, with respect to count 11, Troy Singleton, yes or no?

JUROR #7: Yes.

THE CLERK: Did the jury unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff procured the commission of the offense by payment, or promise of payment or anything of pecuniary value; A, with respect to Count six, Eric Smith, yes or no?

JUROR #7: Yes.

THE CLERK: B, with respect to count ll, Troy Singleton, yes or no?

JUROR #7: Yes.

THE CLERK: Question 3, do the jury unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff has previously been convicted of engaging in a continuing criminal enterprise; A, with respect to Count six, Eric Smith, yes or no?

JUROR #7: No.

THE CLERK: B, with respect to count 11, Troy

SS OCR CM CRR CSR

Singleton, yes or no?

JUROR #7: No.

THE CLERK: Question 4, do you find that the government has proved beyond a reasonable doubt that in the commission of the offense, Mr. McGriff knowingly created a grave risk of death to one or more persons in addition to the victim of the offense; A, with respect to count six, Eric Smith, yes or no?

JUROR #7: No.

THE CLERK: Section III, non-statutory aggravating factors. Question 1, does the jury unanimously find that the government has proved beyond a reasonable doubt that Mr. McGriff caused injury, harm and loss to the victim, the victim's family and the victim's friends; A, with respect to count six, Eric Smith, yes or no?

JUROR #7: Yes.

THE CLERK: B, with respect to count eleven, Troy Singleton, yes or no?

JUROR #7: Yes.

THE CLERK: Did the jury unanimously find that the government has proved beyond a reasonable doubt that if incarcerated for life without the possibility of release, Mr. McGriff poses a risk of future dangerousness, A, with respect to count six, Eric Smith, yes or no?

A No.

SG OCR CM CRR CSR

THE CLERK: B, with respect to count eleven, Troy Singleton, yes or no?

JUROR #7: No.

THE CLERK: Section IV, mitigating factors.

THE COURT: You don't have to read one through eight. We'll start with nine.

THE CLERK: The favorable plea agreements offered to the cooperating witnesses in this case is something that weighs against imposition of a sentence of death for Mr. McGriff. Number of jurors who find number 9?

JUROR #7: Five.

THE CLERK: Question 10, by voluntarily choosing to engage in violent criminal conduct, the victims in this case willingly participated in dangerous and illegal activities, a circumstance that contributed to their unfortunate deaths. Number of jurors who find number 10?

JUROR #7: 11.

THE CLERK: Question 11, the murders in this case were motivated, in part, by Mr. McGriff's sincere belief that the victims and others were out to kill him. Number of jurors who find number 11?

JUROR #7: Seven.

THE CLERK: Question 12, the evidence does not establish that Mr. McGriff's guilt of the capital crimes with sufficient certainty to justify imposition of a sentence of

death. Number of jurors who find number 12?

JUROR #7: 7.

THE CLERK: Question 13, if Mr. McGriff is executed, his friends and family will suffer grief and losses. Number of jurors who find number 13?

JUROR #7: 2.

THE CLERK: Question 14, Mr. McGriff has proven himself to be capable of acts of generosity and kindness. Number of jurors who find number 14?

JUROR #7: Five.

THE CLERK: Number 15, at the time of the murders, Mr. McGriff was attempting to move his life in a positive direction. Number of jurors who find number 15?

JUROR #7: 4.

THE CLERK: Number 16, Mr. McGriff's life has value. Number of jurors who find number 16?

JUROR #7: 9.

THE CLERK: Were there any additional mitigating factors?

JUROR #7: Yes.

THE COURT: State which they are. You can read it.

JUROR #7: If tried in the New York State court, execution would not be an option.

THE CLERK: Number of jurors who so find?

JUROR #7: 3.

SS OCR GM CRR CSR

THE CLERK: Were there any others?

JUROR #7: No.

THE CLERK: Section V, determination of sentence. Do the jury unanimously find beyond a reasonable doubt that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factors such that death is the appropriate sentence for Mr. McGriff on count six, we therefore unanimously find that Mr. McGriff should be sentenced to death.

JUROR #7: No.

THE CLERK: Do the jury unanimously find that the government has failed to prove beyond a reasonable doubt that death is the appropriate sentence for Mr. McGriff on count six. The jury therefore unanimously found Mr. McGriff should be sentenced to life imprisonment without the possibility of release.

JUROR #7: No.

THE CLERK: Does the jury having carefully considered and answered the questions in Sections I through IV of this Special Verdict Form in accordance with the court's instructions and having engaged in careful and thorough deliberations and discussion, are nonetheless unable to reach a unanimous verdict as to whether death is the appropriate sentence for Mr. McGriff on count six. Did you understand that the consequences of this is that Mr. McGriff will be

sentenced to life imprisonment without the possibility of release?

JUROR #7: Yes.

THE CLERK: Determination of sentence, count 11, Troy Singleton. Do the jury unanimously find --

THE COURT: You can tell me what it is.

JUROR #7: The third one, we the jury --

THE COURT: The first two are no?

JUROR #7: Yes, your Honor, the third is yes.

THE COURT: Did you each sign the official sheet with the numbers?

JUROR #7: Yes.

THE COURT: Did you date it, madam foreperson?

JUROR #7: Yes.

THE COURT: Did you fill out the certification, each of you?

JUROR #7: Yes.

THE COURT: You signed the name to the one that's under seal?

JUROR #7: Yes.

THE CLERK: Shall I poll the jury?

THE COURT: Yes.

Juror number 1, is that your verdict?

JUROR number 1: Yes.

THE CLERK: Juror number 2, is that your verdict?

JUROR number 2: Yes.

THE CLERK: Juror number 3, is that your verdict?

JUROR number 3: Yes.

THE CLERK: Juror number 4, is that your verdict?

JUROR number 4: Yes.

THE CLERK: Juror number 5, is that your verdict?

JUROR number 5: Yes.

THE CLERK: Juror number 6, is that your verdict?

JUROR number 6: Yes.

THE CLERK: Juror number 7, is that your verdict?

JUROR number 7: Yes.

THE CLERK: Juror number 8, is that your verdict?

JUROR number 8: Yes.

THE CLERK: Juror number 9, is that your verdict?

JUROR number 9: Yes.

THE CLERK: Juror number 10, is that your verdict?

JUROR number 10: Yes.

THE CLERK: Juror number 11, is that your verdict?

JUROR number 11: Yes.

THE CLERK: Juror number 12, is that your verdict?

JUROR number 12: Yes.

THE CLERK: Jury polled, your Honor.

THE COURT: Folks, you've now completed your most difficult type of responsibility, in my opinion, that citizens can be called upon to discharge, being called by our random

selection process that people are called to serve as jurors. You've completed, I think, service in the most difficult of cases you can possibly imagine.

When you came here, nobody, I'm sure, had any sense way back when whether you would be called for an accident case, malpractice case and we've gotten to know each other from a distance, had not had a chance to speak to each other which will be cured shortly.

I think this is two months from the time you first actually were called. I think it was December, if I remember correctly, or was it November? It was November.

I've been able to observe you as you've been able to observe me throughout these proceedings. We each realize the intensity of the commitment, the responsibilities we each respectively have had to share in terms of the fact that I'm the person in charge of the law department. You're the persons in charge of the fact department. Without either of us, our system of justice just doesn't work. Hopefully, you can feel as I do, once again, reinforce the value of the jury system we have in our country.

You've just been exemplary. The attention you've given to this, I think you spent four days on the guilt phase. I was so impressed with the fact that you were able to go through each of those counts and find not guilty in certain respects, guilty in other respects; that you understood the

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 91 of 116

difference between murder in aid of racketeering; that you found the defendant not guilty and were able to differentiate between that and the elements required for the murder for hire.

Once again, it impresses with me how capable and competent citizens are, especially 12 of them collectively, listening to each other, reflecting upon the case and deliberating.

I'm a great believer in the jury system. Once again, it proves to be the very best system we have in our troubled world.

It's important that I make a public statement commending you for a very difficult call that you have been expected to engage in and you did so in an accepted fashion.

What I'm going to do now, I'll make myself available to you in the jury room. I think I mentioned this to you initially to answer whatever questions you may have. You were not allowed to ask questions, participate. You may have some curiosities about things. I want to make myself available to do that.

I'm not going to engage in your deliberative process but make myself available, introduce you to my staff, explain what goes on in chambers, how we process these matters, also to inquire if there's any instructive recommendations you may have as to how you were treated by all the court personnel in

addition to Mr. Innelli.

It's an opportunity to tell me if there's any way we can improve how we go about our business. It's a good, constructive opportunity.

I'll tell you in public there is no gag order. The freedom of the press is sacrosanct. We respect it regardless what they may or not do in a situation. It's a rock-bed principle of our practice in an open courtroom.

My job is to make sure those constitutional rights are fully protected. There's no gag order. Whether you wish to speak to the press, that's up to you. I've been asked to inquire of you. You can make your own separate determinations in respect to that.

With that, wait for me in the jury room. I'll be there shortly.

(Jury leaves courtroom.)

THE COURT: Everyone, please be seated.

Mr. Ruhnke, normally we just will not do anything else today, but we'll have to set a sentence date. Do you wish to speak to the issue?

MR. RUHNKE: Your Honor, what we would like you to do is set a very short sentence date. The sentences on counts six and eleven are mandatory life terms. There doesn't seem to be any need for an extensive presentence report. Maybe your Honor might have a probation officer calculate the drug

amount guidelines but beyond that --

THE COURT: Is there any particular compelling reason why it would make a difference? Maybe I'm not aware. It's a question of place of sentencing, I guess, place of commitment?

MR. RUHNKE: Yes. The sooner he's sentenced, the sooner he's out of the situation at the Metropolitan Detention Center.

THE COURT: Might be a good idea to get him out of here. What do you say, Ms. Pokorny?

MS. POKORNY: The issue OF getting him out of here, the PSR are two different individuals. B O P needs a P S R, that determines what facility they place him in.

THE COURT: It has a bearing on sentencing.

MR. RUHNKE: In the Aguilar case, they sentenced him two weeks after verdict.

MS. POKORNY: It was a problem. Basically they have to do a full-blown investigation anyway.

THE COURT: I'll speak to probation, see if we can move it along, what their time concerns are. They, as many parts of government, have been afflicted by budgetary cuts. We have a problem there because of the monies that are spent here and there. We've been waiting for many months to get presence reports because they're understaffed. I'm going to speak to them, ask them if they can make a special effort

to move the process along. I'll let you know.

MR. RUHNKE: There's an existing presentence report from the District of Maryland.

THE COURT: We'll get that.

MR. RUHNKE: From two years ago.

THE COURT: I'll do the best to move the process along, see how it goes. I'll have to speak to probation, find if there is any necessary funding these days to give us expeditious reports.

MR. RUHNKE: We'll cooperate in getting a federal PSR, only two years old.

THE COURT: I don't think there's anything that needs to be done. Whatever motions you feel you want to make, you'll make them in due course.

I don't know whether you want to have the opportunity to talk to the jurors. I'll tell them also they're free to speak to counsel if you want to do that.

MR. RUHNKE: If they want to talk with us, we'll be glad to talk to them.

THE COURT: I'll see if they want to talk to the press, counsel.

I've complimented counsel on the record without this big audience a day or two ago. I think my feelings towards the jurors, hopefully, came across as heartfelt and sincere, exactly how I feel. These citizens have put in an enormous

service to the country. You folks have also. Mr. Ruhnke and his team, assigned counsel, all the experts, you left no stone unturned which is the way a capital case, I guess all cases, but especially a capital case should be addressed. It's an enormous expense. We know that. It's money that has to be spent when the issue is life or death.

You and Ms. Barrett are to be complimented for the enormous energy that you displayed here. The public doesn't know about your energy. They weren't getting those daily letters, memoranda from you, as I am.

You three are younger than Mr. Ruhnke -- I don't know about Ms. Barrett -- are to be commended also. This is tough stuff when you're charged by your responsibilities as Assistant U.S. Attorneys to prosecute cases that superiors say must be prosecuted and you did it professionally. I know each of you from other cases. You have stood up tall. You should feel very good about it.

The issue, of course, as you know is justice. The fact you didn't get a full verdict here doesn't reflect negatively, of course, on your talents but does reflect well on the fact you adhere to the highest standards of your office of presenting the case in a professional way. You ought to be commended.

MS. POKORNY: Thank you.

THE COURT: Having said that, let me talk to the

jurors. I'll tell them they can speak to you or the press. We'll see what they think about it.

(Whereupon this matter concluded)

Case 5:05-cr-06002-GAF Document 396-52 Filed 03/06/08 Page 97 of 116

## '

**'yes"to** [1] - 2505:5

## 1

**1** [18] - 2467:9, 2471:24, 2474:12, 2475:13, 2480:21, 2484:2, 2486:5, 2488:18, 2488:25, 2489:19, 2489:23, 2503:4, 2503:23, 2505:12, 2506:12, 2515:11, 2519:23, 2519:24
**1-8** [1] - 2506:8
**10** [7] - 2484:25, 2507:18, 2507:22, 2516:12, 2516:16, 2520:16, 2520:17
**100** [1] - 2488:6
**10:00** [1] - 2431:7
**11** [13] - 2485:4, 2496:4, 2501:16, 2507:23, 2508:1, 2514:7, 2514:25, 2516:17, 2516:18, 2516:21, 2519:4, 2520:18, 2520:19
**11201** [2] - 2431:14, 2431:22
**12** [15] - 2442:11, 2442:14, 2485:7, 2487:21, 2494:1, 2496:16, 2499:14, 2508:2, 2508:5, 2511:22, 2516:23, 2517:1, 2520:20, 2520:21, 2522:6
**13** [5] - 2485:10, 2508:6, 2508:8, 2517:3, 2517:5
**14** [5] - 2485:12, 2508:9, 2508:11, 2517:7, 2517:9
**147** [1] - 2431:13
**15** [7] - 2446:17, 2446:18, 2485:15, 2508:13, 2508:15, 2517:11, 2517:13
**16** [9] - 2483:25, 2485:17, 2490:3, 2490:13, 2491:22, 2508:16, 2508:17, 2517:15, 2517:16
**1980's** [2] - 2442:12, 2442:19
**1980s** [1] - 2458:24
**1988** [2] - 2443:3, 2477:19
**1998** [1] - 2442:7
**1:20** [1] - 2512:7

## 2

**2** [13] - 2467:10, 2471:25, 2474:15, 2477:1, 2481:3, 2484:5, 2486:10, 2504:5, 2506:15, 2512:20, 2517:6, 2519:25, 2520:1
**2007** [2] - 2431:7, 2450:8
**225** [1] - 2431:21
**27** [1] - 2464:12
**28** [1] - 2477:21
**2:30** [2] - 2511:14, 2511:25

## 3

**3** [11] - 2467:11, 2472:1, 2474:18, 2477:14, 2484:8, 2504:13, 2506:18, 2514:19, 2517:25, 2520:2, 2520:3
**30** [1] - 2512:20
**32** [2] - 2464:1, 2512:18
**33** [1] - 2513:5

## 4

**4** [10] - 2467:13, 2472:2, 2477:22, 2484:11, 2504:20, 2504:21, 2515:3, 2517:14, 2520:4, 2520:5
**4:00** [1] - 2513:5
**4:12** [1] - 2513:2

## 5

**5** [5] - 2472:3, 2484:13, 2506:23, 2520:6, 2520:7
**507** [1] - 2477:21

## 6

**6** [4] - 2484:15, 2506:25, 2520:8, 2520:9
**613-2537** [1] - 2431:22

## 7

**7** [38] - 2484:18, 2507:3, 2513:21, 2513:24, 2514:6, 2514:9, 2514:15, 2514:18, 2514:24, 2515:2, 2515:9, 2515:16, 2515:19, 2516:3, 2516:11, 2516:17, 2516:22, 2517:2, 2517:6, 2517:10, 2517:14, 2517:17, 2517:20, 2517:22, 2517:25, 2518:2, 2518:10, 2518:17, 2519:3, 2519:7, 2519:9, 2519:12, 2519:14, 2519:17, 2519:20, 2520:10, 2520:11
**718** [1] - 2431:22

## 8

**8** [10] - 2484:20, 2486:6, 2486:10, 2488:18, 2488:25, 2489:19, 2489:23, 2507:5, 2520:12, 2520:13

## 9

**9** [11] - 2431:7, 2450:8, 2484:22, 2487:1, 2490:3, 2507:14, 2507:17, 2516:10, 2517:17, 2520:14, 2520:15
**9-16** [1] - 2507:8
**9th** [1] - 2459:10

## A

**a.m** [1] - 2431:7
**abide** [1] - 2498:4
**able** [5] - 2512:1, 2521:12, 2521:23, 2522:2
**absence** [1] - 2462:9
**absolute** [1] - 2446:13
**absolutely** [1] - 2434:11
**accept** [3] - 2465:24, 2470:11, 2470:16
**accepted** [1] - 2522:14
**accident** [3] - 2460:17, 2479:6, 2521:5
**accordance** [2] - 2509:19, 2518:20
**accordingly** [3] - 2498:5, 2500:14, 2513:11
**Accordingly** [1] - 2471:9
**accurately** [2] - 2498:19, 2500:17
**achieving** [1] - 2475:18
**act** [8] - 2467:22, 2472:17, 2472:21, 2473:2, 2503:6, 2503:10, 2513:15, 2513:19
**actions** [1] - 2475:9
**activities** [4] - 2450:20, 2485:2, 2507:20, 2516:14
**activity** [1] - 2460:13
**acts** [10] - 2452:15, 2458:18, 2472:24, 2472:25, 2479:4, 2485:13, 2508:10, 2517:8
**add** [2] - 2452:6, 2453:2
**added** [2] - 2441:10, 2500:9
**addition** [10] - 2443:3, 2453:20, 2472:5, 2474:24, 2478:2, 2490:13, 2491:21, 2504:23, 2515:6, 2523:1
**additional** [5] - 2463:8, 2491:24, 2508:19, 2508:20, 2517:18
**address** [1] - 2463:5
**addressed** [1] - 2526:4
**adhere** [1] - 2526:21
**admitted** [1] - 2477:20
**advance** [1] - 2490:12
**advantage** [1] - 2477:13
**advise** [1] - 2497:2
**ADX** [2] - 2441:25, 2444:6
**affairs** [1] - 2467:23
**affect** [1] - 2469:3
**affection** [1] - 2453:7
**affects** [1] - 2510:7
**afflicted** [1] - 2524:21
**afraid** [1] - 2442:13
**afternoon** [1] - 2436:14
**AGGRAVATING** [5] - 2474:3, 2480:3, 2503:20, 2504:12, 2505:7
**Aggravating** [1] - 2466:17
**aggravating** [78] - 2434:4, 2434:7, 2436:8, 2448:17, 2448:22, 2449:2, 2461:16, 2463:16, 2466:12, 2466:22, 2467:11, 2467:12, 2467:13, 2468:4, 2469:4, 2471:12, 2472:1, 2472:2, 2472:3, 2474:1, 2474:9, 2474:11, 2474:21, 2475:4, 2475:6, 2475:12, 2475:14, 2477:2, 2477:15, 2477:23, 2479:9, 2479:12, 2479:14, 2479:16, 2479:19, 2479:25, 2480:7, 2480:9, 2480:11, 2480:15, 2480:19, 2481:11, 2481:21, 2482:8, 2482:11, 2482:13, 2482:16, 2482:19, 2482:20, 2482:24, 2483:3, 2483:8, 2483:15, 2488:16, 2489:14, 2490:10, 2491:1, 2492:15, 2492:18, 2492:24, 2493:5, 2493:13, 2494:7, 2494:11, 2494:19, 2494:20, 2494:23, 2495:6, 2495:15, 2495:19, 2496:2, 2505:11, 2506:7, 2509:5, 2509:7, 2513:25, 2515:10, 2518:5
**aggravation** [1] - 2480:16
**ago** [6] - 2439:5, 2443:2, 2454:14, 2455:4, 2525:5, 2525:23
**agree** [6] - 2470:15, 2476:2, 2480:10, 2482:24, 2494:1, 2497:8
**agreed** [1] - 2450:13
**agreement** [6] - 2447:3, 2449:9, 2464:2, 2497:9, 2497:10, 2497:15
**agreements** [10] - 2446:11, 2457:21, 2457:22, 2457:25, 2484:22, 2487:2, 2487:9, 2487:10, 2507:14, 2516:7

**agrees** [1] - 2450:7
**Aguilar** [3] - 2432:7, 2432:10, 2524:15
**aid** [2] - 2472:7, 2522:1
**Aided** [1] - 2431:25
**alive** [1] - 2442:21
**allegations** [2] - 2481:1, 2481:15
**alleged** [12] - 2448:17, 2449:2, 2474:11, 2475:3, 2475:14, 2477:2, 2477:15, 2479:9, 2479:17, 2482:8, 2482:16, 2490:10
**alleges** [7] - 2472:16, 2474:21, 2477:6, 2477:24, 2480:18, 2480:23, 2481:5
**Allen** [4] - 2445:23, 2446:6, 2484:13, 2506:23
**Allenwood** [1] - 2443:14
**allowed** [2] - 2469:23, 2522:18
**alone** [2] - 2466:6, 2494:21
**Alvin** [4] - 2445:23, 2446:1, 2484:11, 2506:21
**AMERICA** [1] - 2431:3
**amount** [3] - 2437:21, 2475:22, 2524:1
**analogy** [1] - 2455:2
**analysis** [1] - 2467:3
**anger** [1] - 2451:12
**anguish** [1] - 2453:1
**anonymity** [1] - 2501:23
**answer** [12] - 2439:19, 2439:20, 2451:22, 2456:4, 2456:7, 2473:10, 2473:12, 2479:13, 2479:15, 2482:12, 2482:14, 2522:17
**answered** [11] - 2456:20, 2503:15, 2503:18, 2503:22, 2505:2, 2505:5, 2505:9, 2506:5, 2509:3, 2509:18, 2518:19
**anyway** [1] - 2524:18
**apologies** [2] - 2489:13, 2511:2
**appear** [1] - 2441:11
**Appearances** [1] - 2432:3
**APPEARANCES** [1] - 2431:11
**appellate** [1] - 2435:18
**applicable** [2] - 2465:12, 2499:8
**apply** [4] - 2448:22, 2464:19, 2470:7, 2471:16
**appreciate** [3] - 2438:12, 2464:10, 2501:18
**apprehensive** [1] - 2434:4
**approach** [1] - 2465:18
**appropriate** [29] - 2439:25, 2440:9, 2440:14, 2445:19, 2463:18, 2466:20, 2467:6, 2467:16, 2468:5, 2471:17, 2473:14, 2483:12, 2483:23, 2493:11, 2493:12, 2494:3, 2495:17, 2497:2, 2497:20, 2497:22, 2497:25, 2498:7, 2498:18, 2499:16, 2509:9, 2509:22, 2518:7, 2518:13, 2518:23
**arbitrary** [1] - 2493:20
**area** [1] - 2435:17
**arguably** [1] - 2432:14
**argue** [1] - 2436:25
**argued** [2] - 2440:22, 2490:19
**argument** [2] - 2445:2, 2457:19
**arguments** [3] - 2437:22, 2465:11, 2470:24
**Arizona** [1] - 2434:13
**armed** [1] - 2455:6
**arrest** [2] - 2448:6, 2448:14
**arrived** [1] - 2511:20
**arriving** [1] - 2471:11
**articulated** [1] - 2490:12
**ashamed** [2] - 2455:23, 2455:24
**aspect** [2] - 2433:6, 2471:11
**aspects** [2] - 2433:2, 2500:21
**assert** [1] - 2468:6
**asserted** [1] - 2468:8
**assertion** [1] - 2469:2
**assess** [1] - 2435:16
**assigned** [1] - 2526:2
**assist** [1] - 2470:1
**Assistant** [1] - 2526:14
**Assistants** [1] - 2431:16
**associated** [1] - 2448:24
**assume** [1] - 2466:24
**Atlanta** [1] - 2443:18
**attempt** [2] - 2439:10, 2499:20
**attempting** [4] - 2453:4, 2485:16, 2508:14, 2517:12
**attend** [1] - 2500:19
**attention** [4] - 2438:10, 2438:13, 2495:4, 2521:21
**Attorney** [4] - 2431:13, 2431:16, 2445:16, 2445:24
**attorney** [1] - 2490:20
**Attorneys** [1] - 2526:14
**attorneys** [2] - 2465:10, 2470:15
**attorneys'** [1] - 2470:23
**audience** [1] - 2525:23
**authorized** [1] - 2445:24
**available** [3] - 2522:15, 2522:19, 2522:22
**avoid** [1] - 2493:19
**aware** [2] - 2473:1, 2524:3

## B

**background** [5] - 2443:19, 2444:7, 2466:16, 2486:21, 2490:16
**balanced** [2] - 2468:17, 2489:12
**balancing** [2] - 2496:7, 2496:15
**bar** [1] - 2510:21
**Barbara** [5] - 2451:16, 2452:16, 2453:11, 2454:4
**barbecues** [1] - 2458:22
**bare** [1] - 2444:7
**BARRETT** [4] - 2431:18, 2438:8, 2444:15, 2447:1
**Barrett** [10] - 2456:9, 2456:18, 2456:24, 2457:2, 2457:20, 2459:7, 2459:23, 2461:6, 2526:7, 2526:12
**Barry** [12] - 2438:20, 2445:23, 2446:1, 2447:5, 2449:12, 2449:16, 2450:2, 2484:8, 2486:8, 2506:18
**bars** [1] - 2459:3
**base** [1] - 2466:2
**based** [8] - 2433:11, 2436:23, 2467:18, 2475:9, 2493:21, 2494:11, 2495:10, 2496:22
**bashful** [1] - 2463:22
**basketball** [1] - 2458:22
**Bay** [2] - 2448:2, 2448:6
**Bear** [1] - 2495:16
**bear** [1] - 2444:13
**bearing** [1] - 2524:14
**Beaumont** [1] - 2443:18
**becomes** [1] - 2499:17
**bed** [1] - 2523:7
**BEFORE** [1] - 2431:9
**beforehand** [1] - 2475:20
**begin** [1] - 2438:4
**beginning** [2] - 2439:9, 2454:14
**behalf** [4] - 2438:10, 2438:11, 2456:22
**belief** [7] - 2450:5, 2459:9, 2459:19, 2485:5, 2489:10, 2507:24, 2516:19
**beliefs** [4] - 2498:8, 2498:11, 2498:24, 2499:4
**believer** [1] - 2522:9
**believes** [1] - 2498:15
**below** [2] - 2480:15, 2498:22
**benefit** [2] - 2460:6, 2477:12
**Bentley** [2] - 2453:6
**best** [5] - 2435:23, 2447:7, 2454:6, 2522:10, 2525:6
**better** [5] - 2448:9, 2448:11, 2495:5, 2511:10, 2511:13
**between** [6] - 2434:16, 2453:6, 2462:13, 2488:8, 2522:1, 2522:3
**beyond** [76] - 2461:16, 2463:15, 2467:5, 2467:9, 2467:20, 2467:23, 2467:24, 2468:1, 2468:14, 2469:4, 2471:6, 2472:13, 2473:7, 2473:8, 2473:12, 2473:17, 2474:5, 2474:7, 2475:7, 2475:25, 2479:8, 2479:11, 2479:12, 2479:14, 2479:19, 2479:25, 2480:6, 2480:12, 2482:1, 2482:7, 2482:10, 2482:13, 2482:25, 2483:4, 2486:3, 2488:1, 2488:5, 2489:3, 2489:15, 2492:12, 2492:16, 2492:24, 2493:6, 2494:2, 2494:22, 2494:24, 2495:7, 2495:19, 2495:23, 2496:3, 2496:9, 2496:17, 2497:19, 2499:15, 2503:5, 2503:24, 2504:6, 2504:14, 2504:21, 2505:11, 2505:13, 2505:21, 2506:7, 2509:5, 2509:6, 2509:13, 2513:14, 2514:2, 2514:11, 2514:20, 2515:4, 2515:12, 2515:21, 2518:4, 2518:12, 2524:1
**big** [2] - 2460:23, 2525:23
**bit** [5] - 2441:2, 2441:18, 2457:3, 2457:20, 2461:6
**blame** [1] - 2439:18
**blanks** [4] - 2455:9, 2455:10, 2455:14, 2455:15
**BLOCK** [1] - 2431:9
**blown** [1] - 2524:18
**board** [1] - 2511:6
**body** [2] - 2435:22, 2448:6
**boils** [2] - 2439:23
**boot** [1] - 2444:2

**bought** [1] - 2458:21
**break** [5] - 2456:14, 2462:4, 2465:2, 2492:9, 2511:14
**breakdown** [1] - 2432:23
**breed** [1] - 2432:25
**brief** [2] - 2438:3, 2456:17
**briefly** [3] - 2432:5, 2444:11, 2450:19
**bring** [3] - 2437:10, 2437:11, 2463:25
**Bring** [1] - 2437:24
**Brooklyn** [3] - 2431:5, 2431:14, 2431:22
**brother** [5] - 2451:15, 2451:18, 2451:21, 2451:24, 2452:4
**brothers** [1] - 2451:14
**brought** [3] - 2444:13, 2448:12, 2456:19
**Broughton** [2] - 2484:8, 2506:18
**Brown** [5] - 2445:11, 2445:16, 2446:6, 2484:18, 2507:3
**budgetary** [1] - 2524:21
**bullet** [1] - 2448:5
**bullets** [1] - 2438:21
**bunch** [1] - 2500:18
**BURDEN** [1] - 2467:4
**burden** [15] - 2467:5, 2467:25, 2468:2, 2468:9, 2469:1, 2471:3, 2471:4, 2471:6, 2475:24, 2481:21, 2481:22, 2481:25, 2488:21, 2488:24, 2489:18
**Bureau** [4] - 2443:13, 2444:7, 2444:12, 2444:18
**business** [4] - 2435:20, 2435:21, 2453:16, 2523:3
**BY** [1] - 2431:14

## C

**Cadman** [1] - 2431:21
**cafeteria** [1] - 2437:17
**cage** [2] - 2443:16, 2443:17
**cages** [1] - 2443:16
**calculate** [1] - 2523:25
**camera** [1] - 2437:12
**Cameron** [1] - 2454:20
**camp** [1] - 2444:2
**candor** [1] - 2500:22
**candy** [1] - 2459:3
**cannot** [7] - 2436:8, 2443:13, 2456:7, 2466:4, 2468:17, 2486:17, 2489:12
**capable** [7] - 2444:8, 2444:19, 2452:15, 2485:12, 2508:9, 2517:8, 2522:5
**capital** [29] - 2434:14, 2445:10, 2465:12, 2465:17, 2467:8, 2471:16, 2472:12, 2472:15, 2473:13, 2475:15, 2477:3, 2477:16, 2479:17, 2480:18, 2482:5, 2482:17, 2483:13, 2483:21, 2485:8, 2487:23, 2488:4, 2492:15, 2493:3, 2493:7, 2495:25, 2508:3, 2516:24, 2526:3, 2526:4
**car** [2] - 2449:16, 2460:16
**care** [5] - 2442:25, 2443:13, 2444:8, 2444:19, 2453:23
**cared** [2] - 2453:9
**careful** [5] - 2434 466:5, 2467:19, 2509:20, 2518:21
**carefully** [8] - 2438:14, 2443:15, 2494:12, 2497:13, 2498:17, 2509:17, 2512:15, 2518:18
**cares** [2] - 2452:13, 2454:9
**CAROLYN** [1] - 2431:14
**carried** [1] - 2457:18
**carry** [1] - 2501:10
**case** [40] - 2436:5, 2436:13, 2439:3, 2441:19, 2442:19, 2459:11, 2460:12, 2460:22, 2462:7, 2465:12, 2465:23, 2466:13, 2466:20, 2470:20, 2473:3, 2483:24, 2484:23, 2485:1, 2485:4, 2486:18, 2487:3, 2493:10, 2493:24, 2497:16, 2501:7, 2501:12, 2507:15, 2507:19, 2507:23, 2512:13, 2516:8, 2516:13, 2516:18, 2521:6, 2522:7, 2524:15, 2526:3, 2526:4, 2526:22
**cases** [7] - 2432:7, 2486:16, 2487:13, 2521:3, 2526:3, 2526:14, 2526:16
**Cathleen** [2] - 2452:1, 2453:14
**caused** [4] - 2460:18, 2480:21, 2505:13, 2515:13
**causing** [1] - 2473:3
**CCE** [4] - 2442:14, 2449:7, 2449:10, 2449:12
**Center** [1] - 2524:8
**certain** [4] - 2450:25, 2467:12, 2469:17, 2521:24
**Certainly** [1] - 2434:13
**certainty** [6] - 2485:8, 2487:23, 2488:3, 2488:6, 2508:3, 2516:25
**certification** [10] - 2498:15, 2498:21, 2499:6, 2501:21, 2501:22, 2503:1, 2503:16, 2505:3, 2510:13, 2519:15
**certifies** [2] - 2498:23, 2499:1
**certify** [1] - 2503:1
**chambers** [1] - 2522:23
**chance** [3] - 2452:6, 2461:7, 2521:7
**change** [3] - 2433:23, 2463:21, 2510:11
**changed** [1] - 2463:11
**changes** [5] - 2437:21, 2462:20, 2463:5, 2463:8, 2463:20
**changing** [1] - 2432:6
**channeled** [1] - 2466:11
**chapter** [1] - 2436:19
**character** [4] - 2466:15, 2467:21, 2483:20, 2490:16
**characteristics** [1] - 2480:24
**charge** [16] - 2432:6, 2433:18, 2435:6, 2437:7, 2437:9, 2462:4, 2462:12, 2462:17, 2463:23, 2464:11, 2464:12, 2464:18, 2464:25, 2511:25, 2521:16, 2521:17
**charged** [4] - 2448:2, 2457:11, 2477:25, 2526:13
**charges** [2] - 2448:7, 2510:23
**CHECK** [1] - 2497:23
**check** [1] - 2500:17
**childhood** [1] - 2440:16
**children** [4] - 2441:24, 2452:19, 2454:2, 2461:1
**choice** [1] - 2466:23
**choose** [2] - 2454:12, 2491:10
**choosing** [5] - 2437:16, 2460:10, 2484:25, 2507:18, 2516:12
**chronology** [1] - 2445:11
**Circuit** [1] - 2434:18
**circumstance** [4] - 2460:13, 2485:3, 2507:21, 2516:15
**circumstances** [9] - 2432:8, 2432:12, 2440:16, 2466:15, 2483:21, 2486:14, 2490:15, 2493:10, 2493:24
**citizens** [3] - 2520:24, 2522:6, 2525:25
**claimed** [1] - 2475:4
**clear** [2] - 2456:25, 2457:25
**CLERK** [50] - 2432:1, 2437:10, 2437:12, 2437:16, 2464:5, 2464:7, 2512:10, 2512:18, 2513:12, 2513:22, 2513:25, 2514:7, 2514:10, 2514:16, 2514:19, 2514:25, 2515:3, 2515:10, 2515:17, 2515:20, 2516:1, 2516:4, 2516:7, 2516:12, 2516:18, 2516:23, 2517:3, 2517:7, 2517:11, 2517:15, 2517:18, 2517:24, 2518:1, 2518:3, 2518:11, 2518:18, 2519:4, 2519:21, 2519:25, 2520:2, 2520:4, 2520:6, 2520:8, 2520:10, 2520:12, 2520:14, 2520:16, 2520:18, 2520:20, 2520:22
**Cliffton** [1] - 2453:22
**Climmiette** [6] - 2446:2, 2446:15, 2449:15, 2457:5, 2484:20, 2507:5
**close** [1] - 2455:2
**closing** [2] - 2465:10, 2470:24
**clubs** [1] - 2458:14
**co** [2] - 2448:13, 2448:14
**co-perpetrator** [2] - 2448:13, 2448:14
**coconspirator** [1] - 2435:10
**coconspirators** [1] - 2435:7
**codefendant** [1] - 2435:2
**Colbert** [3] - 2450:11, 2450:21, 2459:13
**cold** [1] - 2511:20
**Coleman** [2] - 2443:22, 2443:24
**collectively** [2] - 2501:15, 2522:6
**color** [4] - 2498:7, 2498:11, 2498:23, 2499:4
**Colorado** [1] - 2444:7
**combination** [1] - 2433:2
**combined** [3] - 2494:20, 2494:25, 2495:8
**comfort** [1] - 2465:8
**coming** [1] - 2439:3
**commended** [2] - 2526:12, 2526:23
**commending** [1] - 2522:13
**comments** [2] - 2436:19, 2436:20
**commission** [7] - 2474:15, 2474:22, 2477:4, 2504:7, 2504:21, 2514:12, 2515:5
**commitment** [2] - 2521:14, 2524:5
**committed** [5] - 2461:11, 2474:12, 2475:15, 2503:24, 2514:2

**committing** [1] - 2477:25
**common** [2] - 2467:18, 2470:13
**communicate** [3] - 2499:18, 2499:20, 2499:22
**communication** [1] - 2500:4
**community** [4] - 2436:24, 2452:21, 2453:24, 2455:22
**Comparative** [1] - 2448:16
**compared** [3] - 2435:15, 2462:14, 2489:9
**compelling** [1] - 2524:2
**competent** [1] - 2522:6
**compiled** [1] - 2500:10
**Complete** [4] - 2503:21, 2505:8, 2506:4, 2509:2
**complete** [4] - 2465:22, 2472:6, 2503:16, 2505:3
**completed** [4] - 2483:7, 2492:5, 2520:23, 2521:2
**complimented** [2] - 2525:22, 2526:7
**comply** [1] - 2487:9
**comport** [1] - 2463:21
**Computer** [1] - 2431:25
**conceive** [1] - 2480:17
**concept** [1] - 2434:10
**conceptual** [2] - 2436:3, 2463:21
**conceptually** [2] - 2462:16, 2463:18
**concerned** [1] - 2502:3
**concerns** [1] - 2524:20
**conclude** [1] - 2495:11
**concluded** [2] - 2465:10, 2527:3
**conclusion** [4] - 2495:19, 2496:22, 2499:7, 2501:2
**conclusions** [1] - 2464:20
**condemned** [1] - 2441:7
**conduct** [11] - 2439:10, 2439:11, 2440:21, 2440:22, 2460:10, 2473:2, 2483:19, 2485:1, 2493:7, 2507:19, 2516:13
**conducting** [1] - 2434:6
**confided** [1] - 2454:10
**confinement** [1] - 2433:7
**confusion** [1] - 2435:5
**Congress** [2] - 2466:9, 2498:15
**connection** [7] - 2465:20, 2472:19, 2479:17, 2482:16, 2486:25, 2503:8, 2513:17
**conscience** [1] - 2501:7
**conscientious** [1] - 2501:4
**consequence** [1] - 2509:24
**consequences** [1] - 2518:25
**consider** [40] - 2432:22, 2433:12, 2433:25, 2436:2, 2436:8, 2466:12, 2469:6, 2469:14, 2470:5, 2470:17, 2472:11, 2474:25, 2480:8, 2480:12, 2480:14, 2480:16, 2481:15, 2481:23, 2482:21, 2482:23, 2483:12, 2483:15, 2486:11, 2486:19, 2486:22, 2487:1, 2487:22, 2489:21, 2489:24, 2490:4, 2490:6, 2490:7, 2490:14, 2490:22, 2491:1, 2494:13, 2497:4, 2498:7, 2506:9, 2507:12
**considerable** [1] :22
**consideration** [21] - 2466:5, 2467:19, 2471:25, 2472:1, 2472:2, 2481:12, 2483:5, 2483:22, 2484:1, 2490:9, 2490:11, 2490:17, 2491:4, 2491:22, 2493:21, 2498:6, 2498:13, 2498:23, 2499:8, 2501:9
**considerations** [2] - 2470:7, 2486:25
**considered** [7] - 2451:2, 2471:10, 2489:9, 2492:3, 2501:9, 2509:17, 2518:19
**considering** [8] - 2471:23, 2481:19, 2482:5, 2489:16, 2493:3, 2493:12, 2497:13, 2497:14
**consistent** [5] - 2461:21, 2462:12, 2462:17, 2463:11, 2469:21
**conspicuous** [1] - 2492:10
**conspirator** [1] - 2435:1
**conspirators** [1] - 2434:24
**constitute** [1] - 2432:16
**constitutes** [3] - 2432:15, 2433:10, 2435:14
**constitutional** [1] - 2523:9
**constructive** [1] - 2523:4
**contained** [2] - 2503:16, 2505:4
**contains** [1] - 2498:15
**contemplates** [1] - 2494:17
**contemplating** [3] - 2472:17, 2503:6, 2513:15
**contemporaneous** [1] - 2481:8
**contents** [1] - 2464:17
**continue** [2] - 2496:23, 2510:3
**continued** [2] - 2481:6, 2481:16
**Continued** [5] - 2446:24, 2485:18, 2502:4, 2508:22, 2512:22
**Continued)** [2] - 2507:7, 2508:12
**Continuing** [3] - 2447:1, 2477:14, 2486:1
**continuing** [8] - 2442:7, 2442:10, 2449:22, 2474:19, 2477:17, 2477:20, 2504:15, 2514:22
**contrast** [1] - 2466:19
**contributed** [4] - 2460:13, 2485:3, 2507:21, 2516:15
**controls** [1] - 2468:22
**convict** [2] - 2451:4, 2488:12
**convicted** [6] - 2455:7, 2474:19, 2477:17, 2477:19, 2504:15, 2514:21
**Conviction** [1] - 2477:14
**conviction** [2] - 2442:15, 2477:21
**convictions** [1] - 2481:8
**convincing** [1] - 2467:21
**cooperate** [1] - 2525:10
**cooperated** [1] - 2446:22
**cooperating** [8] - 2446:11, 2484:23, 2486:6, 2487:3, 2487:5, 2487:17, 2507:15, 2516:8
**cooperation** [4] - 2449:9, 2487:9, 2487:12, 2487:19
**cooperators** [3] - 2432:11, 2436:1, 2487:18
**coordinated** [1] - 2464:15
**copies** [1] - 2511:10
**copy** [1] - 2464:16
**correct** [3] - 2447:19, 2464:3, 2489:2
**corrected** [1] - 2510:19
**CORRECTION** [1] - 2497:23
**correctly** [3] - 2464:11, 2511:15, 2521:11
**counsel** [4] - 2525:17, 2525:21, 2525:22, 2526:2
**Count** [29] - 2465:13, 2465:14, 2472:21, 2472:22, 2474:10, 2474:20, 2477:6, 2477:8, 2477:22, 2477:24, 2503:11, 2503:13, 2504:2, 2504:3, 2504:9, 2504:10, 2504:17, 2504:18, 2504:25, 2505:16, 2505:18, 2505:24, 2506:1, 2509:9, 2509:14, 2509:23, 2514:14, 2514:22
**count** [60] - 2465:18, 2467:8, 2471:17, 2471:18, 2471:20, 2472:12, 2473:14, 2473:18, 2473:19, 2474:6, 2474:9, 2475:1, 2475:6, 2477:3, 2477:25, 2479:20, 2479:21, 2480:1, 2480:5, 2480:10, 2482:5, 2482:21, 2482:22, 2483:1, 2483:17, 2492:15, 2492:18, 2492:22, 2493:3, 2493:8, 2493:10, 2493:12, 2493:14, 2494:10, 2495:18, 2495:20, 2496:4, 2496:10, 2496:13, 2496:19, 2496:20, 2497:8, 2500:5, 2513:19, 2513:22, 2514:4, 2514:7, 2514:16, 2514:25, 2515:7, 2515:15, 2515:17, 2515:24, 2516:1, 2518:7, 2518:13, 2518:24, 2519:4
**countries** [1] - 2455:5
**country** [2] - 2521:20, 2526:1
**counts** [19] - 2465:17, 2471:16, 2472:15, 2473:13, 2475:15, 2477:16, 2479:17, 2480:18, 2482:17, 2483:13, 2493:7, 2495:25, 2503:22, 2505:9, 2506:5, 2509:3, 2521:24, 2523:22
**couple** [1] - 2454:14
**course** [7] - 2464:25, 2465:6, 2500:6, 2501:3, 2525:14, 2526:18, 2526:20
**court** [12] - 2462:8, 2497:2, 2499:20, 2499:21, 2499:24, 2500:4, 2500:15, 2501:25, 2511:17, 2512:21, 2517:22, 2522:25
**COURT** [55] - 2431:1, 2432:4, 2433:17, 2434:15, 2434:21, 2435:4, 2435:14, 2436:10, 2436:16, 2436:25, 2437:6, 2437:11, 2437:13, 2437:18, 2437:23, 2438:1, 2456:9, 2456:13, 2462:2, 2462:10, 2462:22, 2463:3, 2463:25, 2486:1, 2510:22, 2510:24, 2511:1, 2511:13, 2511:18, 2512:8, 2512:11, 2512:17, 2512:19, 2513:3, 2513:9, 2516:5, 2517:21, 2519:6, 2519:8, 2519:10, 2519:13, 2519:15, 2519:18, 2519:22, 2520:23, 2523:17, 2524:2, 2524:9, 2524:14, 2524:19, 2525:4, 2525:6, 2525:12, 2525:20, 2526:25
**Court** [11] - 2431:20, 2431:21, 2434:18, 2463:1, 2464:1, 2466:8, 2473:19, 2479:21, 2501:8, 2512:18,

2513:4
**court's** [1] - 2518:20
**Court's** [1] - 2509:19
**Courthouse** [1] - 2431:4
**courtroom** [11] - 2437:18, 2437:19, 2437:21, 2437:25, 2442:23, 2461:13, 2495:3, 2512:9, 2513:8, 2523:8, 2523:16
**courts** [1] - 2435:18
**cover** [1] - 2450:18
**Cr-04-966** [1] - 2431:3
**cream** [1] - 2458:21
**created** [8] - 2434:24, 2449:14, 2459:20, 2474:23, 2478:1, 2479:3, 2504:22, 2515:5
**creation** [1] - 2460:7
**crime** [6] - 2434:10, 2434:14, 2466:15, 2471:18, 2498:10, 2499:3
**crimes** [11] - 2448:24, 2449:21, 2457:10, 2461:11, 2485:8, 2487:23, 2488:4, 2499:3, 2508:3, 2516:24
**criminal** [16] - 2434:7, 2439:10, 2439:11, 2440:21, 2440:22, 2442:8, 2442:10, 2460:10, 2474:19, 2477:17, 2477:20, 2485:1, 2504:15, 2507:19, 2514:22, 2516:13
**Criminal** [2] - 2432:1, 2477:14
**Crosby** [5] - 2445:11, 2445:16, 2446:3, 2484:15, 2506:25
**cross** [1] - 2510:8
**crowd** [1] - 2449:15
**culpability** [1] - 2448:16
**culpable** [3] - 2434:25, 2435:10, 2435:11
**cured** [1] - 2521:8
**curiosities** [1] - 2522:19
**current** [1] - 2435:21
**cuts** [1] - 2524:22
**cycle** [2] - 2455:21, 2456:1

## D

**daily** [1] - 2526:9
**danger** [5] - 2441:17, 2443:21, 2449:22, 2450:2, 2461:11
**dangerous** [5] - 2450:20, 2460:12, 2485:2, 2507:20, 2516:14
**dangerousness** [6] - 2481:5, 2481:12, 2481:19, 2481:25, 2505:23, 2515:23
**date** [3] - 2519:13, 2523:19, 2523:22
**DAVID** [1] - 2431:17
**David** [1] - 2451:9
**days** [4] - 2439:5, 2454:14, 2521:22, 2525:8
**dead** [3] - 2438:21, 2448:5, 2459:12
**deal** [1] - 2432:13
**dealing** [1] - 2439:12
**Death** [2] - 2456:4, 2477:22
**death** [152] - 2432:11, 2435:1, 2435:13, 2435:21, 2436:9, 2438:17, 2438:23, 2438:24, 2439:1, 2439:4, 2439:5, 2439:20, 2439:24, 2440:2, 2440:13, 2441:4, 2441:7, 2441:23, 2442:2, 2445:7, 2[illegible], 2445:17, 2445:19, 2445:24, 2445:25, 2446:2, 2446:3, 2446:6, 2446:8, 2446:23, 2447:12, 2448:20, 2451:1, 2452:23, 2452:24, 2454:5, 2454:12, 2454:22, 2455:7, 2455:11, 2455:16, 2455:18, 2455:19, 2456:21, 2457:13, 2457:16, 2461:19, 2461:25, 2463:17, 2465:16, 2466:7, 2466:10, 2466:18, 2466:20, 2466:24, 2467:1, 2467:7, 2467:15, 2468:5, 2470:19, 2471:5, 2471:7, 2471:20, 2472:11, 2473:4, 2474:2, 2474:13, 2474:23, 2476:2, 2476:4, 2478:1, 2479:1, 2480:25, 2482:21, 2483:23, 2484:2, 2484:6, 2484:9, 2484:11, 2484:14, 2484:16, 2484:18, 2484:21, 2484:24, 2485:9, 2486:8, 2486:12, 2486:16, 2486:18, 2486:24, 2487:4, 2487:24, 2488:9, 2488:13, 2490:18, 2493:3, 2493:11, 2493:25, 2494:2, 2494:3, 2494:5, 2494:21, 2495:1, 2495:9, 2495:13, 2495:17, 2495:24, 2496:5, 2496:10, 2496:12, 2496:19, 2497:5, 2497:9, 2497:19, 2497:22, 2497:25, 2498:6, 2498:10, 2499:8, 2499:14, 2499:15, 2504:1, 2504:22, 2506:12, 2506:16, 2506:19, 2506:21, 2506:24, 2507:1, 2507:3, 2507:5, 2507:16, 2508:4, 2509:8, 2509:11, 2509:13, 2509:22, 2514:4, 2515:6, 2516:9, 2517:1, 2518:6, 2518:9, 2518:13, 2518:23, 2526:6
**deaths** [8] - 2459:8, 2460:14, 2460:15, 2460:16, 2461:24, 2485:3, 2507:21, 2516:15
**December** [1] - 2521:10
**decide** [18] - 2439:2, 2440:13, 2445:6, 2455:11, 2457:22, 2465:2, 2466:10, 2469:11, 2475:1, 2487:14, 2493:9, 2495:9, 2495:14, 2497:4, 2497:5, 2501:1, 2506:9, 2507:12
**decided** [3] - 2445:16, 2445:17, 2448:19
**deciding** [5] - 2469:10, 2469:13, 2470:8, 2474:1, 2475:20
**decision** [42] - 2439:2, 2439:5, 2439:22, 2440:7, 2465:4, 2465:18, 2466:2, 2466:5, 2466:6, 2466:8, 2466:17, 2467:1, 2470:3, 2471:9, 2471:11, 2475:6, 2489:16, 2489:25, 2490:5, 2493:25, 2494:5, 2494:11, 2495:16, 2496:25, 2497:1, 2497:24, 2498:3, 2498:20, 2499:1, 2499:13, 2499:23, 2500:1, 2500:2, 2500:3, 2500:13, 2500:16, 2500:24, 2501:10, 2507:13, 2510:5, 2510:8, 2510:10
**decision-making** [1] - 2495:16
**decisions** [1] - 2506:11
**declining** [2] - 2486:15, 2486:18
**defendant** [61] - 2433:21, 2450:12, 2465:13, 2465:16, 2466:10, 2466:16, 2466:23, 2466:25, 2467:7, 2467:25, 2468:3, 2468:6, 2468:8, 2469:2, 2471:2, 2471:3, 2471:5, 2472:16, 2474:12, 2474:15, 2474:18, 2474:22, 2475:15, 2475:25, 2477:3, 2477:7, 2477:8, 2477:16, 2477:19, 2477:25, 2479:3, 2480:21, 2481:4, 2481:13, 2481:15, 2481:18, 2481:19, 2481:20, 2481:24, 2483:16, 2486:2, 2486:23, 2487:4, 2488:20, 2490:14, 2491:23, 2492:1, 2492:19, 2494:15, 2496:18, 2497:18, 2498:4, 2498:9, 2498:12, 2498:24, 2499:14, 2503:5, 2507:9, 2512:14, 2513:14, 2522:2
**DEFENDANT** [1] - 2431:6
**Defendant** [1] - 2431:17
**DEFENDANT'S** [1] - 2471:1
**defendant's** [12] - 2471:9, 2472:15, 2475:9, 2481:7, 2483:19, 2483:20, 2487:22, 2488:4, 2488:11, 2488:23, 2490:16, 2490:20
**defendants** [1] - 2435:7
**defense** [8] - 2432:5, 2432:21, 2438:2, 2457:12, 2458:8, 2458:10, 2460:9, 2483:25
**defines** [1] - 2442:10
**definition** [2] - 2435:18, 2479:2
**deliberate** [2] - 2440:5, 2511:23
**deliberating** [2] - 2475:19, 2522:8
**deliberation** [6] - 2496:8, 2497:7, 2497:12, 2497:24, 2509:21, 2511:21
**DELIBERATIONS** [1] - 2471:14
**deliberations** [23] - 2438:4, 2464:22, 2465:1, 2465:3, 2465:9, 2473:19, 2479:21, 2480:13, 2483:6, 2491:5, 2493:21, 2496:16, 2499:12, 2499:17, 2500:6, 2500:20, 2501:3, 2501:25, 2503:16, 2505:3, 2511:24, 2512:3, 2518:22
**DELIBERATIVE** [1] - 2471:21
**deliberative** [2] - 2472:8, 2522:21
**demand** [2] - 2445:22, 2460:25
**demands** [2] - 2460:25, 2461:23
**demonstrate** [1] - 2481:21
**demonstrated** [3] - 2480:24, 2481:6, 2481:17
**Dennis** [4] - 2445:11, 2446:3, 2484:15, 2506:25
**deny** [1] - 2436:10
**department** [2] - 2521:16, 2521:17
**describe** [1] - 2451:11
**described** [4] - 2479:10, 2482:9, 2496:8, 2496:16
**deserve** [1] - 2457:13
**deserves** [2] - 2461:10, 2470:10
**detail** [2] - 2472:9, 2475:10
**details** [2] - 2441:1, 2464:10
**Detention** [1] - 2524:7
**Determination** [1] - 2519:4
**determination** [7] - 2432:25, 2433:3, 2490:23, 2491:9, 2510:4, 2510:7, 2518:3
**DETERMINATION** [1] - 2509:1
**determinations** [2] - 2469:6, 2523:12
**determine** [9] - 2433:20, 2471:17,

2474:7, 2488:20, 2492:16, 2492:19, 2494:8, 2496:25, 2499:9
**determined** [2] - 2468:19, 2501:6
**determiners** [1] - 2439:7
**determines** [1] - 2524:13
**determining** [2] - 2436:1, 2493:11
**devastating** [1] - 2451:11
**developed** [1] - 2435:22
**die** [1] - 2451:5
**died** [3] - 2472:20, 2503:10, 2513:19
**dies** [1] - 2439:8
**difference** [4] - 2434:16, 2488:8, 2522:1, 2524:3
**differences** [1] - 2471:19
**different** [10] - 2465:21, 2469:19, 2471:18, 2471:19, 2490:5, 2491:10, 2494:17, 2494:18, 2524:12
**differentiate** [1] - 2522:2
**differs** [1] - 2488:15
**difficult** [3] - 2520:24, 2521:2, 2522:13
**direct** [2] - 2472:21, 2503:10
**direction** [7] - 2453:5, 2453:12, 2454:10, 2458:12, 2485:16, 2508:14, 2517:13
**directs** [1] - 2474:25
**discharge** [1] - 2520:25
**disclosed** [1] - 2501:23
**discretion** [2] - 2466:11, 2487:19
**discuss** [3] - 2440:6, 2480:14, 2500:21
**discussed** [3] - 2471:10, 2497:14
**discussing** [1] - 2440:8
**discussion** [4] - 2496:24, 2497:1, 2509:21, 2518:22
**discussions** [1] - 2496:23
**Disease** [1] - 2460:17
**displayed** [1] - 2526:8
**disproving** [1] - 2467:25
**disregard** [1] - 2436:13
**distance** [1] - 2521:7
**distinct** [1] - 2491:3
**District** [1] - 2525:3
**DISTRICT** [3] - 2431:1, 2431:1, 2431:9
**Dog** [2] - 2484:5, 2506:15
**done** [4] - 2438:13, 2464:13, 2511:15, 2525:13
**door** [1] - 2491:1
**doubt** [80] - 2440:1, 2451:3, 2451:8, 2461:17, 2463:15, 2467:6, 2467:9, 2467:18, 2467:20, 2467:23, 2467:24, 2468:2, 2468:15, 2469:4, 2471:7, 2472:13, 2473:7, 2473:9, 2473:12, 2473:17, 2474:5, 2474:8, 2475:7, 2475:25, 2479:9, 2479:11, 2479:12, 2479:15, 2479:20, 2479:25, 2480:6, 2480:12, 2482:1, 2482:8, 2482:10, 2482:14, 2482:25, 2483:4, 2488:2, 2488:5, 2489:4, 2489:15, 2492:13, 2492:17, 2492:24, 2493:6, 2494:2, 2494:22, 2494:24, 2495:7, 2495:19, 2495:24, 2496:3, 2496:9, 2496:18, 2497:20, 2499:15, 2503:5, 2503:24, 2504:6, 2504:14, 2504:21, 2505:11, 2505:13, 2505:21 7, 2509:5, 2509:7, 2509:13, 2513:14, 2514:2, 2514:11, 2514:20, 2515:4, 2515:12, 2515:21, 2518:4, 2518:12
**Douglas** [2] - 2452:18, 2453:15
**down** [12] - 2435:2, 2435:12, 2439:23, 2440:6, 2443:23, 2443:24, 2455:10, 2456:19, 2457:5, 2464:8, 2464:11
**downstairs** [2] - 2437:14
**draw** [2] - 2435:22, 2470:20
**drawing** [1] - 2464:19
**dream** [2] - 2453:13, 2453:14
**drug** [3] - 2439:11, 2442:8, 2523:25
**drugs** [1] - 2458:25
**due** [4] - 2497:6, 2497:12, 2500:23, 2525:14
**duly** [1] - 2512:6
**during** [18] - 2435:6, 2436:20, 2436:21, 2437:7, 2437:21, 2465:8, 2467:17, 2469:7, 2469:8, 2470:4, 2470:14, 2477:10, 2479:4, 2483:6, 2487:6, 2491:11, 2499:17, 2512:13
**During** [2] - 2477:18, 2501:25
**duties** [1] - 2472:8
**Dwight** [1] - 2451:18

## E

**E-Bay** [2] - 2448:2, 2448:6
**earned** [1] - 2461:20
**East** [1] - 2431:21
**EASTERN** [1] - 2431:1
**eat** [1] - 2465:1
**eating** [1] - 2465:2
**economic** [1] - 2477:12
**editings** [1] - 2463:6
**edits** [2] - 2462:11, 2511:4
**effect** [5] - 2434:5, 2451:9, 2451:16, 2452:3, 2501:5
**effort** [3] - 2438:16, 2442:12, 2524:25
**eight** [4] - 2433:14, 2433:19, 2433:24, 2516:6
**either** [6] - 2470:20, 2472:12, 2498:8, 2498:12, 2503:18, 2521:17
**elaboration** [1] - 2486:3
**element** [2] - 2434:10, 2434:11
**elements** [3] - 2434:14, 2475:11, 2522:3
**eleven** [4] - 2513:22, 2515:17, 2516:1, 2523:23
**Eleven** [10] - 2465:14, 2472:22, 2474:10, 2477:8, 2503:13, 2504:3, 2504:10, 2504:18, 2505:18, 2506:1
**eliminate** [2] - 2433:15, 2463:12
**Emanuel** [8] - 2445:12, 2446:4, 2446:19, 2449:8, 2457:4, 2484:5, 2506:15
**emotions** [2] - 2451:12, 2451:13
**emphasize** [1] - 2498:13
**encircled** [1] - 2443:15
**end** [3] - 2455:21, 2456:1, 2475:18
**ends** [1] - 2449:1
**energy** [2] - 2526:8, 2526:9
**engage** [9] - 2460:10, 2484:25, 2489:1, 2490:25, 2492:21, 2507:18, 2516:13, 2522:14, 2522:21
**engaged** [5] - 2448:24, 2476:1, 2481:16, 2509:20, 2518:21
**engaging** [9] - 2474:19, 2477:17, 2477:19, 2493:19, 2496:7, 2496:8, 2496:15, 2504:15, 2514:21
**enormous** [3] - 2525:25, 2526:5, 2526:8
**enter** [1] - 2501:12
**enterprise** [8] - 2434:7, 2442:8, 2442:10, 2474:19, 2477:18, 2477:20, 2504:16, 2514:22
**Enterprise** [1] - 2477:14
**enters** [2] - 2437:25, 2513:8
**entirely** [1] - 2494:1
**envelope** [2] - 2501:24, 2502:1
**equally** [5] - 2434:25, 2435:9, 2435:11, 2468:17, 2489:12
**equals** [1] - 2440:11
**Eric** [43] - 2438:22, 2447:5, 2447:7, 2447:12, 2448:4, 2450:9, 2450:10, 2450:12, 2454:21, 2457:8, 2459:12, 2459:13, 2459:16, 2460:2, 2460:4, 2460:5, 2461:24, 2465:14, 2472:22, 2477:7, 2486:12, 2487:8, 2503:11, 2504:2, 2504:9, 2504:17, 2504:25, 2505:16, 2505:24, 2506:16, 2506:19, 2506:22, 2506:24, 2507:1, 2507:4, 2507:6, 2513:20, 2514:5, 2514:14, 2514:23, 2515:7, 2515:15, 2515:24
**Erica** [2] - 2443:23, 2453:22
**especially** [2] - 2522:6, 2526:4
**ESQ** [2] - 2431:17, 2431:18
**essence** [1] - 2486:15
**establish** [7] - 2468:7, 2468:9, 2485:7, 2488:24, 2490:21, 2508:2, 2516:24
**established** [27] - 2432:24, 2433:2, 2433:7, 2433:10, 2433:14, 2433:19, 2433:21, 2433:25, 2434:1, 2434:12, 2434:17, 2462:14, 2468:11, 2488:19, 2488:21, 2489:2, 2489:6, 2489:10, 2489:20, 2489:22, 2489:24, 2491:14, 2491:19, 2491:25, 2492:20, 2493:1, 2506:9
**establishes** [1] - 2487:22
**evaluate** [1] - 2466:21
**evaluating** [2] - 2486:13, 2486:19
**evaluation** [1] - 2501:7
**event** [6] - 2473:8, 2479:10, 2482:9, 2493:4, 2496:25, 2497:15
**everywhere** [1] - 2454:25
**evidence** [61] - 2433:22, 2436:7, 2436:17, 2440:23, 2441:12, 2442:18, 2443:8, 2444:17, 2445:1, 2450:24, 2456:22, 2459:11, 2459:12, 2459:18, 2459:20, 2459:22, 2459:23, 2459:24, 2460:22, 2461:22, 2467:19, 2468:4, 2468:12, 2468:14, 2468:16, 2468:17, 2468:19, 2469:7, 2469:9, 2469:21, 2469:22, 2470:2, 2470:10, 2470:25, 2481:23, 2485:7, 2487:22, 2488:7,

2488:22, 2488:25, 2489:5, 2489:6, 2489:8, 2489:11, 2489:20, 2490:22, 2491:16, 2491:20, 2492:1, 2492:21, 2493:2, 2493:22, 2495:10, 2499:10, 2501:5, 2507:10, 2508:2, 2508:20, 2512:13, 2516:23
**EVIDENCE** [1] - 2469:5
**evident** [1] - 2463:8
**exactly** [2] - 2510:2, 2525:25
**example** [5] - 2433:1, 2433:4, 2481:22, 2486:8, 2491:5
**examples** [2] - 2458:19, 2458:20
**except** [1] - 2434:4
**exception** [1] - 2471:15
**exchanges** [1] - 2453:6
**excuse** [9] - 2439:10, 2439:11, 2439:12, 2440:17, 2440:22, 2452:22, 2452:24, 2483:19
**execute** [1] - 2438:16
**executed** [7] - 2450:17, 2451:6, 2451:10, 2452:4, 2485:10, 2508:6, 2517:3
**execution** [5] - 2440:11, 2441:16, 2445:22, 2455:5, 2517:23
**executioners** [1] - 2455:6
**exemplary** [1] - 2521:21
**Exhibit** [5] - 2464:1, 2477:21, 2512:18, 2513:4
**exhibit** [3] - 2464:2, 2512:10, 2512:12
**exhibits** [5] - 2441:1, 2468:20, 2500:8, 2500:9, 2512:14
**exist** [9] - 2463:16, 2467:14, 2468:4, 2481:22, 2491:15, 2492:25, 2493:14, 2509:7, 2518:5
**existed** [1] - 2442:18
**existence** [29] - 2467:10, 2467:12, 2468:1, 2468:9, 2470:16, 2471:12, 2472:14, 2474:8, 2475:2, 2475:3, 2475:5, 2480:6, 2480:9, 2483:1, 2483:2, 2483:8, 2483:14, 2483:16, 2489:7, 2490:4, 2491:3, 2492:6, 2492:13, 2492:17, 2492:19
**existing** [1] - 2525:2
**exists** [3] - 2432:9, 2491:7, 2507:11
**exited** [1] - 2512:9
**expected** [1] - 2522:14
**expeditious** [1] - 2525:9
**expense** [1] - 2526:5
**experienced** [1] - 2470:1
**expert** [6] - 2433:12, 2469:23, 2470:5, 2470:9, 2470:12
**expert's** [2] - 2470:5, 2470:11
**experts** [1] - 2526:2
**explain** [13] - 2434:15, 2438:4, 2471:15, 2471:22, 2472:9, 2473:24, 2480:1, 2483:10, 2488:17, 2492:7, 2501:14, 2511:1, 2522:22
**explained** [7] - 2466:14, 2467:17, 2471:23, 2477:10, 2488:6, 2488:23, 2493:18
**explanation** [2] - 2439:16, 2439:17
**explanatory** [1] - 2481:2
**express** [1] - 246
**extended** [1] - 2452:1
**extensive** [1] - 2523:24
**extent** [2] - 2469:20, 2487:11
**extinguished** [1] - 2454:19
**extra** [1] - 2508:18

## F

**face** [2] - 2438:23, 2438:25
**faced** [3] - 2445:23, 2449:10, 2486:12
**faces** [1] - 2486:23
**facilitate** [1] - 2464:21
**facilities** [1] - 2511:23
**facility** [2] - 2443:18, 2524:13
**facing** [5] - 2435:12, 2446:20, 2446:21, 2487:6
**fact** [18] - 2432:15, 2433:9, 2442:4, 2454:5, 2463:12, 2463:16, 2467:7, 2470:16, 2470:17, 2470:21, 2471:7, 2494:2, 2499:16, 2521:15, 2521:17, 2521:23, 2526:19, 2526:21
**FACTOR** [2] - 2472:10, 2503:3
**factor** [96] - 2432:18, 2432:20, 2433:1, 2433:6, 2434:7, 2435:25, 2441:6, 2444:11, 2445:9, 2446:13, 2450:18, 2450:24, 2453:17, 2467:10, 2467:11, 2468:4, 2468:18, 2471:13, 2471:25, 2472:14, 2472:16, 2473:8, 2473:9, 2473:11, 2473:18, 2473:23, 2473:25, 2474:1, 2474:6, 2474:21, 2475:2, 2475:6, 2475:14, 2477:2, 2477:15, 2477:23, 2479:12, 2479:14, 2479:19, 2479:25, 2480:7, 2480:8, 2480:11, 2480:12, 2480:23, 2481:5, 2481:11, 2481:21, 2482:11, 2482:13, 2482:18, 2482:20, 2482:24, 2483:1, 2483:3, 2483:5, 2483:14, 2483:15, 2483:18, 2487:1, 2487:21, 2487:24, 2488:14, 2488:24, 2489:5, 2489:12, 2491:3, 2491:5, 2491:7, 2491:19, 2491:24, 2492:3, 2492:14, 2492:15, 2492:20, 2492:24, 2493:5, 2493:13, 2493:17, 2494:13, 2494:19, 2494:24, 2495:7, 2495:16, 2495:20, 2496:2, 2505:11, 2506:7, 2507:10, 2507:11, 2509:5, 2509:7, 2513:12, 2518:5
**FACTORS** [8] - 2474:3, 2480:3, 2483:11, 2503:20, 2504:12, 2505:7, 2507:7, 2508:12
**factors** [119] - 2432:8, 2432:13, 2432:17, 2432:21, 2433:20, 2433:25, 2434:4, 2434:14, 2436:2, 2436:8, 2441:3, 2448:17, 2448:22, 2449:2, 2450:4, 2450:15, 2452:14, 2459:5, 2460:11, 2461:16, 2461:17, 2463:13, 2463:16, 2463:17, 2463:19, 2466:13, 2466:14, 2466:17, 2466:19, 2466:22, 2467:13, 2467:15, 2468:7, 2468:8, 2468:10, 2469:2, 2469:4, 2472:1, 2472:2, 2472:3, 2472:4, 2474:9, 2474:11, 2475:4, 2475:8, 2475:12, 2479:9, 2479:16, 2480:9, 2480:15, 2480:19, 2482:4, 2482:9, 2482:16, 2482:19, 2483:9, 2483:17, 2483:25, 2486:2, 2486:5, 2486:10, 2486:22, 2488:15, 2488:16, 2488:18, 2488:20, 2488:25, 2489:14, 2489:17, 2489:19, 2489:21, 2489:23, 2490:2, 2490:4, 2490:10, 2490:12, 2490:13, 2490:19, 2491:1, 2491:2, 2491:10, 2491:13, 2491:22, 2491:24, 2492:1, 2492:3, 2492:6, 2492:8, 2492:18, 2492:25, 2493:1, 2493:13, 2493:16, 2494:8, 2494:11, 2494:14, 2494:17, 2494:20, 2494:25, 2495:8, 2495:12, 2495:20, 2495:21, 2498:16, 2506:8, 2507:8, 2508:19, 2508:21, 2509:7, 2509:8, 2514:1, 2515:11, 2516:4, 2517:19, 2518:5, 2518:6
**facts** [8] - 2433:12, 2462:14, 2469:10, 2470:3, 2470:17, 2480:16, 2493:10, 2499:9
**factual** [3] - 2432:25, 2435:15, 2491:8
**factually** [9] - 2432:23, 2433:2, 2433:7, 2433:10, 2433:14, 2433:18, 2489:2, 2489:22, 2491:7
**failed** [2] - 2509:13, 2518:12
**fair** [2] - 2445:17, 2486:23
**fairness** [5] - 2445:3, 2445:21, 2483:23, 2486:15, 2486:17
**families** [1] - 2455:22
**family** [16] - 2438:12, 2442:24, 2450:16, 2451:6, 2452:1, 2453:21, 2454:17, 2455:22, 2461:4, 2480:22, 2481:1, 2485:11, 2505:14, 2508:7, 2515:14, 2517:4
**far** [1] - 2490:25
**fashion** [1] - 2522:14
**fathers** [1] - 2461:1
**favorable** [7] - 2446:11, 2457:21, 2457:22, 2484:22, 2487:2, 2507:14, 2516:7
**favors** [1] - 2470:19
**FB** [1] - 2431:3
**fear** [2] - 2459:14, 2460:6
**February** [1] - 2431:7
**federal** [8] - 2435:20, 2443:4, 2443:6, 2443:13, 2444:21, 2444:24, 2445:1, 2525:10
**feed** [1] - 2451:14
**feelings** [1] - 2525:23
**fellow** [2] - 2440:8, 2501:2
**felt** [1] - 2451:14
**few** [7] - 2456:10, 2456:24, 2462:15, 2481:10, 2486:4, 2499:11, 2511:7
**field** [1] - 2470:1
**fifteen** [1] - 2462:18
**fight** [1] - 2459:17
**filed** [1] - 2502:2
**fill** [2] - 2500:14, 2519:15
**final** [5] - 2439:5, 2467:3, 2469:1, 2498:14, 2500:20
**finally** [1] - 2460:8
**Finally** [3] - 2470:23, 2487:21, 2490:9
**findings** [5] - 2482:3, 2483:7, 2492:5, 2500:15, 2500:18

**fine** [1] - 2433:16
**firearms** [1] - 2450:23
**fired** [1] - 2448:5
**firing** [1] - 2455:5
**First** [4] - 2438:9, 2448:3, 2481:11, 2486:5
**first** [16] - 2433:24, 2441:6, 2449:9, 2456:18, 2458:2, 2459:7, 2472:12, 2475:14, 2482:24, 2487:25, 2491:6, 2501:14, 2510:22, 2512:2, 2519:8, 2521:9
**Five** [3] - 2492:7, 2516:11, 2517:10
**five** [2] - 2442:9, 2463:14
**Florence** [4] - 2441:25, 2442:1, 2444:6, 2444:7
**Florida** [2] - 2443:22, 2443:24
**flows** [1] - 2463:18
**focus** [2] - 2457:6, 2457:9
**focusing** [1] - 2495:5
**folks** [2] - 2512:8, 2526:1
**Folks** [1] - 2520:23
**Follow** [1] - 2461:19
**follow** [3] - 2461:20, 2466:8, 2471:22
**following** [7] - 2462:9, 2467:9, 2474:8, 2496:16, 2508:18, 2510:21, 2511:17
**follows** [2] - 2472:6, 2480:20
**food** [1] - 2464:14
**foot** [1] - 2457:18
**forbids** [1] - 2472:25
**force** [3] - 2472:18, 2503:8, 2513:17
**Ford** [1] - 2453:22
**Ford's** [1] - 2443:23
**foreperson** [6] - 2499:19, 2500:2, 2500:13, 2501:16, 2510:11, 2519:13
**forgiveness** [1] - 2451:13
**form** [14] - 2435:2, 2463:4, 2469:22, 2472:6, 2491:23, 2492:4, 2496:11, 2496:14, 2496:21, 2500:17, 2501:13, 2511:3, 2512:1
**Form** [11] - 2472:6, 2473:5, 2479:7, 2482:6, 2491:12, 2495:22, 2497:3, 2498:14, 2500:14, 2509:19, 2518:20
**formidable** [1] - 2443:18
**forms** [1] - 2510:18
**formulating** [1] - 2475:17
**forth** [1] - 2481:24
**forward** [3] - 2456:10, 2456:15, 2462:20
**four** [4] - 2438:20, 2447:24, 2450:3, 2521:22
**Four** [1] - 2483:9
**FOUR** [1] - 2483:11
**fourth** [3] - 2474:21, 2477:23, 2489:5
**frankness** [1] - 2500:22
**FREDERIC** [1] - 2431:9
**free** [5] - 2440:13, 2480:16, 2490:22, 2495:9, 2525:17
**freedom** [1] - 2523:6
**Freemantle** [2] - 2452:1, 2453:14
**friend** [3] - 2447:7, 2459:16, 2460:5
**friends** [14] - 2438:12, 2442:24, 2450:12, 2450:16, 2451:6, 2459:17, 2460:3, 2480:23, , 2485:10, 2505:15, 2508:6, 2515:14, 2517:4
**front** [1] - 2455:24
**fulfill** [1] - 2446:16
**full** [3] - 2501:9, 2524:18, 2526:19
**full-blown** [1] - 2524:18
**fullest** [1] - 2501:10
**fully** [4] - 2435:22, 2487:9, 2496:24, 2523:10
**funding** [1] - 2525:8
**Future** [1] - 2449:22
**future** [9] - 2441:17, 2450:2, 2454:16, 2481:4, 2481:12, 2481:18, 2481:25, 2505:23, 2515:23

## G

**gag** [2] - 2523:5, 2523:10
**gain** [1] - 2449:4
**games** [1] - 2458:22
**gamut** [1] - 2451:12
**Gary** [1] - 2453:22
**General** [2] - 2445:16, 2445:24
**general** [1] - 2469:19
**generosity** [5] - 2452:15, 2458:18, 2485:13, 2508:10, 2517:8
**gentlemen** [4] - 2438:9, 2456:17, 2460:8, 2460:21
**given** [8] - 2463:9, 2491:5, 2494:17, 2495:15, 2502:1, 2506:10, 2507:12, 2521:22
**glad** [1] - 2525:19
**goal** [1] - 2442:22
**Government** [1] - 2431:12
**government** [71] - 2434:15, 2435:20, 2438:3, 2442:16, 2442:21, 2445:15, 2446:15, 2447:3, 2447:25, 2448:8, 2448:19, 2450:7, 2457:10, 2458:8, 2461:15, 2467:5, 2467:8, 2468:1, 2468:2, 2469:3, 2472:13, 2472:15, 2473:6, 2473:17, 2474:5, 2474:7, 2474:10, 2474:20, 2475:4, 2475:11, 2475:24, 2477:6, 2477:24, 2479:2, 2479:8, 2479:18, 2479:24, 2480:5, 2480:8, 2480:11, 2480:18, 2480:23, 2481:5, 2482:1, 2482:7, 2482:25, 2483:4, 2487:10, 2490:11, 2492:13, 2492:16, 2495:23, 2503:4, 2503:23, 2504:5, 2504:13, 2504:20, 2505:12, 2505:20, 2509:12, 2512:13, 2513:13, 2514:1, 2514:11, 2514:20, 2515:4, 2515:12, 2515:21, 2518:12, 2524:21
**government's** [3] - 2481:15, 2487:17, 2489:18
**grave** [5] - 2474:23, 2478:1, 2479:1, 2504:22, 2515:6
**Grave** [2] - 2449:14, 2477:22
**great** [1] - 2522:9
**greater** [2] - 2468:20, 2494:12
**grew** [1] - 2454:1
**grief** [9] - 2451:7, 2453:1, 2454:24, 2455:1, 2455:21, 2456:1, 2485:11, 2508:7, 2517:4
**guard** [1] - 2443:10
**guess** [2] - 2524:4, 2526:3
**guide** [1] - 2464:19
**guidelines** [1] - 2524:1
**guilt** [22] - 2450:25, 2464:13, 2465:21, 2465:24, 2467:17, 2469:8, 2470:4, 2470:14, 2477:10, 2477:18, 2479:4, 2485:8, 2487:6, 2487:23, 2488:4, 2488:5, 2488:8, 2488:12, 2508:3, 2516:24, 2521:22
**guilty** [12] - 2442:7, 2443:4, 2447:14, 2449:8, 2449:12, 2457:9, 2465:13, 2466:25, 2471:4, 2521:24, 2521:25, 2522:2
**gun** [2] - 2443:20, 2444:4
**guys** [1] - 2449:23

## H

**hair** [2] - 2432:19
**half** [1] - 2464:24
**hand** [5] - 2434:17, 2454:5, 2454:13, 2454:15, 2479:23
**handing** [1] - 2459:2
**handing)** [1] - 2501:19
**harbor** [1] - 2488:12
**hard** [3] - 2438:12, 2453:16, 2458:12
**harm** [4] - 2449:14, 2480:21, 2505:14, 2515:13
**hate** [1] - 2451:14
**headings** [2] - 2464:17, 2464:20
**hear** [5] - 2432:4, 2442:20, 2444:24, 2462:8, 2469:15
**heard** [15] - 2436:7, 2441:21, 2441:25, 2443:7, 2443:8, 2452:16, 2452:17, 2453:8, 2453:21, 2459:15, 2459:16, 2469:22, 2493:22
**heartfelt** [1] - 2525:24
**held** [1] - 2454:14
**help** [6] - 2450:9, 2450:10, 2453:11, 2453:25, 2454:3, 2464:21
**helped** [1] - 2452:18
**helping** [1] - 2454:6
**helps** [1] - 2452:8
**Hermein** [1] - 2452:17
**heroin** [1] - 2459:3
**hesitant** [1] - 2434:10
**hesitation** [1] - 2467:22
**highest** [1] - 2526:21
**hills** [1] - 2444:7
**himself** [8] - 2446:5, 2452:14, 2458:18, 2459:21, 2471:4, 2485:12, 2508:9, 2517:8
**hire** [4] - 2465:13, 2465:14, 2466:25, 2522:4
**hired** [2] - 2449:5, 2457:7
**hires** [1] - 2457:16
**history** [1] - 2486:21
**Hogan** [2] - 2453:22, 2458:23
**hold** [2] - 2457:17, 2460:20
**hole** [1] - 2452:5
**Home** [1] - 2447:4
**home** [5] - 2438:22, 2439:1, 2448:19,

2449:23, 2452:19
**homicides** [1] - 2450:3
**honest** [2] - 2433:23, 2434:2
**Honor** [9] - 2436:13, 2438:8, 2510:25, 2512:10, 2513:5, 2519:9, 2520:22, 2523:21, 2523:25
**HONORABLE** [1] - 2431:9
**hope** [2] - 2447:21, 2511:20
**Hopefully** [1] - 2521:18
**hopefully** [2] - 2463:5, 2525:24
**hoping** [2] - 2447:2, 2447:23
**horrible** [2] - 2449:20, 2461:11
**hot** [1] - 2511:19
**hour** [1] - 2464:24
**Housing** [1] - 2443:15
**How-about** [1] - 2506:25
**human** [4] - 2439:14, 2449:13, 2480:25, 2488:10
**hypocrisy** [4] - 2438:15, 2438:17, 2457:3, 2461:6
**Hypocrisy** [1] - 2438:16
**hypocritical** [1] - 2438:23

## I

**i.e** [1] - 2491:7
**ice** [1] - 2458:21
**idea** [2] - 2444:22, 2524:9
**identify** [1] - 2491:13
**II** [11] - 2479:7, 2503:19, 2503:20, 2503:21, 2504:12, 2505:2, 2505:5, 2505:10, 2506:6, 2509:4, 2513:25
**III** [5] - 2482:6, 2505:6, 2505:7, 2505:8, 2515:10
**illegal** [5] - 2450:20, 2460:12, 2485:2, 2507:20, 2516:14
**imagine** [1] - 2521:3
**Imagine** [2] - 2438:17, 2438:19
**immediate** [1] - 2453:21
**impact** [4] - 2449:18, 2449:19, 2450:15, 2480:25
**impartial** [1] - 2467:19
**implicated** [1] - 2448:14
**importance** [3] - 2466:4, 2498:13, 2499:12
**important** [6] - 2467:22, 2488:16, 2492:8, 2498:16, 2511:2, 2522:12
**importantly** [1] - 2461:4
**impose** [11] - 2441:3, 2461:18, 2466:7, 2473:20, 2474:2, 2479:22, 2487:15, 2488:9, 2494:3, 2494:4, 2496:19
**imposed** [3] - 2495:10, 2495:13, 2497:16
**imposition** [12] - 2466:18, 2472:11, 2484:24, 2485:9, 2487:4, 2487:24, 2490:18, 2494:21, 2507:16, 2508:4, 2516:9, 2516:25
**impressed** [1] - 2521:23
**impresses** [1] - 2522:5
**imprisonment** [17] - 2445:4, 2445:8, 2446:21, 2453:3, 2456:6, 2473:20, 2479:22, 2484:3, 2487:6, 2496:5, 2497:17, 2506:13, 2509:16, 2509:25, 2518:15, 2519:1
**improve** [1] - 2523:3
**inadvertent** [1] - 2510:17
**incarcerated** [5] - 2433:5, 2451:24, 2481:3, 2505:21, 2515:22
**incident** [1] - 2443:6
**inclined** [2] - 2434:3, 2434:17
**include** [1] - 2500:3
**including** [3] - 2440:16, 2471:12, 2481:7
**incorrect** [1] - 2511:3
**independent** [1] - 2470:2
**independently** [2] - 2491:15, 2493:13
**indicate** [8] - 2479:8, 2482:7, 2491:23, 2496:11, 2496:13, 2496:20, 2507:8, 2510:12
**indicating** [1] - 2442:5
**indicating)** [1] - 2500:16
**individual** [17] - 2439:3, 2439:21, 2440:7, 2480:25, 2486:13, 2486:14, 2488:7, 2490:7, 2494:15, 2495:11, 2498:20, 2498:25, 2499:2, 2499:5, 2501:6, 2506:10, 2507:13
**individualized** [1] - 2466:23
**individually** [7] - 2490:17, 2491:18, 2491:25, 2493:9, 2495:14, 2498:23, 2510:5
**individuals** [8] - 2438:25, 2486:9, 2486:11, 2486:20, 2486:24, 2491:9, 2494:6, 2524:12
**inference** [1] - 2470:20
**influence** [1] - 2493:20
**inform** [1] - 2487:10
**information** [3] - 2468:22, 2469:7, 2469:9
**injury** [3] - 2480:21, 2505:14, 2515:13
**Innelli** [3] - 2511:18, 2513:10, 2523:1
**innocent** [1] - 2479:6
**inquire** [2] - 2522:24, 2523:12
**insists** [1] - 2457:13
**insofar** [1] - 2481:17
**instead** [3] - 2471:6, 2494:23, 2495:6
**instruct** [6] - 2457:1, 2465:11, 2473:24, 2475:10, 2486:3, 2486:5
**instructed** [1] - 2493:23
**instruction** [1] - 2481:2
**instructions** [16] - 2434:18, 2462:8, 2463:4, 2463:9, 2464:18, 2465:19, 2465:20, 2465:21, 2465:22, 2465:25, 2471:16, 2471:24, 2472:5, 2499:19, 2509:20, 2518:21
**instructive** [1] - 2522:24
**instruments** [1] - 2477:11
**intelligence** [1] - 2469:14
**intended** [1] - 2487:25
**intending** [3] - 2472:18, 2503:7, 2513:16
**intensity** [1] - 2521:14
**intent** [5] - 2449:3, 2472:15, 2472:25, 2473:2, 2475:9
**intentionally** [4] - 2472:17, 2472:24, 2503:6, 2513:15
**interesting** [1] - 2432:7
**introduce** [1] - 2522:22
**investigation** [1] - 2524:18
**invite** [2] - 2433:19, 2437:19
**involved** [1] - 2498:25
**involves** [1] - 2471:18
**ion** [1] - 2503:6
**Irvin** [1] - 2452:11
**issue** [10] - 2432:14, 2434:24, 2435:24, 2435:25, 2471:23, 2486:19, 2523:20, 2524:11, 2526:6, 2526:18
**issues** [2] - 2500:22, 2501:11
**IV** [8] - 2491:12, 2506:3, 2506:4, 2507:7, 2508:12, 2509:18, 2516:4, 2518:19

## J

**jail** [1] - 2458:3
**January** [2] - 2450:8, 2459:10
**JASON** [1] - 2431:15
**JEAN** [1] - 2431:18
**JEFFREY** [1] - 2431:15
**Joanne** [2] - 2452:3, 2452:16
**job** [2] - 2438:13, 2523:9
**jobs** [1] - 2461:3
**Johnson** [3] - 2450:11, 2450:21, 2459:13
**JONES** [6] - 2431:15, 2456:12, 2456:16, 2462:21, 2510:25, 2511:12
**Jones** [10] - 2438:19, 2441:18, 2443:8, 2443:12, 2444:21, 2450:8, 2455:25, 2456:11, 2462:2, 2510:24
**Jordan** [7] - 2446:2, 2446:15, 2446:16, 2449:15, 2457:5, 2484:20, 2507:5
**judge** [8] - 2439:21, 2457:1, 2458:4, 2458:5, 2461:14, 2487:11, 2487:13, 2487:14
**JUDGE** [1] - 2431:9
**judges** [1] - 2487:17
**judgment** [7] - 2435:10, 2438:20, 2439:3, 2467:2, 2470:13, 2477:21, 2494:15
**judgments** [1] - 2435:23
**JUROR** [45] - 2513:21, 2513:24, 2514:6, 2514:9, 2514:15, 2514:18, 2514:24, 2515:2, 2515:9, 2515:16, 2515:19, 2516:3, 2516:11, 2516:17, 2516:22, 2517:2, 2517:6, 2517:10, 2517:14, 2517:17, 2517:20, 2517:22, 2517:25, 2518:2, 2518:10, 2518:17, 2519:3, 2519:7, 2519:9, 2519:12, 2519:14, 2519:17, 2519:20, 2519:24, 2520:1, 2520:3, 2520:5, 2520:7, 2520:9, 2520:11, 2520:13, 2520:15, 2520:17, 2520:19, 2520:21
**juror** [12] - 2490:3, 2490:7, 2490:20, 2490:22, 2491:24, 2493:9, 2495:14, 2498:17, 2498:22, 2501:3, 2507:11, 2510:18
**Juror** [12] - 2519:23, 2519:25, 2520:2, 2520:4, 2520:6, 2520:8, 2520:10, 2520:12, 2520:14, 2520:16, 2520:18,

2520:20
**jurors** [46] - 2432:4, 2440:8, 2463:7, 2463:25, 2464:3, 2466:2, 2491:6, 2491:8, 2491:9, 2491:18, 2492:2, 2494:1, 2494:18, 2495:18, 2500:25, 2501:2, 2501:11, 2507:9, 2507:17, 2507:22, 2508:1, 2508:5, 2508:8, 2508:11, 2508:15, 2508:17, 2508:20, 2508:23, 2508:24, 2508:25, 2511:8, 2511:16, 2512:20, 2516:10, 2516:16, 2516:20, 2517:1, 2517:5, 2517:9, 2517:13, 2517:16, 2517:24, 2521:1, 2525:16, 2525:24, 2527:1
**jurors'** [1] - 2501:6
**jury** [62] - 2431:9, 2432:22, 2432:24, 2433:3, 2433:12, 2433:19, 2433:23, 2434:3, 2434:11, 2435:4, 2435:15, 2436:2, 2436:6, 2436:7, 2436:12, 2436:21, 2437:9, 2437:10, 2437:11, 2437:24, 2438:1, 2451:23, 2457:4, 2457:23, 2462:9, 2462:15, 2463:4, 2463:9, 2463:10, 2463:15, 2466:7, 2482:23, 2482:24, 2494:3, 2494:4, 2496:17, 2498:18, 2499:11, 2499:22, 2500:5, 2509:6, 2509:12, 2509:17, 2511:4, 2511:11, 2512:9, 2513:4, 2514:10, 2514:19, 2515:11, 2515:20, 2518:4, 2518:11, 2518:14, 2518:18, 2519:5, 2519:7, 2519:21, 2521:19, 2522:9, 2522:16, 2523:14
**Jury** [6] - 2437:25, 2463:2, 2464:6, 2513:8, 2520:22, 2523:16
**jury's** [2] - 2510:5, 2510:8
**Justice** [1] - 2461:23
**justice** [9] - 2445:3, 2445:21, 2460:25, 2486:15, 2486:17, 2495:11, 2521:18, 2526:18
**justification** [3] - 2439:13, 2440:18, 2440:21
**justified** [7] - 2446:1, 2446:2, 2446:3, 2446:4, 2446:6, 2446:7, 2471:8
**justify** [12] - 2439:13, 2450:25, 2452:22, 2471:20, 2483:18, 2485:9, 2487:24, 2494:21, 2494:25, 2495:8, 2508:4, 2516:25

## K

**Kaczynski** [1] - 2442:1
**keep** [2] - 2442:21, 2452:8
**Kenneth** [27] - 2439:6, 2439:7, 2439:20, 2440:12, 2441:19, 2442:3, 2442:7, 2442:25, 2443:3, 2443:7, 2443:9, 2444:9, 2445:11, 2446:7, 2446:9, 2446:13, 2450:16, 2454:4, 2454:15, 2455:19, 2456:1, 2458:24, 2461:2, 2461:7, 2461:10, 2503:5, 2513:14
**KENNETH** [1] - 2431:5
**Kenny** [2] - 2451:10, 2451:15
**kept** [1] - 2501:24
**Kevin** [3] - 2432:2, 2445:6, 2445:20
**kids** [2] - 2443:24, 2458:21
**kill** [15] - 2441:24, 2447:5, 2447:7, 2447:9, 2450:6, 2 2458:15, 2459:9, 2459:19, 2460:3, 2477:7, 2477:9, 2485:6, 2507:25, 2516:20
**killed** [3] - 2447:7, 2455:13, 2459:13
**killers** [1] - 2457:17
**killing** [5] - 2449:13, 2450:9, 2450:10, 2450:11, 2452:25
**kills** [1] - 2460:2
**Kindness** [1] - 2485:14
**kindness** [4] - 2452:15, 2458:18, 2508:10, 2517:8
**Kitching** [1] - 2452:17
**knowing** [3] - 2434:16, 2449:16, 2465:7
**knowingly** [6] - 2474:22, 2478:1, 2479:3, 2479:4, 2504:22, 2515:5
**knowledge** [1] - 2469:24
**knows** [3] - 2458:6, 2458:7, 2458:9

## L

**lack** [4] - 2449:23, 2481:9, 2481:17, 2496:22
**Ladies** [2] - 2456:17, 2460:21
**ladies** [2] - 2438:9, 2460:8
**laid** [1] - 2492:3
**language** [3] - 2437:8, 2462:17, 2463:12
**last** [1] - 2510:12
**late** [1] - 2455:12
**Latrisha** [2] - 2452:18, 2453:15
**law** [52] - 2432:14, 2432:16, 2432:19, 2432:22, 2433:10, 2435:15, 2435:17, 2435:22, 2435:25, 2436:1, 2438:4, 2439:23, 2441:14, 2442:9, 2457:1, 2461:20, 2462:8, 2465:11, 2465:22, 2466:1, 2466:2, 2466:6, 2466:24, 2467:2, 2468:3, 2468:11, 2470:18, 2471:3, 2472:25, 2473:1, 2473:3, 2474:25, 2480:14, 2482:22, 2488:15, 2488:16, 2489:16, 2490:9, 2490:11, 2490:14, 2491:14, 2493:1, 2493:22, 2493:25, 2494:4, 2494:17, 2498:4, 2498:15, 2499:8, 2500:24, 2521:16
**lawyers** [2] - 2510:15, 2510:20
**lead** [2] - 2496:24, 2497:1
**leads** [1] - 2460:24
**learned** [1] - 2486:21
**least** [13] - 2452:12, 2455:6, 2467:11, 2479:19, 2479:24, 2480:7, 2483:15, 2492:14, 2493:5, 2496:2, 2505:10, 2506:6, 2509:4
**Leave** [1] - 2437:23
**leave** [1] - 2452:5
**leaves** [3] - 2467:3, 2493:25, 2523:16
**Lee** [1] - 2444:4
**left** [2] - 2466:9, 2526:2
**legally** [1] - 2432:14
**lend** [1] - 2454:5
**Les** [2] - 2484:13, 2506:23
**less** [8] - 2446:18, 2447:4, 2447:18, 2447:21, 2447:23, 2464:12, 2487:15, 2487:18
**Less** [1] - 2447:4
**lessen** [1] - 2459:25
**lesser** [2] - 2468:14, 2489:3
**lethal** [3] - 2472:18, 2503:8, 2513:17
**letters** [1] - 2526:10
**level** [3] - 2451:3, 2488:3, 2488:12
**levels** [1] - 2491:10
**lie** [1] - 2458:2
**Life** [1] - 2446:20
**life** [67] - 2433:5, 2439:4, 2439:14, 2439:22, 2439:25, 2440:3, 2440:4, 2440:9, 2440:10, 2440:11, 2440:15, 2441:8, 2441:13, 2441:14, 2446:20, 2446:21, 2447:4, 2448:19, 2451:23, 2452:5, 2453:2, 2453:4, 2453:12, 2453:19, 2454:12, 2454:13, 2454:15, 2454:16, 2454:18, 2456:2, 2456:5, 2458:3, 2458:11, 2460:23, 2461:2, 2461:3, 2461:8, 2472:18, 2473:20, 2479:22, 2481:3, 2481:13, 2483:20, 2485:16, 2485:17, 2487:6, 2487:15, 2496:5, 2497:5, 2497:17, 2498:1, 2503:7, 2505:21, 2508:14, 2508:16, 2509:15, 2509:25, 2513:16, 2515:22, 2517:12, 2517:15, 2518:15, 2519:1, 2523:23, 2526:6
**lifetime** [5] - 2433:7, 2445:5, 2445:8, 2484:3, 2506:13
**light** [1] - 2470:10
**likely** [3] - 2468:16, 2489:7, 2489:11
**limit** [2] - 2481:11, 2490:11
**limited** [2] - 2481:7, 2491:21
**limits** [1] - 2490:9
**list** [3] - 2457:4, 2464:2, 2512:10
**listed** [2] - 2472:7, 2480:15
**listen** [2] - 2438:2, 2440:6
**listened** [1] - 2456:21
**listening** [3] - 2438:14, 2440:7, 2522:7
**live** [2] - 2440:20, 2461:3
**lives** [2] - 2439:8, 2449:25
**ll** [1] - 2514:16
**loaded** [2] - 2450:23, 2455:9
**local** [1] - 2458:21
**logically** [1] - 2463:18
**look** [7] - 2443:15, 2443:20, 2444:4, 2448:16, 2460:21, 2495:4, 2501:15
**Look** [2] - 2444:9, 2449:3
**looking** [1] - 2495:5
**loss** [10] - 2449:20, 2451:7, 2453:1, 2454:21, 2480:22, 2485:11, 2505:14, 2508:7, 2515:13
**losses** [1] - 2517:4
**Louisiana** [1] - 2444:3
**love** [3] - 2442:25, 2451:12, 2451:21
**loved** [1] - 2442:24
**loves** [2] - 2452:13, 2454:9
**lower** [1] - 2446:17
**lunch** [4] - 2438:6, 2511:14, 2511:19, 2512:21

## M

**madam** [1] - 2519:13

**malpractice** [1] - 2521:6
**man** [2] - 2457:12, 2460:25
**mandatory** [2] - 2449:10, 2523:23
**manner** [1] - 2469:17
**Manny** [2] - 2484:5, 2506:15
**mark** [1] - 2473:14
**marked** [3] - 2464:1, 2512:17, 2513:4
**marking** [1] - 2497:2
**marks** [1] - 2457:16
**marshal** [2] - 2511:21, 2512:5
**Marshal** [1] - 2512:6
**marshals** [1] - 2502:2
**Maryland** [1] - 2525:3
**matter** [14] - 2432:16, 2432:19, 2432:22, 2433:9, 2435:15, 2436:1, 2468:11, 2491:14, 2493:1, 2497:14, 2498:19, 2527:3
**matters** [4] - 2432:22, 2467:22, 2469:24, 2522:23
**mature** [1] - 2501:9
**MAUSKOPF** [1] - 2431:12
**McGriff** [96] - 2431:5, 2432:2, 2438:11, 2438:16, 2438:18, 2438:24, 2439:6, 2439:8, 2439:20, 2440:12, 2441:7, 2441:20, 2442:3, 2442:7, 2442:25, 2443:4, 2443:7, 2443:9, 2443:13, 2444:9, 2444:15, 2445:6, 2445:11, 2445:14, 2445:20, 2445:22, 2446:7, 2446:9, 2446:13, 2448:18, 2450:16, 2451:6, 2451:9, 2451:16, 2451:18, 2452:11, 2452:14, 2453:4, 2453:7, 2453:11, 2454:4, 2455:20, 2457:7, 2457:13, 2457:16, 2458:11, 2458:17, 2458:21, 2458:24, 2459:8, 2459:18, 2460:6, 2461:2, 2461:7, 2461:10, 2461:20, 2484:2, 2484:24, 2485:10, 2485:12, 2485:15, 2503:6, 2503:24, 2504:6, 2504:14, 2504:22, 2505:13, 2505:22, 2506:12, 2507:16, 2508:6, 2508:9, 2508:13, 2509:9, 2509:10, 2509:14, 2509:15, 2509:23, 2509:24, 2513:15, 2514:2, 2514:12, 2514:21, 2515:5, 2515:13, 2515:23, 2516:10, 2517:3, 2517:7, 2517:12, 2518:7, 2518:8, 2518:13, 2518:14, 2518:24, 2518:25
**McGriff's** [16] - 2440:15, 2444:21, 2450:5, 2450:25, 2453:19, 2454:15, 2456:1, 2485:5, 2485:7, 2485:17, 2507:24, 2508:2, 2508:16, 2516:19, 2516:24, 2517:15
**McMillan** [2] - 2452:20, 2453:13
**mean** [2] - 2440:4, 2467:24
**meaning** [3] - 2442:8, 2469:9, 2486:3
**means** [10] - 2440:4, 2467:8, 2475:17, 2475:19, 2475:21, 2489:8, 2490:7, 2494:9, 2499:21, 2500:16
**meant** [1] - 2454:22
**mechanical** [2] - 2431:25, 2494:9
**member** [1] - 2499:22
**Members** [1] - 2438:1
**members** [1] - 2496:17
**memoranda** [1] - 2526:10
**memory** [1] - 246
**men** [4] - 2438:21, 2457:5, 2457:7, 2457:16
**mentally** [1] - 2475:17
**mention** [1] - 2450:19
**mentioned** [5] - 2434:9, 2439:9, 2458:17, 2510:13, 2522:16
**mercy** [4] - 2455:23, 2455:25, 2461:9
**merely** [2] - 2470:11, 2501:1
**method** [2] - 2455:5, 2475:17
**Metropolitan** [1] - 2524:7
**Might** [1] - 2524:9
**might** [8] - 2450:13, 2455:13, 2460:3, 2466:17, 2491:6, 2491:9, 2523:25
**mind** [3] - 2440:1, 2489:10, 2495:16
**minimum** [1] - 2449:11
**minute** [3] - 2443:5, 2447:24, 2448:21
**minutes** [6] - 2456:11, 2462:5, 2462:15, 2462:18, 2499:11, 2511:8
**mistake** [1] - 2479:5
**mistakes** [1] - 2510:17
**mitigates** [1] - 2490:18
**MITIGATING** [3] - 2483:11, 2507:7, 2508:12
**mitigating** [89] - 2432:13, 2432:15, 2432:17, 2432:18, 2432:20, 2433:1, 2433:6, 2433:20, 2433:25, 2435:25, 2436:2, 2441:3, 2441:6, 2444:10, 2445:8, 2446:13, 2450:18, 2450:24, 2453:17, 2459:5, 2460:11, 2461:17, 2462:13, 2463:13, 2463:17, 2463:19, 2466:13, 2466:19, 2466:22, 2467:15, 2468:7, 2468:8, 2468:10, 2468:18, 2469:2, 2471:13, 2472:3, 2472:4, 2483:17, 2483:18, 2486:2, 2486:5, 2486:10, 2486:22, 2487:1, 2487:21, 2488:14, 2488:15, 2488:18, 2488:20, 2488:24, 2489:17, 2489:19, 2489:21, 2489:23, 2490:2, 2490:4, 2490:12, 2490:13, 2490:19, 2490:25, 2491:2, 2491:3, 2491:6, 2491:10, 2491:13, 2491:19, 2491:22, 2491:24, 2492:6, 2492:20, 2493:1, 2493:16, 2494:7, 2494:11, 2494:19, 2494:25, 2495:8, 2495:15, 2495:21, 2507:8, 2507:11, 2508:19, 2508:21, 2509:8, 2516:4, 2517:18, 2518:6
**Mitigating** [5] - 2450:4, 2450:15, 2452:14, 2488:25, 2506:8
**mitigation** [1] - 2495:12
**mitigator** [2] - 2434:25, 2435:9
**mixed** [1] - 2432:25
**moments** [3] - 2460:23, 2460:24
**Monday** [1] - 2465:6
**money** [6] - 2447:6, 2447:8, 2447:10, 2447:13, 2477:11, 2526:5
**monies** [1] - 2524:22
**months** [2] - 2521:9, 2524:23
**morning** [1] - 2438:9
**Morris** [3] - 2453:6, 2453:8
**Mosley** [13] - 2438:18, 2445:12, 2445:16, 2446:4, 2446:19, 2449:1, 2449:8, 2450:13, 2450:14, 2457:4, 2484:5, 2506:15
**Mosley's** [2] - 2450:9
**most** [9] - 2441:16, 2460:8, 2461:4, 2467:22, 2486:1, 2500:24, 2511:19, 2520:23, 2521:2
**motions** [1] - 2525:13
**motivated** [4] - 2450:4, 2485:4, 2507:23, 2516:19
**motives** [1] - 2469:16
**move** [9] - 2453:4, 2453:12, 2458:11, 2485:16, 2508:14, 2517:12, 2524:20, 2525:1, 2525:6
**moved** [2] - 2434:24, 2436:6
**movie** [1] - 2458:13
**moving** [1] - 2462:6
**MR** [20] - 2433:16, 2434:13, 2436:4, 2436:12, 2437:5, 2456:12, 2456:16, 2462:21, 2463:24, 2510:23, 2510:25, 2511:9, 2511:12, 2523:21, 2524:6, 2524:15, 2525:2, 2525:5, 2525:10, 2525:18
**MS** [13] - 2434:20, 2434:23, 2435:9, 2436:23, 2437:20, 2438:8, 2444:15, 2447:1, 2464:4, 2512:16, 2524:11, 2524:17, 2526:24
**multiple** [1] - 2481:8
**Mungo** [11] - 2438:18, 2438:20, 2445:23, 2446:2, 2447:5, 2449:12, 2449:16, 2450:2, 2484:8, 2486:8, 2506:18
**murder** [20] - 2439:12, 2441:24, 2446:18, 2448:1, 2448:2, 2448:11, 2450:21, 2460:15, 2465:13, 2465:14, 2466:25, 2484:14, 2484:19, 2484:21, 2506:24, 2507:4, 2507:6, 2522:1, 2522:3
**Murder** [2] - 2449:1, 2460:17
**murder-for-hire** [3] - 2465:13, 2465:14, 2466:25
**murdered** [6] - 2447:23, 2448:3, 2448:4, 2449:4, 2460:4, 2460:5
**murderers** [1] - 2441:24
**murders** [24] - 2445:4, 2446:19, 2447:14, 2450:4, 2458:11, 2460:1, 2481:8, 2484:6, 2484:9, 2484:12, 2484:16, 2485:4, 2485:15, 2486:12, 2486:20, 2487:8, 2506:16, 2506:19, 2506:22, 2507:1, 2507:23, 2508:13, 2516:18, 2517:11
**must** [45] - 2440:11, 2455:17, 2463:13, 2465:18, 2465:24, 2467:8, 2467:20, 2468:1, 2470:16, 2471:10, 2471:17, 2472:12, 2473:2, 2474:6, 2475:7, 2475:8, 2476:2, 2479:2, 2480:8, 2480:10, 2481:11, 2481:25, 2482:4, 2482:24, 2483:15, 2489:14, 2489:21, 2489:24, 2490:4, 2490:7, 2492:20, 2492:21, 2493:9, 2493:13, 2493:15, 2493:19, 2494:1, 2495:18, 2498:7, 2498:16, 2500:13, 2501:1, 2506:9, 2507:12, 2526:15
**mutual** [1] - 2453:7
**myth** [1] - 2442:21

## N

**name** [3] - 2438:21, 2501:23, 2519:18
**namely** [1] - 2484:1
**names** [2] - 2442:1, 2501:22
**narrowed** [1] - 2466:11
**national** [4] - 2498:8, 2498:12, 2498:24, 2499:4
**naturally** [1] - 2465:1
**nature** [2] - 2451:2, 2487:11
**neatnick** [1] - 2511:9
**necessary** [7] - 2446:1, 2446:2, 2446:3, 2446:4, 2475:11, 2499:17, 2525:8
**need** [15] - 2436:11, 2452:9, 2454:7, 2454:19, 2455:1, 2456:10, 2456:13, 2462:11, 2465:4, 2465:7, 2473:1, 2489:1, 2491:16, 2502:3, 2523:24
**needed** [1] - 2508:22
**needs** [2] - 2524:12, 2525:13
**negatively** [1] - 2526:20
**negotiable** [1] - 2477:11
**neighborhood** [1] - 2459:1
**neighbors** [1] - 2442:24
**never** [8] - 2439:14, 2440:5, 2445:24, 2454:6, 2457:10, 2461:7, 2466:6, 2467:25
**Nevertheless** [1] - 2443:12
**nevertheless** [1] - 2481:4
**new** [1] - 2512:14
**NEW** [1] - 2431:1
**New** [4] - 2431:5, 2431:14, 2431:22, 2517:22
**next** [6] - 2444:10, 2446:24, 2462:7, 2485:18, 2502:4, 2512:22
**nicely** [1] - 2462:6
**Nicole** [4] - 2445:11, 2446:6, 2484:18, 2507:3
**nine** [2] - 2510:3, 2516:6
**nobody** [1] - 2521:4
**Nobody** [2] - 2446:7
**NON** [2] - 2480:3, 2505:7
**non** [23] - 2467:12, 2467:14, 2471:12, 2472:2, 2475:3, 2480:9, 2480:11, 2480:15, 2480:19, 2481:11, 2482:3, 2482:8, 2482:11, 2482:13, 2482:15, 2482:20, 2482:23, 2483:3, 2483:8, 2492:17, 2493:15, 2515:10
**non-existence** [3] - 2471:12, 2475:3, 2483:8
**non-statutory** [20] - 2467:12, 2467:14, 2472:2, 2480:9, 2480:11, 2480:15, 2480:19, 2481:11, 2482:3, 2482:8, 2482:11, 2482:13, 2482:15, 2482:20, 2482:23, 2483:3, 2483:8, 2492:17, 2493:15, 2515:10
**NON-STATUTORY** [2] - 2480:3, 2505:7
**None** [5] - 2442:19, 2442:20, 2455:15
**none** [3] - 2443:10, 2461:9, 2469:13
**NONE** [1] - 2508:21
**nonetheless** [2] - 2509:21, 2518:22
**nonexistence** [1] - 2492:6
**normally** [1] - 25
**NOT** [1] - 2471:1
**note** [5] - 2463:10, 2499:18, 2500:3, 2513:4, 2513:9
**noted** [3] - 2500:1, 2512:7, 2513:2
**noted)** [1] - 2432:3
**nothing** [3] - 2444:25, 2450:14, 2458:4
**Nothing** [2] - 2443:11, 2510:25
**notice** [1] - 2449:3
**notices** [1] - 2445:13
**November** [4] - 2443:3, 2456:20, 2521:11
**Number** [22] - 2507:17, 2507:22, 2508:1, 2508:5, 2508:8, 2508:11, 2508:15, 2508:17, 2508:23, 2508:24, 2508:25, 2516:10, 2516:16, 2516:20, 2517:1, 2517:4, 2517:9, 2517:11, 2517:13, 2517:15, 2517:16, 2517:24
**number** [61] - 2432:10, 2433:1, 2433:6, 2433:15, 2462:12, 2468:20, 2486:11, 2487:1, 2487:21, 2491:6, 2491:18, 2492:2, 2494:10, 2494:12, 2498:18, 2498:22, 2503:2, 2507:9, 2507:22, 2508:1, 2508:5, 2508:8, 2508:11, 2508:15, 2508:17, 2510:6, 2510:18, 2513:5, 2516:10, 2516:16, 2516:21, 2517:1, 2517:5, 2517:9, 2517:13, 2517:16, 2519:23, 2519:24, 2519:25, 2520:1, 2520:2, 2520:3, 2520:4, 2520:5, 2520:6, 2520:7, 2520:8, 2520:9, 2520:10, 2520:11, 2520:12, 2520:13, 2520:14, 2520:15, 2520:16, 2520:17, 2520:18, 2520:19, 2520:20, 2520:21
**numbers** [6] - 2433:14, 2433:19, 2506:8, 2507:8, 2512:12, 2519:11
**numerical** [1] - 2500:5

## O

**o'clock** [3] - 2431:7, 2464:14, 2513:5
**O'Driscoll** [1] - 2444:16
**oath** [2] - 2461:14, 2501:11
**oaths** [2] - 2461:20, 2466:2
**object** [1] - 2476:3
**objecting** [1] - 2434:20
**objections** [1] - 2510:23
**obligation** [1] - 2446:16
**observe** [2] - 2521:12, 2521:13
**obvious** [1] - 2499:12
**obviously** [2] - 2453:7, 2511:18
**occurred** [1] - 2462:9
**odd** [1] - 2461:3
**OF** [6] - 2431:1, 2431:3, 2431:8, 2467:4, 2509:1, 2524:11
**offense** [22] - 2442:16, 2449:13, 2472:20, 2474:12, 2474:16, 2474:22, 2474:24, 2477:4, 2477:25, 2478:2, 2483:21, 2490:15, 2503:9, 2503:25, 2504:7, 2504:22, 2504:24, 2513:18, 2514:3, 2514:12, 2515:5, 2515:7
**offenses** [2] - 2449:7, 2475:16
**offer** [1] - 2465:8
**offered** [9] - 2439:16, 2446:11, 2483:18, 2484:22, 2487:2, 2491:22, 2492:1, 2507:14, 2516:7
**offers** [1] - 2483:25
**office** [1] - 2526:21
**officer** [1] - 2523:25
**Official** [1] - 2431:21
**official** [1] - 2519:10
**old** [2] - 2448:4, 2525:11
**omission** [1] - 2511:3
**Once** [2] - 2522:5, 2522:9
**once** [4] - 2448:8, 2494:5, 2500:10, 2521:19
**one** [69] - 2433:1, 2433:6, 2433:14, 2433:15, 2433:19, 2434:16, 2435:7, 2439:5, 2439:11, 2439:12, 2440:10, 2440:13, 2443:5, 2445:15, 2447:24, 2448:21, 2449:5, 2453:8, 2454:2, 2455:8, 2455:14, 2456:5, 2460:3, 2461:8, 2461:14, 2461:18, 2461:23, 2464:14, 2465:16, 2465:18, 2467:3, 2467:11, 2468:8, 2471:15, 2471:20, 2472:19, 2474:23, 2475:8, 2478:1, 2479:19, 2479:24, 2480:7, 2483:15, 2488:4, 2490:3, 2490:6, 2491:15, 2492:14, 2493:5, 2494:19, 2495:9, 2496:2, 2496:4, 2500:23, 2501:17, 2503:9, 2504:23, 2506:6, 2508:19, 2509:4, 2510:18, 2511:7, 2513:12, 2513:18, 2515:6, 2516:5, 2519:7, 2519:18
**ONE** [1] - 2472:10
**One** [5] - 2436:12, 2440:4, 2469:1, 2500:20, 2501:17
**ones** [2] - 2442:24, 2510:19
**open** [6] - 2438:15, 2491:1, 2495:3, 2499:24, 2511:17, 2523:8
**opening** [3] - 2450:18, 2459:10, 2470:23
**opinion** [3] - 2465:25, 2469:24, 2520:24
**opinions** [2] - 2470:6, 2500:23
**opportunity** [5] - 2469:15, 2510:15, 2523:2, 2523:4, 2525:16
**opposed** [1] - 2489:9
**opposes** [1] - 2470:19
**option** [2] - 2489:25, 2517:23
**OR** [1] - 2497:23
**oral** [1] - 2464:25
**orally** [1] - 2499:24
**order** [8] - 2440:12, 2442:21, 2444:22, 2455:16, 2494:8, 2495:17, 2523:5, 2523:10
**orders** [1] - 2444:25
**ordinarily** [1] - 2470:7
**ordinary** [1] - 2486:3
**organization** [1] - 2442:9
**origin** [4] - 2498:8, 2498:12, 2498:24, 2499:4
**original** [1] - 2501:17
**otherwise** [2] - 2432:17, 2487:18
**ought** [1] - 2526:22

**outcome** [1] - 2501:6
**outlined** [1] - 2499:7
**outside** [2] - 2437:18, 2444:23
**outweigh** [8] - 2461:17, 2463:17, 2467:15, 2492:25, 2495:12, 2495:21, 2509:8, 2518:6
**outweighs** [3] - 2494:19, 2494:24, 2495:7
**overwhelmingly** [1] - 2453:18
**own** [7] - 2432:8, 2460:7, 2467:23, 2470:13, 2480:17, 2490:21, 2523:12

## P

**p.m** [2] - 2512:7, 2513:2
**page** [8] - 2433:17, 2446:24, 2462:16, 2485:18, 2502:4, 2508:22, 2510:3, 2512:22
**pages** [1] - 2464:12
**paid** [6] - 2446:5, 2448:6, 2449:6, 2457:12, 2477:7, 2477:8
**pain** [1] - 2453:1
**parameters** [1] - 2443:14
**parks** [1] - 2459:1
**parole** [4] - 2433:5, 2453:3, 2481:3, 2497:17
**part** [10] - 2443:9, 2447:2, 2450:5, 2451:17, 2469:13, 2485:5, 2493:17, 2507:24, 2510:16, 2516:19
**participants** [3] - 2472:20, 2503:9, 2513:18
**participate** [1] - 2522:18
**participated** [9] - 2442:8, 2449:21, 2460:12, 2472:17, 2485:2, 2503:6, 2507:20, 2513:15, 2516:14
**Participation** [1] - 2450:19
**particular** [22] - 2468:4, 2473:18, 2474:6, 2475:6, 2476:3, 2479:20, 2479:25, 2480:5, 2482:21, 2483:3, 2483:21, 2486:24, 2491:6, 2491:18, 2493:3, 2495:15, 2495:18, 2496:10, 2496:13, 2496:19, 2500:10, 2524:2
**parties** [2] - 2477:18, 2501:8
**parts** [2] - 2462:4, 2524:21
**Pass** [1] - 2510:17
**pass** [3] - 2448:10, 2501:13, 2501:17
**passing** [1] - 2459:3
**passion** [1] - 2493:20
**patience** [1] - 2464:10
**patient** [2] - 2456:22, 2512:2
**pattern** [3] - 2449:22, 2481:6, 2481:16
**pay** [2] - 2477:7, 2477:9
**paying** [1] - 2438:13
**payment** [9] - 2449:1, 2474:16, 2477:4, 2477:5, 2504:7, 2514:12, 2514:13
**Payment** [1] - 2477:1
**pecuniary** [6] - 2449:4, 2474:17, 2477:5, 2477:11, 2504:8, 2514:13
**penalty** [40] - 2432:11, 2435:13, 2438:17, 2438:23, 2438:24, 2439:1, 2445:12, 2445:18, 2445:24, 2445:25, 2446:23, 2448:20, 2456:21, 2457:13, 2461:10, 2461:19 18, 2466:20, 2466:24, 2467:7, 2469:7, 2470:19, 2471:20, 2472:12, 2482:21, 2486:12, 2486:16, 2486:18, 2486:24, 2488:14, 2490:18, 2494:4, 2495:13, 2496:20, 2497:19, 2497:20, 2497:22, 2497:25, 2498:6, 2499:8
**penitentiary** [4] - 2443:22, 2443:25, 2444:3, 2449:25
**Penitentiary** [1] - 2444:4
**Pennsylvania** [1] - 2443:14
**people** [27] - 2437:13, 2437:14, 2437:16, 2437:18, 2437:21, 2438:21, 2441:22, 2441:23, 2441:24, 2442:9, 2442:22, 2442:25, 2447:24, 2448:18, 2449:21, 2450:14, 2452:9, 2454:7, 2455:8, 2457:3, 2457:8, 2457:9, 2458:2, 2458:15, 2460:16, 2521:1
**People** [1] - 2444:5
**percent** [1] - 2488:6
**perfectly** [1] - 2444:19
**performing** [1] - 2472:8
**perhaps** [4] - 2432:10, 2433:3, 2442:4, 2462:5
**permit** [1] - 2470:18
**permits** [2] - 2480:14, 2490:14
**perpetrator** [2] - 2448:13, 2448:14
**person** [25] - 2435:12, 2445:18, 2448:13, 2448:23, 2454:9, 2455:7, 2467:21, 2472:18, 2472:19, 2472:22, 2472:24, 2473:1, 2474:14, 2476:2, 2476:4, 2479:4, 2503:7, 2503:8, 2504:1, 2504:23, 2511:19, 2513:16, 2513:17, 2514:4, 2521:16
**person's** [1] - 2460:23
**personal** [4] - 2466:15, 2467:2, 2475:9, 2480:24
**personally** [1] - 2470:19
**personnel** [2] - 2499:21, 2522:25
**persons** [4] - 2474:23, 2478:1, 2515:6, 2521:17
**persuaded** [3] - 2490:3, 2492:23, 2499:15
**persuasiveness** [1] - 2468:21
**phase** [15] - 2464:13, 2465:21, 2465:23, 2465:24, 2467:17, 2469:7, 2469:8, 2470:4, 2470:14, 2477:10, 2477:18, 2479:4, 2487:6, 2500:10, 2521:22
**piece** [1] - 2459:11
**Pierrepont** [1] - 2431:13
**pistol** [1] - 2450:22
**place** [10] - 2440:12, 2444:1, 2451:13, 2458:23, 2498:19, 2510:21, 2511:17, 2524:4, 2524:13
**placed** [1] - 2471:3
**places** [1] - 2462:12
**plan** [1] - 2463:10
**planning** [10] - 2448:23, 2448:24, 2474:13, 2475:16, 2475:21, 2475:22, 2476:1, 2476:3, 2503:25, 2514:3
**Planning** [2] - 2475:13, 2475:17
**play** [1] - 2486:25
**played** [2] - 2444:14, 2486:20
**Plaza** [1] - 2431:21
**plea** [7] - 2446:11, 2457:21, 2457:22, 2484:22, 2487:2, 2507:14, 2516:7
**plead** [1] - 2447:14
**pleasant** [1] - 2443:25
**pled** [5] - 2442:7, 2443:4, 2449:8, 2449:12, 2457:9
**plenty** [2] - 2437:14, 2441:12
**point** [4] - 2436:18, 2444:20, 2445:15, 2474:25
**points** [1] - 2436:4
**POKORNY** [11] - 2431:14, 2434:20, 2434:23, 2435:9, 2436:23, 2437:20, 2464:4, 2512:16, 2524:11, 2524:17, 2526:24
**Pokorny** [1] - 2524:10
**Pokorny's** [1] - 2436:13
**polishing** [1] - 2462:4
**poll** [1] - 2519:21
**polled** [1] - 2520:22
**Pollock** [1] - 2444:3
**popular** [1] - 2511:19
**portion** [1] - 2503:1
**pose** [2] - 2481:24, 2482:2
**poses** [6] - 2481:4, 2481:13, 2481:18, 2481:20, 2505:22, 2515:23
**positive** [6] - 2453:5, 2453:12, 2458:12, 2485:16, 2508:14, 2517:12
**possibilities** [1] - 2498:2
**possibility** [15] - 2473:20, 2479:22, 2481:14, 2484:4, 2487:7, 2487:16, 2496:5, 2505:22, 2506:14, 2509:16, 2509:25, 2510:10, 2515:22, 2518:15, 2519:1
**possible** [7] - 2438:25, 2447:18, 2450:22, 2467:24, 2474:21, 2482:22, 2496:4
**possibly** [1] - 2521:3
**power** [1] - 2444:12
**practice** [1] - 2523:8
**precise** [1] - 2457:25
**predicted** [1] - 2455:25
**prejudice** [1] - 2493:20
**preliminary** [21] - 2467:10, 2471:24, 2471:25, 2472:14, 2472:16, 2473:7, 2473:9, 2473:11, 2473:18, 2473:23, 2473:25, 2474:6, 2475:2, 2480:7, 2482:18, 2483:14, 2492:14, 2493:5, 2493:17, 2496:1, 2513:12
**PRELIMINARY** [2] - 2472:10, 2503:3
**premeditation** [10] - 2448:23, 2448:25, 2474:13, 2475:16, 2475:21, 2475:23, 2476:1, 2476:4, 2503:25, 2514:3
**Premeditation** [2] - 2475:13, 2475:19
**prepared** [2] - 2472:5, 2500:15
**preponderance** [19] - 2433:22, 2468:11, 2468:13, 2468:15, 2468:19, 2488:22, 2488:25, 2489:4, 2489:6, 2489:8, 2489:20, 2490:22, 2491:16, 2491:19, 2491:25, 2492:21, 2493:2, 2507:10, 2508:20

**prescinding** [1] - 2462:13
**presence** [1] - 2524:24
**present** [5] - 2434:21, 2463:2, 2464:6, 2466:13, 2469:8
**presentation** [1] - 2435:6
**presented** [8] - 2440:15, 2440:17, 2440:23, 2444:16, 2444:18, 2468:20, 2469:7, 2469:25
**presentence** [2] - 2523:24, 2525:2
**presenting** [1] - 2526:22
**presents** [1] - 2450:2
**press** [4] - 2523:6, 2523:11, 2525:21, 2527:1
**previously** [8] - 2465:12, 2466:14, 2467:17, 2474:18, 2477:17, 2488:23, 2504:15, 2514:21
**principle** [1] - 2523:8
**prison** [24] - 2441:8, 2441:13, 2441:15, 2441:18, 2441:24, 2443:4, 2443:6, 2443:10, 2443:20, 2443:21, 2444:2, 2444:5, 2444:12, 2444:21, 2444:25, 2445:2, 2445:5, 2446:12, 2454:3, 2456:3, 2481:13, 2487:15, 2497:6, 2498:1
**prisoner** [1] - 2444:15
**Prisons** [4] - 2443:13, 2444:8, 2444:12, 2444:18
**pristine** [1] - 2433:13
**probation** [3] - 2523:25, 2524:19, 2525:7
**problem** [2] - 2524:17, 2524:22
**problems** [3] - 2444:16, 2444:18, 2444:19
**proceed** [2] - 2483:9, 2492:7
**proceedings** [1] - 2521:13
**Proceedings** [1] - 2431:25
**process** [20] - 2489:1, 2491:11, 2492:22, 2492:23, 2493:7, 2493:17, 2493:19, 2494:7, 2494:9, 2495:16, 2496:7, 2496:15, 2499:9, 2499:24, 2510:17, 2521:1, 2522:21, 2522:23, 2525:1, 2525:6
**PROCESS** [1] - 2471:21
**processed** [1] - 2437:2
**procured** [4] - 2474:15, 2477:3, 2504:6, 2514:12
**Procurement** [1] - 2477:1
**produce** [1] - 2468:3
**Produced** [1] - 2431:25
**produces** [1] - 2489:9
**professional** [1] - 2526:22
**professionally** [1] - 2526:15
**promise** [4] - 2474:16, 2477:4, 2504:7, 2514:13
**promised** [2] - 2477:7, 2477:9
**Proof** [3] - 2467:20, 2467:23, 2488:5
**PROOF** [1] - 2467:4
**proof** [11] - 2467:20, 2467:24, 2468:14, 2469:1, 2488:1, 2488:8, 2488:9, 2488:21, 2489:3
**proper** [4] - 2494:8, 2497:5, 2497:6, 2497:10
**properly** [1] - 24'
**proposed** [4] - 2432:18, 2432:21, 2433:6, 2464:1
**proscribes** [1] - 2473:3
**prosecute** [1] - 2526:14
**prosecuted** [1] - 2526:15
**prosecution** [1] - 2471:6
**prospects** [1] - 2433:5
**protect** [1] - 2501:23
**protected** [1] - 2523:10
**prove** [16] - 2467:8, 2468:1, 2468:13, 2468:15, 2468:16, 2469:3, 2471:4, 2471:5, 2471:6, 2475:11, 2479:2, 2481:18, 2481:22, 2482:1, 2509:13, 2518:12
**proved** [52] - 2453:18, 2461:15, 2461:16, 2468:18, 2472:13, 2473:7, 2473:10, 2473:11, 2473:17, 2473:23, 2474:5, 2474:7, 2479:8, 2479:12, 2479:14, 2479:19, 2479:24, 2480:5, 2480:9, 2480:11, 2482:7, 2482:11, 2482:13, 2482:25, 2483:16, 2489:13, 2492:13, 2492:16, 2492:19, 2493:6, 2494:20, 2495:23, 2496:2, 2503:5, 2503:24, 2504:6, 2504:14, 2504:21, 2505:11, 2505:13, 2505:21, 2506:7, 2507:10, 2507:11, 2509:5, 2513:14, 2514:2, 2514:11, 2514:20, 2515:4, 2515:12, 2515:21
**proven** [12] - 2452:14, 2458:17, 2470:17, 2475:8, 2483:4, 2485:12, 2488:14, 2489:15, 2495:11, 2495:20, 2508:9, 2517:7
**proves** [1] - 2522:10
**provided** [1] - 2508:18
**proving** [2] - 2467:5, 2475:25
**PSR** [2] - 2524:12, 2525:11
**public** [4] - 2503:1, 2522:12, 2523:5, 2526:8
**punished** [7] - 2433:4, 2433:8, 2435:1, 2435:2, 2441:8, 2484:3, 2506:13
**punishment** [27] - 2433:11, 2438:25, 2439:6, 2439:24, 2440:2, 2440:14, 2441:13, 2441:14, 2441:15, 2441:16, 2445:5, 2445:7, 2445:10, 2445:19, 2445:20, 2446:9, 2453:3, 2455:11, 2455:19, 2456:3, 2467:2, 2483:12, 2483:24, 2494:9, 2497:10
**purchased** [1] - 2446:5
**purposely** [1] - 2479:5
**purposes** [1] - 2469:8
**put** [13] - 2438:21, 2454:5, 2455:7, 2458:14, 2458:22, 2459:9, 2464:16, 2464:20, 2481:24, 2501:24, 2502:1, 2510:5, 2525:25
**Put** [1] - 2437:12
**putting** [1] - 2462:4

## Q

**qualifications** [1] - 2470:6
**qualified** [1] - 2432:11
**qualify** [1] - 2432:21
**qualities** [4] - 2440:17, 2440:18, 2440:24, 2511:13
**quality** [2] - 2468:21, 2511:10
**questionnaires** [1] - 2456:20
**questions** [10] - 2436:14, 2437:1, 2470:24, 2503:15, 2505:2, 2509:18, 2513:11, 2518:19, 2522:17, 2522:18
**quick** [1] - 2436:4
**quote** [1] - 2450:8

## R

**RABKIN** [1] - 2431:15
**race** [4] - 2498:7, 2498:11, 2498:23, 2499:4
**racketeering** [1] - 2522:1
**raised** [1] - 2490:13
**random** [1] - 2520:25
**rare** [1] - 2441:19
**rather** [2] - 2434:12, 2483:19
**Rather** [4] - 2467:1, 2468:21, 2482:22, 2494:12
**razor** [2] - 2443:20, 2444:9
**reach** [6] - 2494:11, 2496:22, 2497:24, 2500:13, 2509:21, 2518:22
**reached** [5] - 2498:20, 2500:1, 2500:2, 2513:5, 2513:10
**reaching** [2] - 2470:2, 2498:25
**read** [6] - 2498:17, 2501:20, 2510:2, 2510:9, 2516:5, 2517:21
**readbacks** [1] - 2500:6
**reads** [1] - 2463:13
**ready** [2] - 2438:7, 2463:23
**real** [1] - 2439:19
**realistic** [1] - 2437:13
**realize** [1] - 2521:13
**really** [2] - 2436:18, 2445:6
**reason** [11] - 2440:19, 2452:9, 2452:23, 2452:24, 2461:24, 2467:18, 2470:13, 2479:6, 2486:16, 2499:18, 2524:3
**reasonable** [76] - 2461:17, 2463:15, 2467:6, 2467:9, 2467:18, 2467:20, 2467:21, 2467:23, 2468:2, 2468:15, 2469:4, 2471:7, 2472:13, 2473:7, 2473:9, 2473:12, 2473:17, 2474:5, 2474:8, 2475:7, 2475:25, 2479:9, 2479:11, 2479:12, 2479:15, 2479:20, 2479:25, 2480:6, 2480:12, 2482:1, 2482:8, 2482:10, 2482:14, 2482:25, 2483:4, 2486:23, 2488:2, 2488:5, 2489:4, 2489:15, 2492:13, 2492:17, 2492:24, 2493:6, 2494:2, 2494:22, 2494:24, 2495:7, 2495:19, 2495:23, 2496:3, 2496:9, 2496:18, 2497:20, 2499:15, 2503:5, 2503:24, 2504:6, 2504:14, 2504:21, 2505:11, 2505:13, 2505:21, 2506:7, 2509:5, 2509:6, 2509:13, 2513:14, 2514:2, 2514:11, 2514:20, 2515:4, 2515:12, 2515:21, 2518:4, 2518:12
**reasonableness** [1] - 2469:20
**reasons** [2] - 2441:3, 2470:6

**rebuttal** [1] - 2438:3
**rec** [1] - 2443:17
**receive** [6] - 2447:2, 2466:24, 2487:19, 2494:16, 2497:19, 2498:1
**received** [1] - 2455:8
**Recess** [1] - 2462:23
**recessed** [1] - 2512:21
**recheck** [1] - 2500:17
**recognized** [1] - 2444:6
**recommendation** [1] - 2499:2
**recommendations** [1] - 2522:24
**record** [3] - 2436:10, 2490:16, 2525:22
**recorded** [1] - 2431:25
**redeeming** [3] - 2440:17, 2440:18, 2440:24
**referenced** [1] - 2500:8
**referred** [1] - 2512:12
**refinement** [1] - 2435:19
**reflect** [5] - 2433:18, 2498:16, 2510:4, 2526:19, 2526:20
**reflecting** [1] - 2522:7
**reflects** [2] - 2498:19, 2500:18
**regard** [12] - 2480:10, 2482:4, 2482:20, 2483:17, 2489:17, 2492:15, 2492:18, 2492:22, 2493:8, 2493:14, 2498:11, 2500:23
**regarding** [8] - 2472:14, 2482:3, 2483:7, 2488:3, 2488:15, 2488:16, 2492:5, 2499:2
**regardless** [3] - 2465:25, 2499:3, 2523:6
**reinforce** [2] - 2435:6, 2521:19
**relating** [1] - 2482:18
**release** [17] - 2446:12, 2473:21, 2479:23, 2481:14, 2484:4, 2487:7, 2487:16, 2496:6, 2497:6, 2498:2, 2505:22, 2506:14, 2509:16, 2509:25, 2515:22, 2518:16, 2519:2
**released** [2] - 2441:9, 2441:15
**relevant** [3] - 2466:16, 2483:22, 2490:17
**religious** [4] - 2498:8, 2498:11, 2498:24, 2499:4
**relishes** [1] - 2461:1
**rely** [2] - 2465:23, 2467:21
**relying** [1] - 2501:8
**remaining** [2] - 2488:19, 2490:2
**Remember** [5] - 2449:8, 2452:12, 2483:1, 2494:1, 2501:8
**remember** [8] - 2443:23, 2444:23, 2445:10, 2448:2, 2451:22, 2454:20, 2481:25, 2521:10
**remind** [7] - 2444:11, 2470:23, 2472:24, 2481:20, 2496:3, 2498:3, 2499:13
**reminded** [1] - 2475:5
**remorse** [3] - 2449:23, 2481:9, 2481:17
**remorsefulness** [1] - 2481:23
**rendered** [1] - 2513:5
**Renita** [2] - 2452:20, 2453:13
**repeat** [3] - 2437:3, 2464:22, 2465:20
**repeatedly** [1] - 2 [illegible] 3
**repetitious** [1] - 2489:13
**report** [5] - 2491:17, 2492:2, 2500:15, 2523:24, 2525:2
**Reporter** [2] - 2431:20, 2431:21
**reports** [2] - 2524:24, 2525:9
**represents** [1] - 2461:12
**reputation** [2] - 2436:24, 2437:2
**require** [8] - 2432:24, 2433:3, 2468:3, 2481:2, 2486:2, 2488:2, 2488:6, 2489:17
**required** [22] - 2455:15, 2466:8, 2467:10, 2468:6, 2473:7, 2473:9, 2473:11, 2473:18, 2473:25, 2474:5, 2475:2, 2480:6, 2482:19, 2483:14, 2489:18, 2492:14, 2493:4, 2493:16, 2494:4, 2498:4, 2498:15, 2522:3
**requirement** [1] - 2469:3
**requires** [3] - 2466:7, 2479:1, 2482:23
**requiring** [1] - 2466:12
**requisite** [4] - 2433:21, 2473:22, 2488:21, 2496:1
**resolve** [1] - 2462:15
**respect** [58] - 2433:20, 2437:7, 2463:14, 2472:21, 2472:22, 2473:14, 2474:9, 2474:20, 2475:15, 2477:3, 2477:6, 2477:8, 2477:16, 2477:24, 2479:20, 2480:5, 2487:5, 2488:19, 2489:20, 2490:1, 2490:2, 2493:6, 2496:3, 2500:23, 2501:20, 2503:11, 2503:13, 2503:21, 2504:2, 2504:3, 2504:9, 2504:10, 2504:17, 2504:18, 2504:25, 2505:8, 2505:16, 2505:18, 2505:24, 2506:1, 2506:4, 2509:2, 2510:1, 2513:19, 2513:22, 2514:4, 2514:7, 2514:14, 2514:16, 2514:22, 2514:25, 2515:7, 2515:14, 2515:17, 2515:24, 2516:1, 2523:6, 2523:13
**respectively** [1] - 2521:15
**respects** [3] - 2488:17, 2521:25
**respond** [2] - 2456:25, 2513:11
**responsibilities** [2] - 2521:14, 2526:13
**responsibility** [3] - 2460:1, 2465:11, 2520:24
**responsible** [4] - 2445:4, 2455:17, 2457:17, 2460:19
**rest** [8] - 2433:20, 2449:25, 2456:2, 2458:3, 2461:3, 2465:4, 2501:17, 2501:18
**result** [7] - 2442:14, 2446:12, 2472:21, 2490:8, 2501:12, 2503:10, 2513:19
**resumed** [1] - 2463:1
**retaliate** [1] - 2450:13
**retaliation** [2] - 2447:12, 2450:23
**retire** [2] - 2459:6, 2499:11
**return** [4] - 2461:25, 2498:9, 2498:10, 2499:13
**revenge** [3] - 2450:11, 2459:14
**Reverend** [1] - 2458:23
**reverse** [1] - 2508:22
**revised** [3] - 2463:4, 2511:25
**RHUNKE** [2] - 2510:23, 2511:9
**Richard** [1] - 2453:22
**rifles** [2] - 2455:6, 2455:8
**RIGHT** [1] - 2471:1
**rights** [1] - 2523:9
**Ring** [1] - 2434:13
**rise** [1] - 2464:5
**risk** [17] - 2449:14, 2449:15, 2459:20, 2474:23, 2478:1, 2479:1, 2479:3, 2481:4, 2481:12, 2481:18, 2481:20, 2481:24, 2482:2, 2504:22, 2505:22, 2515:6, 2515:23
**Risk** [1] - 2477:22
**road** [1] - 2455:10
**robbery** [1] - 2450:22
**rock** [1] - 2523:7
**rock-bed** [1] - 2523:7
**role** [14] - 2484:6, 2484:9, 2484:12, 2484:14, 2484:16, 2484:19, 2484:21, 2506:16, 2506:19, 2506:22, 2506:24, 2507:1, 2507:4, 2507:6
**roles** [2] - 2486:20, 2487:7
**room** [7] - 2435:18, 2437:14, 2457:4, 2457:23, 2499:11, 2522:16, 2523:14
**ROSLYNN** [1] - 2431:12
**row** [2] - 2441:23, 2442:2
**Ruhnke** [5] - 2438:10, 2454:15, 2523:18, 2526:1, 2526:11
**RUHNKE** [14] - 2431:17, 2433:16, 2434:13, 2436:4, 2436:12, 2437:5, 2463:24, 2523:21, 2524:6, 2524:15, 2525:2, 2525:5, 2525:10, 2525:18
**rule** [2] - 2432:19, 2473:1
**rules** [2] - 2482:18, 2499:7
**ruling** [1] - 2437:1
**run** [1] - 2451:12
**running** [1] - 2458:25
**Russell** [4] - 2445:23, 2446:6, 2484:13, 2506:23

## S

**sacrosanct** [1] - 2523:6
**safe** [1] - 2452:19
**sat** [1] - 2442:5
**satisfied** [3] - 2475:24, 2496:24, 2511:6
**saw** [4] - 2440:25, 2443:16, 2457:22
**seal** [1] - 2519:19
**sealed** [1] - 2501:24
**seated** [6] - 2462:10, 2464:7, 2512:11, 2513:3, 2513:9, 2523:17
**Second** [3] - 2481:14, 2486:10, 2489:14
**second** [3] - 2445:8, 2477:2, 2481:10
**secretly** [1] - 2502:2
**section** [3] - 2463:14, 2498:14, 2510:12
**Section** [31] - 2473:5, 2473:15, 2479:7, 2482:6, 2491:12, 2495:22, 2498:14, 2503:17, 2503:19, 2503:21, 2503:22, 2504:12, 2505:2, 2505:4, 2505:5, 2505:6, 2505:8, 2505:9, 2505:10, 2506:3, 2506:4, 2506:5, 2506:6, 2509:2, 2509:3, 2509:4, 2513:12,

2513:25, 2515:10, 2516:4, 2518:3
**SECTION** [6] - 2503:3, 2503:20, 2505:7, 2507:7, 2508:12, 2509:1
**Sections** [2] - 2509:18, 2518:19
**see** [18] - 2434:16, 2438:5, 2438:6, 2441:6, 2443:16, 2451:15, 2460:11, 2461:4, 2463:7, 2469:15, 2492:3, 2495:4, 2499:5, 2512:20, 2524:19, 2525:7, 2525:20, 2527:2
**seek** [4] - 2445:17, 2445:25, 2448:20, 2486:16
**seeking** [2] - 2435:12, 2438:17
**seem** [2] - 2432:13, 2523:23
**selection** [1] - 2521:1
**self** [2] - 2463:8, 2481:2
**self-evident** [1] - 2463:8
**self-explanatory** [1] - 2481:2
**selling** [1] - 2458:25
**send** [5] - 2464:3, 2499:18, 2500:1, 2501:25, 2511:15
**sense** [9] - 2434:2, 2436:3, 2445:20, 2445:21, 2446:8, 2467:18, 2470:13, 2495:11, 2521:4
**senseless** [1] - 2461:23
**sent** [1] - 2455:7
**SENTENCE** [1] - 2509:1
**sentence** [78] - 2439:25, 2440:10, 2441:4, 2441:13, 2445:7, 2446:22, 2451:1, 2453:2, 2455:16, 2456:5, 2458:6, 2461:23, 2461:25, 2463:18, 2466:7, 2466:20, 2467:6, 2467:15, 2468:5, 2471:7, 2471:17, 2473:20, 2474:2, 2479:22, 2481:13, 2482:22, 2483:23, 2484:3, 2484:24, 2485:9, 2487:4, 2487:15, 2487:18, 2487:24, 2488:9, 2493:2, 2493:11, 2493:12, 2493:25, 2494:3, 2494:5, 2494:15, 2494:21, 2494:25, 2495:8, 2495:9, 2495:17, 2495:24, 2496:9, 2496:12, 2497:16, 2497:23, 2497:25, 2498:1, 2498:4, 2498:9, 2498:10, 2499:3, 2499:15, 2506:13, 2507:5, 2507:16, 2508:4, 2509:9, 2509:14, 2509:23, 2510:4, 2516:9, 2516:25, 2518:3, 2518:7, 2518:13, 2518:24, 2519:4, 2523:19, 2523:22
**sentenced** [33] - 2442:11, 2442:14, 2456:2, 2461:2, 2465:16, 2466:10, 2467:1, 2471:5, 2484:2, 2484:6, 2484:9, 2484:11, 2484:13, 2484:16, 2484:18, 2484:20, 2486:8, 2496:18, 2506:12, 2506:16, 2506:19, 2506:21, 2506:23, 2506:25, 2507:3, 2509:11, 2509:15, 2509:24, 2518:9, 2518:15, 2519:1, 2524:6, 2524:15
**sentences** [4] - 2445:3, 2448:19, 2496:4, 2523:22
**sentencing** [20] - 2465:12, 2465:18, 2466:17, 2471:11, 2487:11, 2487:12, 2487:14, 2487:17, 2489:16, 2489:25, 2490:5, 2490:23, 2499:13, 2499:23, 2500:16, 2500:22, 2506:11, 2507:13, 2524:4, 2524:14
**separate** [2] - 24[illegible]523:12
**SEPARATE** [1] - 2471:14
**separately** [3] - 2471:18, 2493:8, 2495:25
**serious** [5] - 2449:7, 2449:13, 2471:23, 2500:24, 2500:25
**serve** [2] - 2447:16, 2521:1
**served** [3] - 2445:3, 2486:15, 2486:17
**service** [4] - 2456:23, 2462:1, 2521:2, 2526:1
**services** [1] - 2446:5
**serving** [1] - 2481:13
**set** [3] - 2465:22, 2523:19, 2523:22
**Seven** [1] - 2516:22
**seven** [1] - 2449:9
**seventeen** [1] - 2448:3
**several** [1] - 2488:16
**severe** [8] - 2433:11, 2433:15, 2441:13, 2441:15, 2441:16, 2453:3, 2456:3
**severely** [5] - 2433:4, 2433:8, 2441:8, 2441:10, 2441:11
**severity** [1] - 2442:16
**sex** [4] - 2498:8, 2498:12, 2498:24, 2499:4
**Shall** [2] - 2437:10, 2519:21
**share** [2] - 2434:22, 2521:15
**sheet** [6] - 2433:24, 2434:9, 2441:7, 2441:11, 2463:10, 2519:10
**SHELDON** [1] - 2431:20
**shooters** [1] - 2449:5
**shooting** [2] - 2449:15, 2449:16
**short** [4] - 2432:19, 2441:16, 2466:24, 2523:22
**shortly** [3] - 2511:7, 2521:8, 2523:15
**show** [3] - 2443:24, 2462:19, 2481:24
**showed** [1] - 2461:9
**shown** [1] - 2489:7
**shows** [1] - 2458:14
**side** [2] - 2508:22, 2510:21
**sides** [1] - 2470:15
**sign** [4] - 2498:17, 2500:14, 2501:22, 2519:10
**signature** [1] - 2498:16
**signed** [6] - 2499:19, 2499:21, 2500:2, 2502:1, 2510:12, 2519:18
**significance** [1] - 2491:11
**significant** [1] - 2475:22
**significantly** [1] - 2464:12
**signing** [1] - 2498:22
**silly** [1] - 2437:23
**SILVERMAN** [1] - 2431:20
**Similar** [1] - 2486:25
**Similarly** [2] - 2494:23, 2495:6
**similarly** [1] - 2486:17
**simply** [4] - 2483:19, 2494:10, 2499:18, 2510:13
**sincere** [7] - 2450:5, 2459:8, 2459:19, 2485:5, 2507:24, 2516:19, 2525:24
**sincerely** [1] - 2459:24
**single** [4] - 2443:6, 2472:16, 2494:23, 2495:6
**Singleton** [44] - 2438:22, 2446:19, 2447:9, 2447:11, 2448:4, 2448:5, 2450:10, 2450:11, 2457:8, 2459:15, 2459:16, 2459:17, 2459:19, 2459:25, 2460:3, 2461:24, 2463:14, 2465:15, 2472:23, 2477:9, 2484:7, 2484:10, 2484:12, 2484:17, 2486:13, 2487:8, 2503:13, 2504:3, 2504:10, 2504:18, 2505:18, 2506:1, 2506:17, 2506:20, 2506:22, 2507:2, 2510:1, 2513:23, 2514:8, 2514:17, 2515:1, 2515:18, 2516:2, 2519:5
**sister** [1] - 2454:8
**sit** [1] - 2440:5
**sitting** [1] - 2438:20
**situation** [2] - 2523:7, 2524:7
**Six** [17] - 2465:13, 2472:21, 2474:10, 2474:20, 2477:6, 2477:22, 2477:24, 2503:11, 2504:2, 2504:9, 2504:17, 2504:25, 2505:16, 2505:24, 2509:9, 2509:14, 2509:23
**six** [14] - 2455:6, 2455:12, 2496:4, 2513:19, 2514:5, 2514:14, 2514:22, 2515:7, 2515:15, 2515:24, 2518:7, 2518:14, 2518:24, 2523:23
**slip** [1] - 2463:21
**Smiley** [4] - 2445:23, 2446:1, 2484:11, 2506:21
**Smith** [49] - 2438:22, 2447:5, 2447:7, 2447:12, 2448:4, 2450:9, 2450:10, 2450:12, 2457:8, 2459:12, 2459:13, 2460:2, 2460:4, 2460:5, 2461:24, 2463:14, 2465:14, 2472:22, 2477:7, 2484:6, 2484:9, 2484:12, 2484:14, 2484:16, 2484:19, 2484:21, 2486:12, 2487:8, 2503:11, 2504:2, 2504:9, 2504:17, 2504:25, 2505:16, 2505:24, 2506:16, 2506:19, 2506:22, 2506:24, 2507:1, 2507:4, 2507:6, 2513:20, 2514:5, 2514:14, 2514:23, 2515:8, 2515:15, 2515:24
**Smith's** [1] - 2459:16
**smoke** [1] - 2443:19
**socializing** [1] - 2461:3
**soldiers** [1] - 2457:18
**sole** [1] - 2465:15
**someone** [10] - 2444:22, 2448:3, 2451:5, 2451:18, 2455:9, 2455:10, 2455:16, 2470:1, 2477:7, 2477:9
**Sometimes** [1] - 2437:20
**son** [1] - 2454:21
**soon** [1] - 2439:2
**sooner** [2] - 2524:6, 2524:7
**sought** [2] - 2445:12, 2489:10
**sounds** [1] - 2435:25
**space** [4] - 2473:15, 2491:23, 2497:3, 2508:21
**spaces** [1] - 2508:18
**spare** [2] - 2452:9, 2456:1
**spares** [1] - 2451:23
**speaking** [1] - 2463:19
**Special** [12] - 2443:15, 2472:6, 2473:5, 2479:7, 2482:6, 2491:12, 2495:22,

OCR CRR SR

2497:3, 2498:14, 2500:14, 2509:19, 2518:20
**special** [2] - 2469:24, 2524:25
**specific** [4] - 2437:8, 2466:11, 2473:1, 2475:10
**Specifically** [1] - 2467:7
**specifically** [5] - 2436:19, 2475:4, 2490:10, 2490:13, 2500:9
**speculation** [1] - 2490:25
**spent** [3] - 2521:22, 2524:23, 2526:6
**squad** [1] - 2455:5
**staff** [1] - 2522:22
**stage** [1] - 2487:25
**stand** [2] - 2442:5, 2457:11
**standard** [2] - 2468:14, 2489:3
**standards** [1] - 2526:21
**standing** [2] - 2455:24, 2494:21
**stands** [1] - 2500:5
**Stanley** [1] - 2452:11
**start** [5] - 2464:25, 2465:2, 2511:20, 2512:3, 2516:6
**started** [2] - 2454:13, 2457:2
**State** [2] - 2517:21, 2517:22
**state** [1] - 2470:18
**statement** [4] - 2459:10, 2498:17, 2498:19, 2522:12
**statements** [3] - 2470:24, 2486:6, 2486:7
**STATES** [3] - 2431:1, 2431:3, 2431:9
**States** [7] - 2431:13, 2432:1, 2443:22, 2445:15, 2449:24, 2455:4, 2456:23
**STATUTORY** [5] - 2474:3, 2480:3, 2503:20, 2504:12, 2505:7
**statutory** [54] - 2434:7, 2434:14, 2434:25, 2467:11, 2467:12, 2467:14, 2472:1, 2472:2, 2474:8, 2474:11, 2474:21, 2475:3, 2475:5, 2475:12, 2475:14, 2477:2, 2477:15, 2477:23, 2479:9, 2479:11, 2479:14, 2479:16, 2479:19, 2479:24, 2480:7, 2480:9, 2480:11, 2480:15, 2480:19, 2481:11, 2482:3, 2482:8, 2482:11, 2482:13, 2482:15, 2482:19, 2482:20, 2482:23, 2483:3, 2483:8, 2483:15, 2492:14, 2492:17, 2493:5, 2493:15, 2496:2, 2505:10, 2506:7, 2509:4, 2513:25, 2515:10
**Stay** [1] - 2511:6
**stay** [3] - 2451:23, 2453:10, 2465:5
**stenography** [1] - 2431:25
**STEP** [4] - 2472:10, 2474:3, 2480:3, 2483:11
**Step** [4] - 2473:23, 2480:1, 2483:9, 2492:7
**steps** [4] - 2471:22, 2471:24, 2472:7, 2472:9
**still** [3] - 2446:21, 2454:5, 2457:12
**stipulate** [1] - 2470:15
**stipulated** [1] - 2477:18
**stipulation** [3] - 2434:6, 2470:16, 2477:20
**stole** [1] - 2461:8
**stone** [1] - 2526:
**stood** [1] - 2526:16
**stop** [5] - 2437:1, 2495:3, 2503:15, 2505:3, 2511:23
**stopped** [1] - 2495:2
**story** [2] - 2440:15, 2455:3
**straight** [2] - 2434:6, 2434:11
**Street** [1] - 2431:13
**streets** [3] - 2450:1, 2458:8, 2459:1
**strength** [1] - 2452:10
**stress** [1] - 2466:4
**stretch** [1] - 2492:11
**strong** [1] - 2452:8
**stuff** [1] - 2526:13
**subject** [2] - 2470:22, 2499:23
**submitted** [1] - 2486:2
**Substantial** [3] - 2448:23, 2475:13, 2475:21
**substantial** [7] - 2448:24, 2474:13, 2475:16, 2476:1, 2476:3, 2503:25, 2514:3
**substitute** [1] - 2470:12
**suffer** [4] - 2451:7, 2485:11, 2508:7, 2517:4
**sufficient** [7] - 2436:18, 2485:8, 2487:23, 2488:8, 2488:9, 2508:3, 2516:25
**sufficiently** [10] - 2450:25, 2463:16, 2467:14, 2492:25, 2494:24, 2495:7, 2495:12, 2495:20, 2509:8, 2518:5
**suggest** [4] - 2439:15, 2440:5, 2466:19, 2483:22
**suggested** [1] - 2459:23
**summation** [7] - 2432:5, 2434:22, 2436:5, 2436:21, 2437:8, 2438:2
**superiors** [1] - 2526:14
**support** [2] - 2465:8, 2466:18
**Supreme** [16] - 2436:15, 2442:12, 2442:18, 2442:23, 2443:1, 2450:8, 2457:7, 2457:16, 2458:25, 2459:12, 2459:18, 2459:24, 2460:5, 2461:20
**Supreme's** [1] - 2459:17
**surrender** [1] - 2501:4
**surrounding** [1] - 2483:21
**swear** [1] - 2511:21
**Swear** [1] - 2512:5
**sworn)** [1] - 2512:6
**system** [4] - 2521:18, 2521:20, 2522:9, 2522:10

**T**

**table** [1] - 2464:17
**talents** [1] - 2526:20
**talks** [2] - 2433:6, 2452:13
**tall** [1] - 2526:16
**Tape** [1] - 2444:14
**Team** [8] - 2436:15, 2442:12, 2442:18, 2442:24, 2443:1, 2458:25
**team** [1] - 2526:2
**tear** [1] - 2451:17
**ten** [1] - 2443:5
**tend** [2] - 2466:18, 2481:18
**term** [2] - 2442:15, 2479:1
**terms** [10] - 2432:6, 2462:13, 2469:9, 2487:10, 2489:18, 2489:19, 2489:21, 2490:24, 2521:15, 2523:23
**terrorists** [1] - 2441:23
**testified** [8] - 2436:23, 2442:6, 2443:23, 2452:18, 2457:11, 2469:16, 2470:21, 2487:5
**TESTIFY** [1] - 2471:1
**testify** [6] - 2440:25, 2452:16, 2452:17, 2453:8, 2471:2, 2471:9
**testifying** [3] - 2469:17, 2469:18, 2470:6
**testimony** [13] - 2433:11, 2469:11, 2469:13, 2469:20, 2469:21, 2469:23, 2469:25, 2470:5, 2470:9, 2470:11, 2500:7
**text** [1] - 2463:20
**THE** [106] - 2431:9, 2432:1, 2432:4, 2433:17, 2434:15, 2434:21, 2435:4, 2435:14, 2436:10, 2436:16, 2436:25, 2437:6, 2437:10, 2437:11, 2437:12, 2437:13, 2437:16, 2437:18, 2437:23, 2438:1, 2456:9, 2456:13, 2462:2, 2462:10, 2462:22, 2463:3, 2463:25, 2464:5, 2464:7, 2471:21, 2486:1, 2510:22, 2510:24, 2511:1, 2511:13, 2511:18, 2512:8, 2512:10, 2512:11, 2512:17, 2512:18, 2512:19, 2513:3, 2513:9, 2513:12, 2513:22, 2513:25, 2514:7, 2514:10, 2514:16, 2514:19, 2514:25, 2515:3, 2515:10, 2515:17, 2515:20, 2516:1, 2516:4, 2516:5, 2516:7, 2516:12, 2516:18, 2516:23, 2517:3, 2517:7, 2517:11, 2517:15, 2517:18, 2517:21, 2517:24, 2518:1, 2518:3, 2518:11, 2518:18, 2519:4, 2519:6, 2519:8, 2519:10, 2519:13, 2519:15, 2519:18, 2519:21, 2519:22, 2519:25, 2520:2, 2520:4, 2520:6, 2520:8, 2520:10, 2520:12, 2520:14, 2520:16, 2520:18, 2520:20, 2520:22, 2520:23, 2523:17, 2524:2, 2524:9, 2524:14, 2524:19, 2525:4, 2525:6, 2525:12, 2525:20, 2526:25
**themselves** [1] - 2450:20
**theory** [1] - 2469:25
**therefore** [10] - 2436:8, 2456:4, 2466:21, 2470:20, 2472:7, 2506:9, 2509:10, 2509:14, 2518:8, 2518:14
**they've** [1] - 2489:22
**thinking** [3] - 2432:6, 2434:21, 2475:19
**Third** [1] - 2481:19
**third** [3] - 2477:15, 2519:7, 2519:9
**thorough** [6] - 2466:5, 2496:8, 2496:16, 2497:24, 2509:20, 2518:21
**thoroughly** [1] - 2440:8
**thoughts** [1] - 2490:24
**three** [2] - 2474:11, 2526:11
**Three** [1] - 2480:1
**THREE** [1] - 2480:3
**threw** [1] - 2458:22

**throughout** [3] - 2462:17, 2463:20, 2521:13
**time-wise** [1] - 2464:15
**timewise** [1] - 2438:5
**TO** [1] - 2471:1
**today** [1] - 2523:19
**together** [4] - 2443:5, 2454:2, 2511:22, 2511:24
**ton** [1] - 2513:23
**tonight** [1] - 2465:5
**took** [4] - 2458:23, 2461:14, 2510:21, 2511:17
**toothpaste** [1] - 2443:11
**tops** [1] - 2443:16
**torture** [1] - 2441:23
**total** [4] - 2487:19, 2491:18, 2492:2, 2494:10
**touch** [2] - 2451:23, 2453:10
**touched** [1] - 2452:2
**touching** [1] - 2499:23
**tough** [1] - 2526:13
**towards** [1] - 2525:23
**towers** [2] - 2443:20, 2444:4
**training** [1] - 2469:25
**traits** [1] - 2466:15
**TRANSCRIPT** [1] - 2431:8
**Transcript** [1] - 2431:25
**Transcription** [1] - 2431:25
**treated** [1] - 2522:25
**TRIAL** [1] - 2431:8
**trial** [2] - 2432:1, 2488:1
**tried** [3] - 2453:16, 2454:9, 2517:22
**troubled** [1] - 2522:11
**Troy** [39] - 2438:21, 2446:19, 2447:9, 2447:11, 2448:4, 2448:5, 2450:10, 2450:11, 2457:8, 2459:15, 2459:16, 2459:19, 2459:24, 2460:3, 2461:24, 2465:14, 2472:23, 2477:9, 2486:13, 2487:8, 2503:13, 2504:3, 2504:10, 2504:18, 2505:18, 2506:1, 2506:17, 2506:20, 2506:22, 2507:1, 2510:1, 2513:22, 2514:7, 2514:16, 2514:25, 2515:17, 2516:1, 2519:5
**true** [9] - 2454:1, 2486:6, 2486:7, 2486:9, 2488:19, 2489:11, 2489:24, 2491:7
**truly** [1] - 2501:11
**truth** [3] - 2446:14, 2458:5, 2501:5
**try** [3] - 2464:11, 2497:9, 2501:11
**trying** [7] - 2439:11, 2439:12, 2439:13, 2440:22, 2453:11, 2458:11, 2458:12
**turn** [1] - 2454:6
**turning** [2] - 2454:16
**tussle** [1] - 2443:10
**TV** [1] - 2461:4
**twenty** [5] - 2447:16, 2447:23, 2449:10, 2462:5, 2511:7
**twenty-year** [1] - 2449:10
**Two** [3] - 2436:4, 2449:4, 2473:24
**TWO** [1] - 2474:3
**two** [29] - 2439:5, 2445:12, 2446:19, 2447:14, 2449:2, 2451:14, 2457:16, 2458:1, 2458:15, , 2461:8, 2465:17, 2473:13, 2479:17, 2480:15, 2480:19, 2482:16, 2486:9, 2496:5, 2501:16, 2501:19, 2510:14, 2519:8, 2521:9, 2524:12, 2524:16, 2525:5, 2525:11, 2525:23
**type** [2] - 2490:6, 2520:24
**types** [1] - 2451:12

## U

**U.S** [5] - 2431:4, 2431:16, 2444:3, 2526:14
**ultimate** [3] - 2439:7, 2460:24, 2461:10
**ultimately** [1] - 2491:4
**Unable** [1] - 2451:22
**unable** [3] - 2497:23, 2509:21, 2518:22
**unanimity** [3] - 2489:17, 2496:23, 2510:4
**Unanimity** [1] - 2489:18
**unanimous** [14] - 2475:7, 2482:4, 2483:2, 2495:18, 2496:25, 2497:1, 2497:9, 2497:10, 2497:24, 2509:22, 2510:5, 2510:9, 2510:11, 2518:23
**unanimously** [60] - 2456:6, 2463:15, 2472:12, 2473:6, 2473:8, 2473:10, 2473:16, 2474:4, 2475:1, 2476:2, 2479:11, 2479:13, 2479:18, 2479:23, 2480:4, 2482:10, 2482:12, 2482:24, 2483:13, 2489:15, 2491:17, 2492:12, 2492:23, 2493:4, 2493:14, 2496:1, 2496:9, 2496:12, 2496:17, 2497:4, 2497:5, 2497:8, 2497:19, 2497:22, 2499:14, 2503:4, 2503:23, 2504:5, 2504:13, 2504:20, 2505:10, 2505:12, 2505:20, 2506:6, 2509:4, 2509:6, 2509:10, 2509:12, 2509:15, 2513:13, 2514:1, 2514:10, 2514:19, 2515:11, 2515:20, 2518:4, 2518:8, 2518:11, 2518:14, 2519:5
**unbelievably** [1] - 2460:9
**uncomfortable** [1] - 2488:13
**under** [5] - 2448:6, 2448:13, 2459:8, 2487:10, 2519:19
**understaffed** [1] - 2524:24
**understood** [1] - 2521:25
**unfortunate** [9] - 2460:13, 2460:15, 2460:16, 2460:17, 2460:18, 2485:3, 2507:21, 2516:15
**unibomber** [1] - 2442:1
**unique** [5] - 2432:8, 2439:3, 2440:7, 2466:22, 2494:14
**uniquely** [1] - 2467:2
**Unit** [1] - 2443:15
**UNITED** [3] - 2431:1, 2431:3, 2431:9
**United** [7] - 2431:13, 2432:1, 2443:22, 2445:15, 2449:24, 2455:4, 2456:23
**unless** [2] - 2483:2, 2498:10
**unlike** [1] - 2489:14
**Unlike** [1] - 2482:18
**unlucky** [1] - 2460:4
**unturned** [1] - 2526:3
**up** [13] - 2437:15, 2448:12, 2454:1, 2456:12, 2456:25, 2457:19, 2457:21, 2459:9, 2463:22, 2465:3, 2467:3, 2523:11, 2526:16
**USP** [3] - 2443:14, 2443:18

## V

**value** [16] - 2453:19, 2453:20, 2453:24, 2454:18, 2474:17, 2477:5, 2477:12, 2485:17, 2487:16, 2494:13, 2495:15, 2504:8, 2508:16, 2514:13, 2517:15, 2521:19
**value"means** [1] - 2477:11
**values** [1] - 2494:18
**various** [1] - 2494:14
**Verdict** [11] - 2472:6, 2473:5, 2479:7, 2482:6, 2491:12, 2495:22, 2497:3, 2498:14, 2500:14, 2509:19, 2518:20
**verdict** [39] - 2433:24, 2434:8, 2441:7, 2441:11, 2455:17, 2460:19, 2461:21, 2463:4, 2463:10, 2487:25, 2492:4, 2496:11, 2496:14, 2496:20, 2500:4, 2500:17, 2501:13, 2509:22, 2511:3, 2512:1, 2513:6, 2513:10, 2518:23, 2519:23, 2519:25, 2520:2, 2520:4, 2520:6, 2520:8, 2520:10, 2520:12, 2520:14, 2520:16, 2520:18, 2520:20, 2524:16, 2526:19
**verse** [1] - 2436:19
**versus** [2] - 2432:2, 2434:13
**VI** [3] - 2498:14, 2503:17, 2505:4
**Victim** [1] - 2449:18
**victim** [14] - 2471:19, 2472:20, 2474:24, 2478:2, 2480:22, 2498:12, 2498:25, 2499:5, 2503:9, 2504:23, 2505:14, 2513:18, 2515:7, 2515:13
**victim's** [8] - 2480:22, 2480:24, 2481:1, 2505:14, 2505:15, 2515:14
**victims** [13] - 2449:18, 2450:5, 2450:19, 2459:9, 2460:11, 2461:8, 2485:1, 2485:5, 2498:9, 2507:19, 2507:24, 2516:13, 2516:20
**video** [1] - 2443:23
**view** [1] - 2466:2
**views** [4] - 2456:21, 2470:22, 2488:7, 2490:5
**violating** [1] - 2473:2
**violation** [1] - 2466:1
**violence** [5] - 2443:6, 2443:9, 2449:22, 2481:6, 2481:16
**violent** [4] - 2460:10, 2484:25, 2507:18, 2516:13
**Virginia** [1] - 2444:4
**void** [1] - 2451:14
**voluntarily** [5] - 2460:10, 2479:5, 2484:25, 2507:18, 2516:12
**volunteered** [1] - 2448:12
**vote** [12] - 2439:25, 2440:3, 2440:4, 2440:9, 2440:11, 2452:23, 2452:24, 2455:15, 2455:17, 2456:5, 2486:18
**voting** [1] - 2488:13

## W

**wait** [3] - 2511:7, 2512:3, 2523:14
**waiting** [1] - 2524:23
**walking** [1] - 2450:1
**walks** [1] - 2495:2
**wants** [7] - 2442:21, 2446:18, 2457:17, 2460:9, 2461:7, 2461:8, 2461:9
**warrant** [1] - 2445:2
**watching** [1] - 2461:4
**water** [2] - 2492:9, 2492:10
**watered** [2] - 2435:2, 2435:11
**ways** [1] - 2466:11
**weeks** [2] - 2445:12, 2524:16
**weigh** [6] - 2432:22, 2466:12, 2493:13, 2493:15, 2493:16, 2499:10
**weighed** [1] - 2474:1
**weighing** [12] - 2470:4, 2472:3, 2486:22, 2490:8, 2491:11, 2492:8, 2492:22, 2492:23, 2493:7, 2493:19, 2494:7, 2494:13
**weighs** [4] - 2484:23, 2487:3, 2507:15, 2516:9
**weight** [12] - 2457:15, 2457:19, 2459:2, 2459:4, 2470:9, 2491:4, 2494:13, 2495:14, 2501:5, 2506:10, 2507:12
**weights** [1] - 2494:18
**whatsoever** [2] - 2443:10, 2483:5
**Whichever** [1] - 2500:13
**whipping** [1] - 2450:22
**whole** [1] - 2435:20
**wholly** [2] - 2466:9, 2468:2
**whoso** [1] - 2508:24
**willing** [1] - 2433:13
**willingly** [4] - 2460:12, 2485:1, 2507:19, 2516:14
**Wilson** [2] - 2432:7, 2432:10
**wire** [2] - 2443:20, 2444:9
**wise** [1] - 2464:15
**wish** [4] - 2456:10, 2486:3, 2523:10, 2523:20
**withdrawn** [2] - 2436:6, 2445:13
**witness** [11] - 2436:14, 2436:23, 2442:5, 2469:12, 2469:14, 2469:15, 2469:17, 2469:18, 2470:18, 2510:19
**witness'** [1] - 2487:11
**witness's** [3] - 2469:14, 2469:16, 2470:8
**witnesses** [16] - 2440:25, 2441:1, 2446:12, 2451:2, 2458:19, 2468:20, 2470:21, 2484:23, 2486:6, 2486:7, 2487:3, 2487:5, 2487:9, 2487:17, 2507:15, 2516:8
**wonderful** [2] - 2436:24, 2438:13
**wondering** [1] - 2511:10
**word** [7] - 2433:15, 2441:10, 2469:1, 2500:20, 2510:8, 2510:11
**words** [5] - 2477:5, 2481:10, 2486:7, 2489:8, 2494:10
**world** [2] - 2446:8, 2522:11
**worried** [1] - 2460:2
**worst** [10] - 2441:19, 2441:20, 2441:22, 2442:3, 2442:5
**worthy** [2] - 2438:24, 2458:18
**write** [2] - 2508:18, 2508:21
**writing** [2] - 2499:22, 2499:24
**written** [2] - 2457:25, 2464:11

## Y

**year** [1] - 2449:10
**years** [13] - 2442:11, 2442:14, 2442:15, 2443:5, 2446:17, 2446:18, 2447:16, 2447:23, 2448:3, 2449:9, 2455:4, 2525:5, 2525:11
**yes"in** [1] - 2503:22
**yesterday** [5] - 2436:14, 2438:2, 2441:21, 2452:7
**Yesterday** [1] - 2447:15
**YORK** [1] - 2431:1
**York** [4] - 2431:5, 2431:14, 2431:22, 2517:22
**younger** [1] - 2526:11
**yourself** [2] - 2448:9, 2501:1
**yourselves** [2] - 2500:22, 2501:18

## –

**–** [2] - 2470:15