**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-6002-01-CR-SJ-GAF |
| | ) | |
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court are Defendant Lisa Montgomery's ("Defendant") Motions for Judgment of Acquittal and for New Trial. (Doc. #360). Defendant raises seventeen grounds in support of her Motions relating to the guilt and/or penalty phases of the trial. *Id*. For the following reasons, Defendant's Motions are DENIED.

**A.　Standards**

Only "where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged" should a court grant a motion for judgment of acquittal. *United States v. Jackson*, 345 F.3d 638, 647 (8th Cir. 2003) (citation and internal quotation omitted). A district court has "very limited latitude" and must not "weigh the evidence or assess the credibility of the witnesses" when ruling on a motion for judgment of acquittal. *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002).

With regard to a motion for a new trial, a district court can "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. However, the granting of such

1

motions is disfavored unless a serious miscarriage of justice has occurred. *United States v. Guel-Contreras*, 468 F.3d 517, 522 (8th Cir. 2006) (citation omitted). A district court should use its broad discretion in granting motions for a new trial "sparingly and with caution" and should reserve such relief "for exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Schnurstein*, 977 F.2d 449, 454 (8th Cir. 1992) (citations omitted); *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citations omitted).

**B. Analysis**

**I.** *Proof of Kidnaping Resulting in Death*

On September 17, 2007, this Court adopted the Report and Recommendations of Magistrate Judge Maughmer (Doc. #268) in denying Defendant's pretrial motions on this issue. (Doc. #285). The Court also denied Defendant's Motion for Judgment of Acquittal at the Close of All Evidence on those same grounds. (Doc. #335). The Court adopts its reasoning with regard to Defendant's prior motions on the issue here. Defendant's renewed Motions for relief based on failure of proof are therefore DENIED.

**II.** *Dr. Gur's Testimony and Evidence of Brain Function*

Among other considerations under Federal Rules of Evidence 702, 403, and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), a district court can admit expert testimony where it (1) would assist the trier of fact in understanding evidence, (2) is based on sufficient facts or data, (3) demonstrates conclusions based on reliable principles and methods, (4) demonstrates reliable application of the principles and methods to the facts, and (5) does not confuse or mislead the jury. In this case, Dr. Gur failed to produce the raw data upon which his conclusions were based in a manner that allowed for proper examination before trial. Further, the government's experts showed

conclusively that Dr. Gur's principles and methods were not subjected to adequate peer review or publication and that Dr. Gur's application of his principles and methods to the facts was unreliable, and thus would have misled and confused the jury rather than assisted it.  Finally, the evidence was of extremely low probative value as it provided only minimal support for the sweeping conclusion that PET scans of Defendant's brain showed patterns consistent with the rare diagnosis of pseudocyesis without ruling out compatibility with a multitude of other more common conditions and circumstances.  Defendant's Motions are therefore DENIED.

### III.  *Polygraph Evidence*

In *United States v. Scheffer*, 523 U.S. 303, 309-12 (1998) the United States Supreme Court thoroughly canvassed the controversy surrounding the admission of polygraph evidence and found a rule used in military tribunals amounting to a per se exclusion of polygraph evidence constitutional.  The Supreme Court's conclusion and analysis lends considerable support for the proposition that "[t]he Constitution does not mandate admission of polygraph results" in capital cases.  *Goins v. Angelone*, 226 F.3d 312, 326 n.7 (4th Cir. 2000).  Further, under provisions of the Federal Death Penalty Act, 18 U.S.C. § 3593(c), a district court retains "discretion to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair."  *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004), *cert. denied*, 543 U.S. 946 (2004).

Under the circumstances of this case, without espousing any per se ban on such evidence, the Court finds the "doubts and uncertainties that plague even the best polygraph exams," *Scheffer*, 523 U.S. at 312, sufficient to exclude the evidence in both phases of Defendant's trial.  Defendant's Motions are therefore DENIED.

3

**IV.** *Vanessa Boman Emails*

Evidence "not offered to prove the truth of the matter asserted" is not hearsay. *United States v. Rodriguez*, 484 F.3d 1006, 1013-14 (8th Cir. 2007) (citations omitted). In this case, Defendant's state of mind was an essential element of the crime charged and the government offered evidence of Vanessa Boman's emailed threats to expose Defendant's false statements regarding her pregnancy in government exhibits 43-2-k, 43-2-q, 43-2-r, and 43-2-u to show Defendant's state of mind and motive to commit the crime charged. Defendant's Motions are therefore DENIED.

**V.** *Venireperson Challenges: Nos. 34, 87, and 117*

A "district court has broad discretion in determining whether to strike jurors for cause," and an appeals court will reverse the district court's decision only "where actual prejudice has been demonstrated on appeal." *United States v. Huddleston*, 819 F.2d 751, 753 (8th Cir. 1987) (citation omitted).

Here, in response to the Court's inquiry as to whether they could remain unbiased with regard to the law and the evidence relating to the defense of insanity, venirepersons 34, 87, and 117 responded as follows:

Venireperson 34 indicated her background in social work and psychology would "affect [her] judgment" on issues with which she was familiar. In response to the Court's repeated questioning and direction that she would not have to set aside her common sense, venireperson 34 persisted, "I am saying it could be a factor ... I would not be as judgmental as I can." Venireperson 34 also explained she often worked in connection with court proceedings and her selection as juror would have placed a substantial hardship on the judges and parties in her cases.

4

Venireperson 87 indicated she had "a bias toward people who have mental issues getting help."

Venireperson 117, who had four adopted children on medication for mental disorders, indicated she "might have some reservation" with regard to whether her experiences would weigh on her mind in considering the law and the evidence in an objective manner.

In light of the responses venirepersons 34, 87 and 117 provided, as well as their demeanor before the Court, the Court maintains it was appropriate to strike them for cause. Defendant's Motions are therefore DENIED.

**VI.** *Government's Closing Argument with Respect to Defendant's Children*

"[T]rial courts have broad discretion in controlling closing arguments," *United States v. Beckman*, 222 F.3d 512, 526 (8th Cir. 2000), and a district court may excuse a prosecutor's conduct that might otherwise be inappropriate if the conduct was an appropriate response to defense arguments or statements. *United States v. Ziesman*, 409 F.3d 941, 954 (8th Cir. 2005) (citations omitted).

At trial in this case, Defendant called some of her children to testify with regard to Defendant's proper treatment of them as a mitigating factor. On cross-examination, the government attempted to elicit testimony of neglectful, manipulative, and abusive conduct on the part of Defendant toward her children. Subsequently, during the government's closing argument in the penalty phase of Defendant's trial, Defendant objected on the basis of unfair prejudice to the government's suggestion the jury should consider Defendant "dragging" her children into court to testify on her behalf in weighing aggravating and mitigating factors for sentencing. This Court overruled Defendant's objection. In light of the evidence of a wholesome relationship with her

5

children that Defendant attempted to establish at trial and subsequent rebuttal evidence received on cross-examination, the jury was free to consider and accept or reject the government's statement in closing. Defendant's Motions are therefore DENIED.

### VII. *Weight of Aggravating and Mitigating Factors*

As Defendant concedes, this Court followed Eighth Circuit precedent in refusing to instruct the jury it was never required to impose the death penalty even if it found aggravating factors outweighed mitigating factors. *United States v. Allen*, 247 F.3d 741, 779-82 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002); *United States v. Ortiz*, 315 F.3d 873, 900-01 (8th Cir. 2002); *United States v. Nelson*, 347 F.3d 701, 712 (8th Cir. 2003); *United States v. Purkey*, 428 F.3d 738, 762-63 (8th Cir. 2005). Any disagreement on the subject among various federal circuits and district court's is irrelevant as this Court is in no position to ignore substantial Eighth Circuit precedent on the issue. Defendant's Motions are therefore DENIED.

### VIII. *Heinousness as an Aggravating Factor*

Eighth Circuit Model Jury Instruction No. 12.07F (2007) states, "'Heinous' means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as to set it apart from other killings." In this case, Defendant contends there was no evidence of heinousness because Defendant inflicted only the necessary amount of abuse on her victims to complete her crime. On the contrary, assuming one of Defendant's primary purposes was to kidnap Victoria Jo Stinnett, it would have been less heinous for Defendant to have waited until Victoria Jo Stinnett was naturally born to attempt her abduction. Defendant's Motions are therefore DENIED.

**IX., X., & XI.**        *Constitutionality of the Federal Death Penalty Act*

The Court has previously considered and rejected Defendant's contentions with regard to these issues. (Doc. ##177, 197). Finding the grounds stated in the Court's previous Order and in Magistrate Judge Maughmer's Report and Recommendations on these issues, which this Court adopted, remain sufficient, Defendant's Motions are DENIED.

**XII., XIII., & XIV.**   *Aggravating Factor Motions*

The Court has previously considered and rejected Defendant's contentions with regard to these issues. (Doc. ##268, 271, 285). As the grounds stated in the Court's previous Orders and in Magistrate Judge Maughmer's Report and Recommendations on these issues, which this Court adopted, remain sufficient, Defendant's Motions are DENIED.

**XV.**   *Dr. Gur's Testimony and Evidence of Brain Function: Penalty Phase*

Defendant's Motions are DENIED with regard to the admission of Dr. Gur's testimony during the penalty phase of Defendant's trial for the reasons stated above in Section II of this Order.

**XVI.**  *Polygraph Evidence: Penalty Phase*

Defendant's Motions are DENIED with regard to the admission of polygraph evidence during the penalty phase of Defendant's trial for the reasons stated above in Section III of this Order.

**XVII.** *Cross-examination of Defendant's Children Regarding Apology*

"Cross-examination may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness." *Villanueva v. Leininger*, 707 F.2d 1007, 1010 (8th Cir. 1983) (citations omitted). "The scope of questioning permissible on cross-examination is within the broad discretion of the district court." *United States v. Schenk*, 983 F.2d 876, 880 (8th Cir. 1993) (citation omitted).

Here, Defendant submitted mitigating factors during the penalty phase of Defendant's trial alleging Defendant has and will continue "to offer advice, nurturance and emotional support to her children." In addition, Defendant elicited testimony regarding Defendant's attempts to counsel and nurture her children. Defendant claims the Court erred in overruling her objections to the government's cross of Defendant's children during the penalty phase of the trial regarding Defendant's failure to apologize for her actions. As the government suggests, evidence indicating "[Defendant] had not even explained her actions to her children, and had not apologized for the effect her acts had on the children, goes to the very heart of countering" Defendant's mitigation factors and the testimony received on direct examination. The government's cross-examination with regard to Defendant's lack of apology was therefore proper and Defendant's Motions are DENIED.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motions for Judgment of Acquittal and for New Trial are DENIED with respect to all of her proffered grounds for relief.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 12, 2008

8